**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

DEBORAH BRADLEY, individually and on
behalf of others similarly situated,
      Plaintiff,

                                      Case No. 1:20-cv-01094-CCB

v.                                            **REDACTED VERSION**

DENTALPLANS.COM and
CIGNA HEALTH AND LIFE
INSURANCE COMPANY,
      Defendants.

_____/

**MEMORANDUM IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.      BACKGROUND ......................................................................................................2

        A.      The TCPA and Defendants' practices.......................................................2

        B.      The named plaintiff's claims. ..................................................................6

II.     LEGAL STANDARD............................................................................................7

III.    ARGUMENT ........................................................................................................8

        A.      The Class is ascertainable. .......................................................................8

        B.      All Rule 23(a) requirements are satisfied. ............................................10

                1.      The Class is sufficiently numerous. ..........................................10

                2.      Common questions of law or fact exist......................................11

                3.      Plaintiff's claims are typical of those of the other Class members............11

                4.      Plaintiff will adequately represent the Class and Subclass........................12

        C.      Rule 23(b)(3) is satisfied........................................................................13

                1.      Common questions of law or fact predominate. .......................13

                2.      A class action is the superior means for resolving the Class' claims. .......16

IV.     CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................... 11, 16

*Amgen Inc. v. Ct. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ................................................................................. 15

*Bee, Denning, Inc. v. Capital Alliance Grp.,*
310 F.R.D. 614 (S.D. Cal. 2015) ............................................................... 7

*Brown v. Nucor Corp.,*
576 F.3d 149 (4th Cir. 2009) ................................................................... 11

*Caldera v. Am. Med. Collection Agency,*
320 F.R.D. 513 (C.D. Cal. 2017) ............................................................. 16

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,*
445 U.S. 326 (1980) ................................................................................. 17

*Donaldson v. Primary Residential Mortg., Inc.,*
2021 WL 2187013 (D. Md. May 28, 2021) ............................................. 12

*Green v. Serv. Master On Location Servs. Corp.,*
2009 WL 1810769 (N.D. Ill. June 22, 2009) .......................................... 16

*Gunnells v. Healthplan Servs., Inc.,*
348 F.3d 417 (4th Cir. 2003) ..................................................................... 7

*In re Kirschner Med. Corp. Sec. Litig.,*
139 F.R.D. 74 (D. Md. 1991) ................................................................... 10

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d Cir. 2001) ..................................................................... 17

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ............................................................... 7, 15

*Knutson v. Schwan's Home Serv., Inc.,*
2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ............................................ 9

*Krakauer v. Dish Network, LLC,*
311 F.R.D. 384 (M.D.N.C. 2015) ............................................................ 15

- ii -

*Krakauer v. Dish Network, LLC*,
  925 F.3d 643 (4th Cir. 2019) ............................................................ 7, 8, 14

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) ........................................................ 15

*Larson v. Harman Mgmt. Corp.*,
  2016 WL 6298528 (E.D. Cal. Oct. 27, 2016) ................................................ 3

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ...................................................................... 2

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ............................................................. 17

*Nolan v. Reliant Equity Inv'rs, LLC*,
  2009 WL 2461008 (N.D. W. Va. Aug. 10, 2009) ............................................. 16

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021) ............................................................... 8

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*,
  2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) ................................................ 16

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
  279 F.R.D. 442 (N.D. Ohio 2012) .......................................................... 16

*Smith v. Res-Care, Inc.*,
  2015 WL 461529 (S.D. W. Va. Feb. 3, 2015) ............................................... 11

*Starr v. Credible Behav. Health, Inc.*,
  2021 WL 2141542 (D. Md. May 26, 2021) ................................................... 13

*Stillmock v. Weis Mkts., Inc.*,
  385 F. App'x 267 (4th Cir. 2010) ......................................................... 14

*Sullivan v. All Web Leads, Inc.*,
  2017 WL 2378079 (N.D. Ill. June 1, 2017) .................................................. 3

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) .............................................................. 7

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................... 12

## Statutes

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................. 1, 2, 7, 12

47 U.S.C. § 227(b)(3) ........................................................................................... 12, 15

## Other Authorities

*In re TCPA*,
    23 FCC Rcd. 559 (2008) ................................................................................... 2

*In re TCPA*,
    25 FCC Rcd. 1501 (2010) ................................................................................. 3

*In re TCPA*,
    27 FCC Rcd. 1830 (2012) ................................................................................. 3

## Rules

Fed.R.Civ.P. 23(a)(1) .......................................................................................... 10

Fed.R.Civ.P. 23(a)(2) .......................................................................................... 11

Fed.R.Civ.P. 23(a)(3) .......................................................................................... 11

Fed.R.Civ.P. 23(a)(4) .......................................................................................... 12

Fed.R.Civ.P. 23(b)(3) .......................................................................................... 13

Fed.R.Civ.P. 23(g)(1) .......................................................................................... 13

## Regulations

47 C.F.R. § 64.1200(a)(ii) .................................................................................... 14

47 C.F.R. § 64.1200(f)(13) ................................................................................... 14

47 C.F.R. § 64.1200(f)(9) ................................................................................... 1, 3

Defendant DentalPlans.com ("DentalPlans") has a policy and practice of using prerecorded telemarketing to induce former customers into renewing their dental discount plans after the plans lapse, including those of its client, Defendant Cigna Health and Life Insurance Company ("Cigna").[1] DentalPlans obtains the phone numbers for these calls through a standardized marketing script, read orally at the time the consumer originally signs up. Pursuant to such policies, DentalPlans called at least **57,240** consumers' cell phone numbers using prerecorded messages after their subscriptions lapsed. Many of these consumers were called to solicit for Cigna plans, and repeatedly: Plaintiff, for example, received twenty-six calls from DentalPlans using a prerecorded message, ten of which occurred after her family's Cigna plan terminated.

The Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii), prohibits making prerecorded "robocalls" to cell phones, regardless of the relationship among the parties, unless the caller first obtains the "prior express written consent" from the call recipient. There is no dispute in this case as to whether DentalPlans' calls to these tens of thousands of consumers were "prerecorded" or made to cellular telephone numbers. The *prima facie* case for Plaintiff and anyone else who received these calls is thus not in dispute.

What *is* in dispute here is whether Defendants had proper "prior express written consent" to make these calls. This case hinges upon whether DentalPlans' marketing script conferred "prior express written consent" to receive telemarketing calls after policies lapsed. Plaintiff contends that, among other things, DentalPlans' marketing script was deficient because it did not obtain written consent or ask for consent to receive *telemarketing* calls, as required. *See* 47 C.F.R. § 64.1200(f)(9). However, Plaintiff understands that Defendants believe they did not need to mention telemarketing in order to obtain proper consent.

---

[1]     Cigna is one of DentalPlans' two largest providers.

Regardless of who is correct about whether Defendants obtained proper "prior express written consent" over the telephone using its marketing script, the facts and law that apply to this issue for Plaintiff and the class are the same, and provable through common evidence and argument. Accordingly, Plaintiff seeks certification of the following Class and Subclass:

> **Class.** All persons who were non-customers at the time of the call (i) whom DentalPlans.com or someone on its behalf called using a prerecorded voice, (ii) to a cellular telephone number, (iii) for the purpose of trying to sell goods or services, (iv) for any consumer who signed up by telephone, (v) during any period when the marketing script in DP00013 and DP00014[2] was DentalPlans' "consent" practice and procedure.

> **Subclass.** All persons in the Class whose prior DentalPlans plan was through Cigna.

Plaintiff also requests that she be appointed class representative, and that her attorneys be appointed as class counsel.

## I.    BACKGROUND

### A.    The TCPA and Defendants' practices.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). To that end, it broadly bans making any call to a cell phone number using any autodialer or an artificial or prerecorded voice (i.e., "robocalls"), without "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii).

The "prior express consent" standard under the TCPA was relatively lax for thirty years, requiring that the recipient merely provided her phone number to the caller in connection with the subject matter of the calls. *In re TCPA*, 23 FCC Rcd. 559, 564 ¶¶ 9-11 (2008).

However, in 2010, the FCC issued a Notice of Proposed Rulemaking that asked for

---

[2]    DP00013 and DP00014 are included in Exhibit A, hereto.

comment as to whether imposing a *written* consent requirement might be more appropriate for telemarketing robocalls, only. *In re TCPA*, 25 FCC Rcd. 1501, 1507 ¶¶ 13-23 (2010). And in 2012, "[b]ased on substantial record support, the volume of consumer complaints [the FCC] continue[s] to receive concerning unwanted, telemarketing robocalls," the FCC issued revised regulations requiring a heightened "prior express written consent" standard for telemarketing calls. *In re TCPA*, 27 FCC Rcd. 1830, 1838 ¶¶ 20-34 (2012). In doing so, the FCC reiterated that "the seller bears the burden of proving that a clear and conspicuous disclosure was provided, and that an unambiguous consent was obtained." *Id.* at 1844, ¶ 32; *Larson v. Harman Mgmt. Corp.*, 2016 WL 6298528, at *3 (E.D. Cal. Oct. 27, 2016) (analyzing TCPA's written consent requirement); *Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *7-8 (N.D. Ill. June 1, 2017) (denying motion to dismiss where internet-based TCPA consent not clear and conspicuous).

The TCPA's written consent requirement is specific. 47 C.F.R. § 64.1200(f)(9) provides:

The term **prior express written consent** means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

3

Defendants' consent policy and practice does not comport with these strictures. DentalPlans' marketing script first asks the consumer, "██████████████████████████████████████████████████████████████████" Exhibit 1, Burke Decl. at Exhibit A (DP000013).[3] If the consumer provides a cell number, the script continues to ask the consumer if she would "██████████████████████████████████████████" Id. The script then asks, "██████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A at DP000014. This script is the *only* way DentalPlans obtained purported consent for its prerecorded message calls relevant to the Class. Exhibit B, Keen Dep. at 26:18-27:8.[4]

DentalPlans' script may satisfy the standard for *non*-telemarketing calls, but it does not satisfy the more rigorous standard for telemarketing calls because, apart from not affording "written" consent, it did not ask for permission to make *telemarketing* phone calls. Rather, it only asked for permission to call the consumer back "in case we get disconnected," to send marketing text messages specifically, and to make prerecorded calls generally, which may confer consent for servicing calls (e.g., debt collection) but not telemarketing calls.

DentalPlans used its inContact-brand dialer to make prerecorded-voice calls to consumers – like Plaintiff Bradley – whose subscriptions with Cigna or other DentalPlans clients had terminated, for the purpose of encouraging them to renew (i.e., telemarketing). Exhibit B, Keen

---

[3]    Hereinafter, all exhibits are cited without reference to the Burke declaration.
[4]    DentalPlans obtained "consent" on the Internet, too, but that consent-gathering method is not at issue in this case or applicable to the Class.

Dep. at 21:4-22; Exhibit C, Duckworth Dep. at 9:2-8, 14:13-20, 18:23-19:20.[5] DentalPlans used a blend of outbound prerecorded-calling campaigns, all of which are reflected in its call records. *See, e.g.,* Exhibit E (DentalPlans' call records for Plaintiff); Exhibit C, Duckworth Dep. at 9:2-8, 14:13-20, 15:8-17, 18:23-19:20.

Some calls were completely "agentless," meaning that DentalPlans' dialer automatically played a prerecorded message, with no opportunity for human interaction regardless of whether a human or voicemail answered, such as its calls to Plaintiff on December 10, 2019, December 28, 2019, December 30, 2019, and February 26, 2020—all after her subscription terminated on December 1, 2019. *Id.* at 16:14-17, 22:23-24:24; Exhibit E; Dkt. 61-9 at BRADLEY000202. Others were made using an "Outbound Dialer" that was programmed to play a prerecorded message if the call was answered by an answering machine, such as its calls to Plaintiff on December 3, 2019, December 9, 2019, December 12, 2019, December 17, 2019, December 20, 2019, and December 23, 2019—again, all after she was no longer a customer. Exhibit C, Duckworth Dep. at 16:18-17:10, 18:9-19:4; Exhibit E.

DentalPlans concedes that, for just *one* of its prerecorded-voice call types—agentless "Winback Chaser" calls—it initiated prerecorded-voice calls to 57,240 unique cell phone numbers associated with a former customer.[6] *Id.* at 14:13-20, 19:10-20. And although DentalPlans has been reticent to disclose how many of those calls were made to consumers whose Cigna accounts had expired, it has disclosed that it had approximately 5,875 Cigna customers on September 30, 2019,

---

[5]    *See also* Exhibit D, Def.'s Resp. to ROG 6 ("[A]ll call recordings are performed by inContact and transferred to a local FTP site. All outbound dialer calls were conducted via the InContact Personal Connection dialer, which is the only telephony system in place through the call center.").

[6]    *See* Exhibit C, Duckworth Dep. at 35:23-36:2 (identifying the "Winback Chaser" as a type of call first made "roughly 60 days or the second calendar month after termination"); Exhibit E (showing agentless "Winback Chaser" call to Plaintiff on February 26, 2020).

as a "snapshot" date, in Maryland alone. Exhibit H, p. 2. Each of those accounts expired within 12 months of that date, and DentalPlans' process is to initiate telemarketing calls a few months before expiration, through a few months after expiration. Exhibit C, Duckworth Dep. at 42:6-42:14.

DentalPlans used its Fed.R.Civ.P. 30(b)(6) deponent Margaret Keen as the recorded voice for its calls. Exhibit C, Duckworth Dep. at 24:25-25:11. Both of DentalPlans' Fed.R.Civ.P. 30(b)(6) witnesses referred to the messages as "prerecorded." *E.g.,* Exhibit B, Keen Dep. at 21:2-22, 45:10-18; Exhibit C, Duckworth Dep. at 7:6-9, 14:4-19:20. Because there is no dispute that DentalPlans' calls used a "prerecorded" voice under the TCPA, and because DentalPlans can (and in the case of Winback Chaser calls, has) "scrubbed" the call data in order to sort out which calls were to landlines and which were to cell phones, the merits of the case hinges on the common question of whether DentalPlans had valid consent for the calls and, as to the Subclass, whether Cigna is vicariously liable for DentalPlans' calls soliciting on its behalf.

**B.    The named plaintiff's claims.**

Plaintiff Deborah Bradley is a Maryland consumer and subscriber to the cellular telephone number at issue. Exhibit F, Bradley Decl. ¶ 3. On November 26, 2018, Plaintiff and her husband, Dennis, purchased a Cigna dental savings plan from DentalPlans over the phone, effective starting December 1, 2018. *Id.* ¶ 4; Dkt. 61-9 at BRADLEY000202. In line with DentalPlans' script, Plaintiff never consented to receive telemarketing calls, in writing or otherwise, let alone using an autodialer or prerecorded-voice. Exhibit F, Bradley Decl. ¶ 5. Dissatisfied with the product, Plaintiff allowed the plan to terminate without renewal on December 1, 2019. *Id.*

Beginning in about September 2019, DentalPlans began calling Mrs. Bradley's cell phone number with prerecorded-voice calls, to try to get her to renew her plan. *Id.* ¶ 6; Exhibit E (dialer log). Although Plaintiff never consented to telemarketing, DentalPlans made dozens of these

telemarketing calls to Plaintiff's cell phone, including at least ten after the plan terminated on December 1, 2019. Exhibit E. Indeed, the calls continued even after Mrs. Bradley directly asked DentalPlans to stop calling in around September 2019. Exhibit F, Bradley Decl. ¶ 6.

Plaintiff filed this lawsuit on April 28, 2020, seeking redress on behalf of herself and other consumers whose cell phones DentalPlans robocalled without valid consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff also amended her complaint to add Cigna, one of DentalPlans' two primary clients on whose behalf it solicited Plaintiff and the Subclass to renew, as a defendant. Dkt. 42; Exhibit B, Keen Dep. at 46:22-24. DentalPlans has not altered its consent or calling policies or practices since this lawsuit was filed. Exhibit B, Keen Dep. at 44:20-24.

## II. LEGAL STANDARD

A district court has "broad discretion in deciding whether to certify a class." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). A class action must satisfy each of Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and adequacy of representation. *See Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 426 (4th Cir. 2003). Additionally, it must fall into one of three categories under Rule 23(b). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019). Mrs. Bradley seeks certification under Rule 23(b)(3), which requires common questions to predominate and a class action to be the superior method to adjudicate claims.

Courts have recognized that "[c]lass certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions."). This case is no

different. The proposed Class is ascertainable and meets all the requirements of Rule 23.

## III.    ARGUMENT

### A.    The Class is ascertainable.

The implicit threshold class certification requirement of "ascertainability" requires that the Court will be able to "readily identify the class members in reference to objective criteria." *Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (citation omitted). While "[a] plaintiff 'need not be able to identify every class member at the time of certification[,] … '[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.'" *Id.*

In affirming certification and judgment in favor of a TCPA class after trial in *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019), for example, the Fourth Circuit acknowledged that "[t]he goal [of the ascertainability inquiry] is not to 'identify every class member at the time of certification,' … but to define a class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member" at some point.'" There, where records of the calls at issue existed, which could be traced to names and addresses of putative class members, the Court deemed this sufficient to "obviate[] any concern on this score…. The class members could therefore be identified on a large-scale basis, and notified of the class action accordingly." *Id.*

Here, Plaintiff's proposed Class readily satisfies the Fourth Circuit's ascertainability requirement. First, it is defined solely in reference to objective criteria, none of which require any subjective consideration: Either the person is a non-customer whose cell number DentalPlans called with a prerecorded message for purposes of selling goods or services, or they were not. Either the person previously signed up with DentalPlans by phone when it was using DP00013-14 as its call

script, or they did not. And, for the Subclass, either the consumer's prior plan was with Cigna, or it was not. *See Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) (finding the proposed class in a TCPA case ascertainable because "[w]hether a customer received an autodialed or artificial/prerecorded call may be determined objectively").

Second, the Class here is comprised of DentalPlans' former customers, whose names, addresses, phone numbers, and email addresses DentalPlans has in its records. Exhibit B, Keen Dep. at 36:4-37:7; Dkt. 61-9 at BRADLEY000201-202, 216 (Cigna plan membership cards and invoice from DentalPlans, identifying Plaintiff and her husband); Exhibit G.

Indeed, DentalPlans has identified 57,240 unique cell phone numbers for former customers to whom it made a "win back" call for telemarketing purposes with a prerecorded-voice message after their plan expired, despite having obtained the person's number orally by phone. Exhibit C, Duckworth Dep. at 14:13-17, 19:10-20:19. DentalPlans' records identify which consumers it called with prerecorded renewal messages, the plan they previously had (Cigna or otherwise), the date it terminated, and whether the sale originated via the Call Center (i.e., with oral-only, non-telemarketing "consent") or online—in other words, all information necessary to determine who is in the Class and Subclass. *E.g.,* Exhibits E, G. Its data is queryable and exportable.[7] Further, because DentalPlans made the calls at issue to former customers, Defendant's records also readily identify contact information for class members, such that direct notice by mail and email can be readily

---

[7]    *See* Exhibit C, Duckworth Dep. at 29:3-23 (admitting DentalPlans can: (1) run a query to export a list containing phone numbers it called with the date the associated plan terminated; (2) run a query to identify which calls it made to such phone numbers; and (3) run the two outputs against each other to determine which phone numbers were called after the plan expired (i.e., to non-customer Class Members).

effectuated.[8] Ascertainability is, therefore, satisfied.

**B.      All Rule 23(a) requirements are satisfied.**

**1.      The Class is sufficiently numerous.**

Fed.R.Civ.P. 23(a)(1) provides that a proposed class must be "so numerous that joinder of all members is impracticable[.]" "[A] class of as few as 25 to 30 members raises the presumption that joinder would be impracticable.... Moreover, plaintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirements that joinder is impracticable where such a conclusion is clear from reasonable estimates." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) (citations omitted).

Numerosity is a non-issue in this case. DentalPlans concedes that it made prerecorded-voice renewal[9] calls to at least[10] 57,240 unique cell phone numbers of former customers that it obtained by phone through its call center. Exhibit C, Duckworth Dep. at 14:13-17, 19:10-20. And while Plaintiff does not at this time know the precise number, there cannot be any serious dispute that there were more than forty calls to former Cigna customers in the Subclass, given that Cigna is one of DentalPlans' two largest providers. Exhibit B, Keen Dep. at 46:22-24; *see also*

---

[8]      *See, e.g.,* Exhibit A at DP000011-16 (training manual for inputting demographic information into DentalPlans system); Exhibit B, Keen Dep. at 36:10-37:5; Exhibit G (screenshot of DentalPlans' information for the Bradleys' account, showing phone number, email, and address); Dkt. 61-9 at BRADLEY000201-202, 216 (Cigna plan membership cards and invoice from DentalPlans, identifying Plaintiff and her husband).

[9]      *See* Exhibit B, Keen Dep. at 45:10-18 (agreeing that the purpose of the pre-recorded renewal phone calls is to get the consumer to renew for an additional year—i.e., telemarketing).

[10]      The 57,240 figure represents the number of unique cell phones that DentalPlans called using its "Winback Chaser" prerecorded message, which was uniformly used for the first time at around two months after the plan terminated. Exhibit C, Duckworth Dep. at 35:23-36:2. Missing from this figure DentalPlans provided are consumers whose plans expired, but who received prerecorded renewal messages without ultimately receiving a "Winback Chaser" message. *See, e.g.,* Exhibit E (showing nine different prerecorded renewal calls to Plaintiff after her plan terminated on December 1, 2019, before ending with a Winback Chaser message on February 26, 2020). The class size is therefore *larger* than 57,240.

Exhibit H at p. 2 (DentalPlans admitting that it enrolled 5,875 Cigna dental discount plan members in Maryland, alone, as of September 30, 2019). Because it would be impracticable to join so many individual cases, Rule 23(a)(1) is satisfied.

### 2.    Common questions of law or fact exist.

Fed.R.Civ.P. 23(a)(2)'s commonality requirement for class certification requires that "there are questions of law or fact common to the class." This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.,* 2015 WL 461529, at *4 (S.D. W. Va. Feb. 3, 2015) (citing cases). Here, class members suffered the same injury and share several key questions of law and fact, including:

- Did Defendant's renewal/winback call campaigns to Plaintiff and the Class constitute "telemarketing" under the TCPA?

- Did obtaining each class member's phone number orally by phone using DentalPlans' script fail to confer "prior express written consent" under the TCPA to Defendants for prerecorded-voice telemarketing?

- Did Defendants' actions constitute "willful" or "knowing" violations of the TCPA, entitling class members to treble damages under 47 U.S.C. § 227(b)(3)?

- As to the Subclass, should Cigna be held liable for DentalPlans' calls made to renew Cigna plans?

These questions are dispositive, apply equally to all Class (or Subclass) members, and, importantly, can be answered using common proof and uniform legal analysis. Commonality is thus satisfied.

### 3.    Plaintiff's claims are typical of those of the other Class members.

Fed.R.Civ.P. 23(a)(3) requires that the class representative have claims or defenses "typical of the claims or defenses of the class." As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.,* 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). Typicality does not require the claims of the class members to be perfectly identical; rather, typicality is satisfied where the claims are based on the same remedial legal theory. *See Amchem*

*Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 n.5 (2011).

Here, Plaintiff's claims and the claims of the Class follow the same factual and legal theory: DentalPlans used its inContact dialer to make prerecorded-voice telemarketing calls to their cell numbers after they stopped being customers, without written authorization for telemarketing, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). The messages played were identical insofar as they were recorded ahead of time, and "consent" was gathered in the same way for each—orally, without reference to telemarketing. For the Subclass, Plaintiff and the Subclass seek redress against Cigna on a vicarious liability theory, for calls DentalPlans made to solicit renewal of a Cigna plan. The right of action for Plaintiff and other Class and Subclass members falls under the exact same statutory framework, 47 U.S.C. § 227(b)(3). Because there are no meaningful differences between Plaintiff's claims and those of the Class and Subclass, typicality is satisfied.

### 4.    Plaintiff will adequately represent the Class and Subclass.

Fed.R.Civ.P. 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." This requires a two-pronged inquiry: "1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at *6 (D. Md. May 28, 2021).

There is no conflict between Plaintiff Bradley's interests and the interests of the Class. By investigating, filing, and vigorously prosecuting this case, Plaintiff has demonstrated a desire and

ability to protect class members' interests. <u>Exhibit 1</u>, Burke Decl. ¶ 14. She has elected not to focus on her individual claims, but instead is standing up for others who, like her, have been subjected to unlawful telemarketing by or on behalf of Defendants. *Id.*; <u>Exhibit F</u>, Bradley Decl. ¶ 7.

Just as Plaintiff is committed to the prosecution of this case, so too are her lawyers, who request appointment as class counsel. Fed.R.Civ.P. 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and instructs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Plaintiff's counsel investigated and identified the claims, have a firm handle on the facts and law in this action as demonstrated in this motion, and have the necessary experience and resources to represent the Class and Subclass. <u>Exhibit 1</u>, Burke Decl. ¶¶ 2-13. Both Plaintiff and proposed class counsel are well-qualified to protect the interests of the Class and Subclass, and the Court should appoint them so that they may do so.

**C.    Rule 23(b)(3) is satisfied.**

Fed.R.Civ.P. 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."

**1.    Common questions of law or fact predominate.**

Fed.R.Civ.P. 23(b)(3)'s predominance requirement requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability,

courts generally find the predominance requirement to be satisfied." *Starr v. Credible Behav. Health, Inc.*, 2021 WL 2141542, at *4 (D. Md. May 26, 2021) (quoting *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)). "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement 'even though other important matters will have to be tried separately.'" *Krakauer*, 925 F.3d at 658 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

For example, in *Krakauer v. Dish Network, L.L.C.*, the Fourth Circuit found predominance met in a TCPA do-not-call case, where "all of the major issues in the case could be shown through aggregate records"—there, class call records showing when the calls were made and to whom. 925 F.3d at 658. Additionally, the Court found that, "perhaps most significantly, the plaintiffs sought a statutory damages award, preventing the need to measure individual compensatory damages." *Id.* "At bottom, the advantages of class resolution follow directly from the statute. The [TCPA] creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Id.* at 659.

Like in *Krakauer*, this case is based on the TCPA's "simple scheme for determining if a violation occurred." The most important questions of fact and law in this case apply to Plaintiff and everyone else in the proposed Class equally, such that they are susceptible of determination in "one fell swoop." The four most important questions in the case are: (1) whether DentalPlans' renewal/winback calls at issue constitute "telemarketing" under the TCPA, such that "prior express written consent" was required for Defendant's calls to be permissible under 47 C.F.R. § 64.1200(a)(ii);[11] (2) whether obtaining the Class members' phone numbers orally based on a

---

[11]    "Telemarketing" is defined under the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

standard script that didn't reference telemarketing failed to confer DentalPlans with "prior express written consent" under the TCPA; (3) whether Cigna should be held liable for calls DentalPlans made on its behalf (as to the Subclass); and (4) whether Defendants' violations were "willful" or "knowing," such that treble damages are appropriate under 47 U.S.C. § 227(b)(3). There are no issues requiring individualized proof: They either rest on common legal issues (e.g., what constitutes "telemarketing" or "prior express written consent" under the TCPA), or on uniform conduct or practices applicable to the Class or Subclass as a whole (e.g., Cigna's and DentalPlans' relationship and respective knowledge, ratification, and control as to the renewal call campaigns).

Critically, while Rule 23(b)(3) requires a showing that common questions predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"). In other words, a ruling on these issues, whether in favor of the Class or Defendants, will dispose of all but administrative aspects of the claims at issue.

This uniformity of factual and legal issues is why courts routinely certify TCPA claims. *See Turza*, 728 F.3d at 684 (recognizing class certification is "normal" in TCPA cases because the main questions are common to all recipients); *Krakauer v. Dish Network, LLC*, 311 F.R.D. 384, 394-95 (M.D.N.C. 2015) (vicarious liability issue predominated over individual questions in TCPA case); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) (certifying nationwide TCPA class who received automated calls on their cell phones, and finding vicarious liability issues predominate because agency issues such as actual authority, ratification, and apparent authority "can be resolved on a class-wide basis"). These holdings are consistent with

15

the Supreme Court's observation that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem*, 521 U.S. at 625.

Accordingly, predominance is satisfied, and the Court should grant class certification.

### 2.    A class action is the superior means for resolving the Class' claims.

Additionally, a class action is the superior method for adjudicating this controversy. The TCPA's modest statutory damages ($500) and lack of a mechanism to award attorneys' fees means that individual claims are generally not economically viable. 47 U.S.C. § 227(b)(3); *see, e.g.*, *Nolan v. Reliant Equity Inv'rs, LLC,* 2009 WL 2461008, at *6 (N.D. W. Va. Aug. 10, 2009) ("relatively small recovery" under federal statute made class action superior); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, 2014 WL 6750690, at *6 (N.D. Ohio Dec. 1, 2014) ("This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims.").[12]

Through the class action procedure, these common claims can be brought in one proceeding, preserving limited judicial resources, eliminating unnecessary duplication of document and data discovery and depositions, and avoiding potentially inconsistent outcomes.

---

[12]    *See also Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017) ("[T]he Supreme Court has specifically contemplated plaintiffs bringing TCPA cases as class actions."); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."); *Green v. Serv. Master On Location Servs. Corp.*, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

Certifying the class is the *only* way to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 338 (1980).

This case does not present any of the manageability problems that might impact the superiority determination in other cases.[13] In particular, providing notice to class members—which occasionally proves an obstacle to class certification under the TCPA—can be easily accomplished because DentalPlans has already identified 57,240 class members who received "winback" calls, for which its system has email and address information for purposes of direct notice. *E.g.,* Exhibit B, Keen Dep. at 36:10-37:5; Exhibit C, Duckworth Dep. at 14:13-17, 19:10-20:19. And DentalPlans also has the ability to query and output its call and account records to identify remaining prerecorded-voice renewal call non-customer recipients, as well. *Id.* at 16:10-17:10, 29. Thus, the proposed Class meets the superiority requirement of Rule 23(b)(3). *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("[T]he Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in

---

[13]    Even if real manageability concerns did exist—they do not—failure to certify a class action under Rule 23(b)(3) solely on manageability grounds is disfavored. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663-64 (7th Cir. 2015) ("[B]efore refusing to certify a class that meets the requirements of Rule 23(a), the district court should consider the alternatives as Rule 23(b)(3) instructs rather than denying certification because it may be challenging to identify particular class members. District courts have considerable experience with and flexibility in engineering solutions to difficult problems of case management. In addition, a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation…. Under this comparative framework, refusing to certify on manageability grounds alone should be the last resort."), *cert. denied*, 136 S. Ct. 1161 (2016); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (refusing to certify a class "on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule").

controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under the … TCPA.").

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff Bradley respectfully requests that the Court: (1) certify the  proposed Class and Subclass; (2) appoint Plaintiff as class representative; (3) appoint her attorneys as class counsel; (4) order Defendants to produce the class call and account records sufficient to identify the Class and Subclass members and their associated contact information for purposes of effectuating notice under Fed.R.Civ.P. 23(c)(2)(B); and (5) granting such other and further relief the Court deems reasonable and just. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

DEBORAH BRADLEY, individually and on behalf of others similarly situated

Dated: December 28, 2021

By:  */s/ Alexander H. Burke*
    Alexander H. Burke (*pro hac vice*)
    BURKE LAW OFFICES, LLC
    909 Davis St., Suite 500
    Evanston, IL 60201
    Telephone: (312) 729-5288
    aburke@burkelawllc.com

    Peter A. Holland (Fed. Bar No. 10866)
    Emanwel J. Turnbull (Fed. Bar No. 19674)
    THE HOLLAND LAW FIRM, P.C.
    914 Bay Ridge Rd. Ste 230
    Annapolis, MD 21401
    Telephone: (410) 280-6133
    peter@hollandlawfirm.com
    eturnbull@hollandlawfirm.com

Amanda J. Allen (*pro hac vice*)
THE CONSUMER PROTECTION FIRM, PLLC
401 E. Jackson St., Suite 2340
Tampa, FL 33602
Telephone: (813) 500-1500
amanda@theconsumerprotectionfirm.com

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that, on December 28, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

    */s/ Daniel J. Marovitch*

19