# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEBORAH BRADLEY

v.

DENTALPLANS.COM, *and* CIGNA
HEALTH AND LIFE
INSURANCE COMPANY

Civil Action No. CCB-20-1094

## **MEMORANDUM**

This action involves telephone calls prohibited by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a statute designed to protect consumers from "intrusive" telemarketing practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (alterations omitted). As part of its mission, the TCPA generally prohibits the use of automatic telephone dialing systems or an artificial or prerecorded voice message to make a call without permission from the recipient. *See* 47 U.S.C. § 227(b)(1). Deborah Bradley is a Maryland resident who received several of these familiar "robocalls" after her Cigna dental discount plan expired. The calls at issue here offered Bradley a "special discount" if she renewed her plan. Bradley brought the present action against DentalPlans.com ("DentalPlans") and Cigna Health and Life Insurance Company ("Cigna") for allegedly violating the TCPA in marketing these dental plans.

Now pending before the court is Cigna's Motion to Dismiss for Lack of Personal Jurisdiction. (ECF 51, Def. Mot.) The issues have been fully briefed, with Bradley filing an Opposition (ECF 60, Pl. Opp'n), and Cigna filing a Reply (ECF 69, Def. Reply). The motion is

ready for decision, and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the court will deny Cigna's motion to dismiss.

## BACKGROUND

Cigna is a multi-national corporation that provides insurance as well as dental discount plans, among other health-related services. (ECF 69-4, Second Havely Decl. ¶¶ 7, 9.) Cigna has numerous affiliates and subsidiaries working together to support its business operations. Cigna Dental Health, for example, works in tandem with Cigna Health and Life Insurance Company to deliver dental-related products to consumers nationwide. Cigna Dental Health is incorporated in and has its principal place of business in Florida. (Second Havely Decl. ¶ 6.) Cigna Health and Life Insurance Company is incorporated in and has its principal place of business in Connecticut. (*Id.* ¶ 5.)

For over a decade, Cigna has used DentalPlans to market, sell, service, and enroll consumers into Cigna's dental discount plans. (ECF 61-8, Pl.'s Ex. F., Mktg. Agreement, at 1.) DentalPlans styles itself as a "direct-to-consumer marketplace" tasked with "marketing dental savings plans, dental insurance plans, and other healthcare-related products." (ECF 51-3, Keen Dep. 5:21-24.) Although DentalPlans markets dental care products for dozens of companies, Cigna and Aetna control the largest market share of the business. (*Id.* at 46:3-24.)

In 2018, Deborah Bradley's family purchased a one-year Cigna Network Access membership through DentalPlans.com. (ECF 61-9, Pl.'s Ex. G.) In doing so, Bradley joined over 5,000 other Marylanders who became Cigna discount dental plan customers through DentalPlans. (ECF 61-4, Pl's Ex. B, at 2.) Cigna's Network Access is a dental *discount plan*, which is distinct from dental *insurance*. Cigna's Network Access provides discounted fees for members seeking specific services from participating providers. (ECF 61-8, Mktg. Agreement at 1.) Cigna has

developed a panel of dentists and providers who accept such discounts based on Cigna's individually negotiated fee schedules. (*Id.*)

For a Maryland resident such as Bradley, a Cigna Network Access membership translated into savings on dental care throughout the state. During Bradley's membership, Cigna would list participating Maryland dentists on DentalPlans' website. (ECF 61-7, Pl.'s Ex. E.) DentalPlans would use the information provided by Cigna to inform the Bradley family which eligible dentists were closest to their Maryland residence. (ECF 61-6, Pl.'s Ex. D.)

Bradley's tenure as a card-carrying Cigna Network Access member came to an end in 2019. (ECF 61-9, Pl.'s Ex. G.) After her Cigna membership expired, DentalPlans repeatedly called Bradley to request that she renew her plan—even after Bradley asked DentalPlans to stop. (Am. Compl. ¶¶ 14–16.) DentalPlans used these "winback" calls to induce former customers to recommit to their membership upon expiration. (ECF 60-11, Pl.'s Ex. I, Keen Dep. 20:23–21:22.) DentalPlans allegedly sent the following prerecorded message to Bradley on multiple occasions:

> *Renew your plan today and get 25% off when you mention the Special code "Secret25". This offer won't last long so please call our DP at your service team back at 1-844-371-2316 between the hours of 8:30 a.m. and 10:00 p.m. Eastern Standard Time. Again, don't forget to mention the code "Secret25" to get your special 25% discount. Thank you and we look forward to speaking with you soon.*
>
> *This is a renewal offer. Please call us back today at 855-217-3939 between the hours of 8:30 a.m. and 10:00 p.m. to take advantage of this limited time offer. Thank you and have a wonderful day.*

(*Id.* at ¶ 15.) Bradley received each of these messages while in Maryland. (*Id.* at ¶ 5.) These messages were allegedly "form communications" sent to "thousands of consumers with identical—or nearly identical—verbiage." (*Id.* at ¶ 17.)

Bradley filed this action on April 28, 2020, seeking class-wide relief against DentalPlans for TCPA violations. (ECF 1, Compl.) Bradley amended her complaint on August 2, 2021, to

3

add Cigna as a defendant. (ECF 42, Am. Compl.) On September 14, 2021, Cigna filed its Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2). (ECF 51, Def. Mot.)

## LEGAL STANDARD

A challenge based on a lack of personal jurisdiction invokes Federal Rule of Civil Procedure 12(b)(2). Personal jurisdiction is ordinarily a question of law decided by the judge, "with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

District courts have "broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). If a court does not hold an evidentiary hearing or permit jurisdictional discovery, but rather relies on the "motion papers, supporting legal memoranda, and the allegations in the complaint," a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis to survive a challenge under Rule 12(b)(2). *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). Under a *prima facie* standard, the court must construe all disputed facts and reasonable inferences in the plaintiff's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("[W]hen considering a motion to dismiss under Rule 12(b)(2) at such a preliminary stage, even when the motion is accompanied by affidavits, we give the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff."). Whether a plaintiff satisfies this standard "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis*

4

*Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). If both parties present affidavits[1] on an issue, the court "must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (citing *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014)).

A threshold finding that personal jurisdiction exists does not finally settle the issue; the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence at a pre-trial hearing or at trial. *See Sneha Media*, 911 F.3d at 196–97. "Of course, if the court denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented." *Id.*

In resolving the present motion, the court will apply a *prima facie* standard given the lack of an evidentiary hearing and the absence of additional jurisdictional discovery. *See id.* at 196.[2]

## ANALYSIS

To assert personal jurisdiction over a non-resident defendant like Cigna, jurisdiction must be proper under (1) the forum state's long-arm statute; and (2) the constitutional right to due process. *See Carefirst*, 334 F.3d at 396 (noting Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the

---

[1] Both parties present declarations to support their positions. Although the case law refers to "affidavits," the declarations before the court are sufficient for the present purposes. *See* Local Rule 601.3 (D. Md. 2021) ("For purposes of these Rules, "affidavit" means either (1) a sworn statement the contents of which are affirmed under the penalties of perjury to be true or (2) an unsworn declaration as provided under 28 U.S.C. § 1746. Unless the applicable rule expressly requires the affidavit to be made on personal knowledge, the statement may be made to the best of the affiant's knowledge, information, and belief.").

[2] The court is aware of some miscommunication between counsel regarding jurisdictional discovery. Cigna opposed Bradley's jurisdictional discovery requests but agreed to provide Bradley with a declaration to avoid discovery-based motion practice. Bradley contends the declaration was not furnished in a timely manner, and ultimately did not contain information the parties allegedly agreed upon. This miscommunication may have prevented Bradley from receiving relevant jurisdictional discovery, which weighs in favor of a cautious approach when deciding whether Bradley must prove jurisdiction under a *prima facie* or preponderance of the evidence standard. (*Compare* Pl.'s Opp'n at 2 n.2 *and* Burke Decl. ¶ 14 *with* Def.'s Reply at 6 n.2.)

state where the district court sits). Maryland courts have "consistently held" that Maryland's long-arm statute is "coextensive" with the limits of personal jurisdiction under the Due Process Clause. *Id.* The statutory and constitutional requirements thus "ultimately collapse into virtually the same analysis." *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993); *see also Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 580 (Md. 2005) ("Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination.").[3]

The Due Process Clause requires that defendants have sufficient "minimum contacts" with the forum state such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Carefirst*, 334 F.3d at 396 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, Cigna's contacts with Maryland must "make it reasonable, in the context of our federal system of government," to require the corporation to litigate in the state. *See Int'l Shoe*, 326 U.S. at 317. In addition to protecting defendants from "the burdens of litigating in a distant or inconvenient forum," the Due Process Clause ensures States "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980).

---

[3] Although the inquiry under the Maryland long-arm statute "merges with [the] constitutional inquiry," it is not permissible to completely dispense with analyzing the long-arm statute. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (citing *Mackey v. Compass Mktg. Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006)). The Maryland long-arm statute authorizes jurisdiction over a person who, directly or by an agent: "[t]ransacts any business or performs any character of work or services in the State." Md. Code Ann., Cts. & Jud. Proc § 6-103(b)(1). "Agent" under the Maryland long-arm statute is broadly construed. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 143 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985) ("[W]hile an absolute right to control the actor's physical conduct may be necessary in order to hold a principal liable for the actor's tortious conduct, such is not necessary for there to be an agency relationship between the parties themselves.") That is, a less formal agency relationship may exist sufficient "for jurisdictional purposes" even in the absence of a "traditional, general agen[cy]" relationship. *Id.* Here, Cigna's contacts with Maryland include thousands of distinct business transactions for health-related services. And by calling Bradley, DentalPlans "performed acts in Maryland on behalf of, and at the direction of, [Cigna]" which constitutes "transacting business" under the long-arm statute. *See id.*

There are two types of personal jurisdiction—general and specific. A court with general jurisdiction may hear "*any* claim against that defendant, even if *all* the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). But a court may exercise general jurisdiction only when the defendant's contacts with the forum state are "so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal punctuation and quotations omitted). A corporation is generally "at home" in its state of incorporation and where it has its "principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Cigna is neither incorporated nor has its principal place of business in Maryland. (Second Havely Decl. ¶¶ 5–6.) Bradley, understandably, does not suggest general jurisdiction exists. (Pl. Opp'n at 5.) Rather, Bradley argues specific jurisdiction applies because the alleged TCPA violations "arise out of" and "relate to" Cigna's contacts with Maryland.

The Fourth Circuit has synthesized three due process requirements for the exercise of specific personal jurisdiction: (1) the defendant must have "purposefully availed" itself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims must arise out of or relate to those activities directed at the forum state; (3) the exercise of jurisdiction must be "constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1057 (2021) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

## I.    Purposeful Availment

As to the first prong, the defendant must have "purposefully directed [its] activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). This "purposeful availment" requirement protects defendants from "be[ing] haled into a jurisdiction

solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475 (internal punctuation omitted). Understanding "this prong is not susceptible to a mechanical application," the Fourth Circuit has listed "various nonexclusive factors" to guide the inquiry, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Kurbanov,* 963 F.3d at 352 (quoting *Sneha Media,* 911 F.3d at 198–99). Specific jurisdiction exists if, based on these factors, the court finds Cigna "availed [it]self of the privilege of conducting business in [Maryland]." *See id.*

Bradley has made a *prima facie* showing that Cigna's contacts with Maryland satisfy the "purposeful availment" requirement. As of 2019, Cigna was providing dental insurance to more than 350,000 Maryland residents. (ECF 61-1, Burke Decl. ¶ 14.) That number does not even count residents with non-dental insurance from Cigna, or the thousands of Maryland-based customers who purchased non-insurance products from Cigna, such as discount dental plans. Around 5,800 Marylanders, for example, became a Cigna customer through DentalPlans. (ECF 61-4, Def. DentalPlans' Supp. Obj. & Resp., at 2.)

Cigna cultivated its extensive customer base through "long-term business activities" in Maryland. *See Kurbanov,* 963 F.3d at 352. To start, the company has maintained a license to sell insurance in Maryland since 1982. (*See* ECF 61-5, Pl.'s Ex. C, Cigna's Profile on Maryland Insurance Administration Website, at 1.) Cigna's business model, fostered by DentalPlans, establishes "continuing obligations" and promotes ongoing connections with customers, *see Burger King,* 471 U.S. at 476, by automatically renewing certain membership plans (*see* ECF 61-

8

11, Pl's Ex. I, Keep Dep. 39:2-17). And Cigna's process of negotiating with Maryland-based dentists for discounted member-rates demonstrates Cigna's contacts with Maryland are more than mere happenstance. *See Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, 2006 WL 2572474, at *9 (D. Md. Sept. 5, 2006) (finding purposeful availment where nonresident defendant's business involved "multiple steps" and "ongoing interaction" with Maryland residents, and the defendant "continued to pursue a business relationship" with Maryland customers after receiving the complaint).[4]

In another example of its commitment to Maryland customers, Cigna operates a brick-and-mortar office in the state, complete with a Maryland-based phone-number for support. (Pl.'s Opp'n at 8, citing Cigna, Maryland Contact Page, https://www.cigna.com/contact-us/all-states#stateProv=MD.) Cigna's dental insurance covers services provided by more than a hundred Maryland dentists. (ECF 61-10, Pl.'s Ex. H, Cigna's Maryland Coverage). DentalPlans—using information supplied by Cigna—advertises participating Maryland dentists to Maryland-based Cigna dental plan customers. (ECF 61-6, Pl.'s Ex. D, DentalPlans Email Advertising Maryland Dentists). Cigna negotiates with Maryland-based dentists to provide reduced rates for its discount dental plan customers. (ECF 61-8, Mktg. Agreement, at 1.) Cigna even advertises the geographic specificity of its discount plans, noting its product "is based geographically by ZIP code in terms of provider participation and location." (ECF 61-7, Pl.'s Ex. E, Cigna's Website, at 2.) These contacts were not created from the "'unilateral activity' of a third party," *cf. Walden v. Fiore*, 571 U.S. 277, 291 (2014) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), but were instead forged from Cigna's intentional decision to target and avail itself of the Maryland market. *See Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1019 (D. Md. 2020) (finding purposeful

---

[4] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

availment where defendants "sought patient information" from Maryland customers, provided services to Maryland residents, and "maintained a web portal" for Maryland customers).

Cigna is no stranger to Maryland, and the court will not treat it as one. Bradley has made a sufficient *prima facie* showing that Cigna purposefully availed itself of the privilege of conducting activities in Maryland.

## II.   Nexus Requirement

The parties dispute primarily whether Bradley has satisfied the second prong, which requires that her lawsuit have a sufficient nexus to the defendant's forum-based activity. This element "demands that the suit arise out of *or* relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (citing *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1776; internal quotation marks omitted). The first half of that standard—the "arise out of" phrase—asks about causation, while the back half—the "relate to" phrase—"contemplates that some relationships will support jurisdiction without a causal showing." *Id.* A plaintiff may satisfy the nexus requirement by showing that the suit *either* "arises out of" *or* "relates to" the defendant's contacts with the forum.

Bradley argues that her claims both "arise out of" and "relate to" Cigna's *own contacts* with Maryland. Cigna contends that Bradley's "claims relate solely to the transmittal of certain voice messages" in violation of the TCPA. (Def. Reply at 6.) DentalPlans—not Cigna—placed those calls, meaning Bradley's lawsuit does not "arise out of" or "relate to" Cigna's contacts with Maryland. After all, Cigna contends, this case is not about any of *its* products; this case is about *telemarketing* that "Cigna had nothing to do with." (*Id.* at 7.) Cigna argues Bradley's claim "relates to" Cigna only if DentalPlans acted as Cigna's agent.

10

Whether Cigna's *own contacts* independently satisfy the nexus requirement involves a somewhat novel application of *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).[5] Before *Ford*, federal courts consistently used agency law to determine whether personal jurisdiction existed over a principal-seller.[6] Bradley has not cited any TCPA case in any jurisdiction where a court exercised specific jurisdiction over a purported principal absent an agency relationship.

The present dispute does not compel the court to explore the contours of *Ford* and its relationship to vicarious jurisdictional issues. The court leaves the question of whether *Ford* topples that tradition to "future litigants and [other] lower courts," who will assuredly "sort out a responsible way to address the changes posed by our changing economy[.]" *Ford*, 141 S. Ct. at 1039 (Gorsuch, J., concurring). Because Bradley has made a *prima facie* showing that DentalPlans acted as Cigna's agent, the calls Bradley received are attributable to Cigna. Accordingly, the court

---

[5] *Ford* involved two separate product liability suits against the Ford Motor Company. 141 S. Ct. at 1023. The plaintiffs in both cases suffered serious injuries from car accidents involving Ford vehicles, and each plaintiff brought their suit where their respective accidents occurred—one in Montana, the other in Minnesota. *Id.* Ford moved to dismiss each suit for lack of personal jurisdiction. *Id.* Ford did not design, manufacture, or sell the specific vehicles at issue in Montana or Minnesota. *Id.* The cars, which Ford originally sold in Washington and North Dakota, only ended up in the forum States due to a series of resales and relocations by consumers. *Id.* Ford argued jurisdiction was improper because no causal connection existed between the company's forum-based activities and the plaintiffs' injuries—that is, the injuries did not "arise out of" any of Ford's contacts with Montana or Minnesota. *Id.* at 1026.

The Supreme Court unanimously upheld jurisdiction. Justice Kagan, writing for the majority, explained that due process does not necessarily require a strict causal relationship between a defendant's in-state activities and the litigation. *Id.* Specific jurisdiction requires that the suit "arise out of *or relate to* the defendant's contacts with the forum." *Id.* at 1026 (emphasis in original). While the "arise out of" language focuses on causation, the second half of the test "contemplates that some relationships will support jurisdiction without a strict causal showing." *Id.* Because Ford systematically served a market in Montana and Minnesota for the type of vehicles that allegedly injured the plaintiffs in those forums, there was still "a strong 'relationship among the defendant, the forum, and the litigation'— the 'essential foundation' of specific jurisdiction." *Id.* at 1028 (internal citations omitted). The applicability of *Ford* to the present dispute is not readily apparent, as the case did not concern an agency relationship.

[6] *See, e.g.*, *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584–89 (S.D. Ohio 2016); *Shanahan v. Nat'l Auto Prot. Corp.*, 2020 WL 3058088, at *3 (N.D. Ill. June 9, 2020); *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *5–6 (N.D. Cal. Dec. 4, 2017); *Kern v. VIP Travel Servs.*, 2017 WL 1905868, at *4 (W.D. Mich. May 10, 2017).

need not resolve whether Cigna's *own* forum-based contacts sufficiently "relate to" TCPA claims so as not to offend the right to due process.

Cigna's vicarious liability for the calls to Bradley—a Maryland resident who received the impermissible calls while in Maryland—easily satisfies the "relatedness" test. A corporation like Cigna "can purposefully avail itself of a forum by directing its agents or distributors to take action there." *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).[7] If an agency relationship exists, then DentalPlans' contacts with Maryland—including the robocalls at issue—may be attributable to Cigna. *See Giannaris v. Cheng*, 219 F. Supp. 2d 687, 693 (D. Md. 2002) ("A court may exercise personal jurisdiction over a non-resident corporation based on the acts of its agents in Maryland."). Because the court has personal jurisdiction over DentalPlans based on its calls to Bradley,[8] the court may exercise specific jurisdiction over Cigna if DentalPlans was acting as Cigna's agent. *See Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861–62 (N.D. Ill. 2020) (exercising personal jurisdiction based on an agency theory in a TCPA robocall case).

At this stage, Bradley has made a *prima facie* showing that an agency relationship exists between Cigna and DentalPlans. Vicarious liability plays an essential role in enforcing the TCPA and exercising jurisdiction over sellers aligns with the regulatory mission of the statute. Sellers are "in the best position to monitor and police TCPA compliance by third-party telemarketers," and

---

[7] Cigna cites *Walden v. Fiore*, 571 U.S. 277, 286 (2014), and *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017), for the proposition that Cigna's relationship with DentalPlans' alone is insufficient to confer jurisdiction. (ECF 51-1, Def. Mem. at 8.) Neither case applies here. In both *Walden* and *Axiom*, the *only* contact the defendants had with the forum state was created through the defendants' contacts with their respective plaintiffs. Cigna, in contrast, has significant contacts with Maryland that have little to do with Bradley being a former Cigna customer.

[8] Bradley is a Maryland resident and received the calls at issue while she was in Maryland. (Am. Compl. ¶ 5.) "[I]n the context of the TCPA, . . . personal jurisdiction is proper in the District where an unlawful communication is received." *Mey v. Castle Law Grp.*, 2019 WL 4579290, at *4 (N.D.W. Va. Sept. 20, 2019); *see also Payton v. Kale Realty, LLC*, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant.").

vicarious liability incentivizes companies to keep their telemarketers in compliance with the law. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6588 (2013) (hereinafter, "*Dish Network*").[9] The TCPA would no longer offer consumers relief from intrusive robocalls if sellers could "avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties," who are often "judgment proof, unidentifiable, or located outside the United States." *Id.* at 6588.

Vicarious liability, however, is not unlimited liability; sellers are not strictly liable for all actions taken by their telemarketers. Rather, "vicarious liability under the TCPA is governed by the federal common law of agency." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) (citing *Dish Network*, 28 FCC Rcd. at 6584). Federal courts look to the Restatement of Agency "[t]o determine these common law principles," under which an agency relationship may be established by (1) actual authority (that is, "formal agency"); (2) apparent authority; and (3) ratification. *Id.* (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989)).[10] The court will address each in turn.

### A.  Actual Authority

An agency relationship exists when one person or entity (a "principal") "manifests assent" to another person or entity (an "agent") "that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."

---

[9] The extent of deference afforded to the FCC's ruling in *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013), was an open question for some years. The Supreme Court largely settled the debate in 2016 when a majority opinion did not question the FCC's ruling. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred to that ruling, and we have no cause to question it.") (internal citations omitted).

[10] *See also Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) ("[T]o determine the general common law of agency, the [Supreme] Court notes that it has traditionally looked to sources such as the Restatement of Agency.").

*Krakauer v. Dish Network, LLC*, 925 F.3d 643, 659–60 (4th Cir. 2019) (quoting Restatement (Third) of Agency § 1.01 (2006).) The "essential element" of an agency relationship is the "principal's control over the agent's actions." *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980 (D. Md. 2019) (citing Rest. (3d) of Agency § 1.01, cmt. f). The relevant inquiry in TCPA cases is whether the principal controlled—or had the right to control—the "manner and means" of the telemarketing campaign. *Id.* (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F.App'x 678 (9th Cir. 2014)).

Bradley has made a *prima facie* showing of an agency relationship based on actual authority. Her amended complaint provides a litany of specific allegations regarding Cigna's ability to control DentalPlans' marketing campaign. (ECF 42, Am. Compl. ¶¶ 23(a)–(e).) Bradley alleges, for example, that Cigna retained: (1) the right to assess and audit DentalPlans' marketing practices and communications (*id.* at ¶ 23(b)); (2) the right to terminate its relationship with DentalPlans at any time for any perceived breach of contract (*id.* at ¶ 23(c)); and (3) the right to "provide interim instructions" to DentalPlans, "including with regard to the specifics of [DentalPlans'] telemarketing practices" (*id.* at ¶ 23(e)).

That Cigna allegedly retained the power to assess, instruct, and terminate its business with DentalPlans provides strong evidence of an agency relationship. *See, e.g.*, Rest. (3d) of Agency § 1.01, cmt. f ("The principal's right of control presupposes that the principal retains the capacity . . . to assess the agent's performance, provide instructions to the agent, and terminate the agency relationship by revoking the agent's authority."); *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at \*7 (W.D. Okla. July 16, 2019) (applying Rest. (3d) of Agency § 1.01, cmt. f, *inter alia*, in finding an agency relationship existed in TCPA case); *Bakov v. Counsel World Travel, Inc.*, 2019 WL 6699188, at \*6 (N.D. Ill. Dec. 9, 2019) (finding actual authority existed because

the defendant "had the right to provide interim instructions to [the telemarketer] in the form of a script modification, to give . . . weekly performance reports, to control aspects of the phone call through providing a script, and to terminate the relationship and revoke [the telemarketer's] authority under the [a]greement").

Cigna relies primarily on sworn declarations by Angela Havely, Associate Senior Counsel at Cigna, to rebut these allegations. (ECF 51-4, First Havely Decl.; ECF 69-4, Second Havely Decl.) Havely submits:

> Cigna does not control, and has no right to control, the manner and means by which DentalPlans sends renewal communications to its customers, including the alleged renewal communication [Bradley received,] alleged in paragraph 15 of the Amended Complaint. In addition, Cigna has never provided, and does not have the right to provide, any interim instructions to DentalPlans regarding these communications. Nor does Cigna have the right to assess or audit the manner or means of such communications. Rather, DentalPlans has exclusive control of which customers receive renewal communications, when renewal communications are sent, the manner in which they are sent, and the content of the messages.

(First Havely Decl. ¶¶ 8–11.) Havely continues, stating that Cigna has never "had any communications with DentalPlans regarding the timing, content, method, or means of any of DentalPlans' communications to customers in Maryland that have purchased a dental discount plan developed by Cigna." (Second Havely Decl. ¶ 11.)

Bradley urges the court to disregard Havely's declarations as impermissibly conclusory. (Pl. Opp'n at 12–13.)[11] The court is not so convinced. Havely provides specific statements

---

[11] Bradley also contends "the Havely declaration should be disregarded" because it "fails to adequately present personal knowledge about Defendant Cigna Health and Life Insurance Company." (Pl.'s Opp'n at 13 n.16.) Havely's first declaration stated that she was counsel at "Cigna Dental & Vision," which meant, according to Bradley, that Havely could not "present personal knowledge" about "the actual defendant in this case, Cigna Health and Life Insurance Company." (*Id.*) Bradley's argument is unavailing for three reasons. First, Havely noted that she was responsible for managing Cigna's dental products and vendor relationships, which is sufficient to testify to the issues raised in her declaration. Second, Havely's second declaration corrects the issue and clarifies her testimony applies to "any other Cigna affiliate" in addition to Cigna Health and Life Insurance Company. (Second Havely Decl. ¶ 11.) Third, "[n]o applicable rule expressly requires that an affidavit in support of a motion to dismiss for lack of personal jurisdiction be based upon personal knowledge." *Finley Alerxxander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, 2020 WL 1322948, at *4 (D. Md. Mar. 20, 2020); *see also* Local Rule 601.3 (D. Md. 2021) (an affidavit based on (*Footnote continues on next page.*)

describing Cigna's relationship with DentalPlans. Any rebuttal of Bradley's allegations at this stage necessarily involves attempting to prove a negative. That is, Havely swears that Cigna never communicated with DentalPlans in a way that would suggest an agency relationship exists between the two entities. It is difficult to imagine how Havely's declarations could be more specific. Disregarding Havely's declaration as impermissibly conclusory would flip the applicable burden of proof. Bradley—not Cigna—has the burden of establishing personal jurisdiction, and the court will not disregard Havely's declarations based on a purported lack of factual specificity. *See Finley Alenxander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, 2020 WL 1322948, at *4 (D. Md. Mar. 20, 2020) (rejecting plaintiff's request to strike defendant's supposedly "conclusory" affidavit in support of a motion to dismiss for lack of personal jurisdiction).[12]

Havely's declarations, though non-conclusory, do not excuse Cigna from the litigation— at least not yet. At the motion to dismiss stage, Bradley need only make a *prima facie* showing of jurisdiction. After Cigna provided declarations and other evidence to support its motion, Bradley did not simply rest on her complaint—she submitted Cigna's marketing agreement with DentalPlans ("Agreement"), which rebuts enough of Havely's assertions to keep Bradley's *prima facie* showing alive. *See Krakauer*, 925 F.3d at 660 (noting "provisions of [a] contract between [a seller] and [a marketer] affording [the seller] broad authority over [the marketer's] business" provide evidence of an agency relationship).

---

"knowledge, information and belief" is sufficient unless an applicable rule "expressly requires" that an affiant have personal knowledge).

[12] Bradley's authority, *Dowdy v. St. Paul Travelers Cos.*, 2006 WL 8443499, at *3 (D.S.C. Apr. 21, 2006), is inapplicable to the present dispute. The declaration at issue in *Dowdy* "contain[ed] only conclusory assertions that [the defendant] [was] not subject to jurisdiction." *Id.* at *3. Havely's declaration does not rest on a general denial of jurisdiction. Havely provides specific statements denying Cigna's knowledge of relevant facts.

A plain reading of the Agreement rebuts most of Havely's assertions while simultaneously substantiating Bradley's allegations. Cigna allowed DentalPlans to market its dental discount plan *only if* DentalPlans provided Cigna with detailed information about its marketing strategies. (*See* ECF 61-8, Mktg. Agreement, at § 2.1.) Cigna required DentalPlans to submit "*any* and *all* marketing, advertising or other promotional materials and content, *however produced or utilized*, related to the Discount Services Program." (*Id.* at § 2.1(e), emphasis added.)[13] Additionally, DentalPlans was required to send Cigna "[a] list of all brokers, agents, consultants or other third parties that are authorized to accept membership fees from a member while engaged in marketing, advertising, promoting or selling the Discount Services Program." (*Id.* at § 2.1(g).)

Cigna's right to receive information might not, by itself, constitute "control" over the "manner and means" of DentalPlans' marketing campaign. *See Wilson*, 422 F. Supp. 3d at 980. But the agreement goes much further. DentalPlans needed Cigna's prior written approval to market Cigna's product, which Cigna would give only *after* DentalPlans furnished the required information. (*Id.* at § 2.1.) And Cigna "reserve[d] the right, at its *sole discretion*, to direct [DentalPlans] to immediately suspend or end the right of any broker, agent, consultant or other third party to market, advertise or promote the selling of the Discount Services Program." (*Id.* at § 2.1(g).)

Under the Agreement, DentalPlans must give Cigna prior notice of "any proposed changes" to relevant aspects of its business plan, which includes changes to marketing materials. (*Id.* at § 2.2.) If any such change fails to meet Cigna's standards, then Cigna may, "in its sole discretion," immediately revoke DentalPlans' right to market Cigna's products. *Id.*; *see Legg v. Voice Media*

---

[13] Cigna reads Section 2.1(e) as requiring "only that Cigna approve of material for *Cigna*'s dental discount program, *not* material used in marketing that is conducted for DentalPlans and Cigna's competitors." (Def. Reply at 12.) The parties' dispute about the scope of materials covered by Section 2.1(e) does not need to be resolved at this time.

*Grp., Inc.*, 20 F. Supp. 3d 1370, 1380 (S.D. Fla. 2014) (denying summary judgment and finding sufficient indicia of control to create an issue of fact where, along with substantial control over transmission of text messages, a contract provided the seller "with the option to terminate the relationship in the event that [the marketer] does not meet [the seller's] reasonable expectations"). Cigna also requires extensive monthly reporting (*id.* at §§ 3.4(l)-(m)), and maintains the power to inspect materials under the guise of "quality control" over DentalPlans' use of Cigna's trademarks (*id.* at § 5.1).

In some circumstances, DentalPlans must provide Cigna with call tracking notes and related internal correspondence. (*Id.* at § 3.4(h).) And DentalPlans must receive Cigna's permission to publicly distribute "*any* materials describing the Dental Discount Plan," which Cigna may approve "in its sole and absolute discretion." (*Id.* at § 5.2).) Each of these provisions suggest the existence of an agency relationship. *See Krakauer*, 925 F.3d at 660 (describing evidence of an agency relationship as including contractual provisions dictating a telemarketer's recordkeeping, technology, and use of the seller's name and logo).[14] And any factual conflict between the Agreement and Havely's declaration must be construed in Bradley's favor at this stage. *See Sneha Media*, 911 F.3d at 196.

Cigna argues DentalPlans never had a duty to act primarily for Cigna's benefit, which prevents Bradley from satisfying a "key element" of actual authority. (Def. Reply at 14.) To be sure, DentalPlans has other business partners, and the calls Bradley received did not explicitly mention Cigna's name. Bradley could have even gone so far as to select one of Cigna's competitors

---

[14] Cigna contends the communications at issue here did not include the Cigna logo, so any provisions regulating the use of such logos is not relevant to the question of control. The court disagrees. That the communications Bradley received did not reference Cigna's name could have been the *result* of Cigna's control over the message, rather than evidence of the absence of Cigna's control.

after receiving the call. Cigna contends Bradley's "concession in this regard is dispositive" (Def.

Reply at 15), but the language directly after Cigna's quoted authority concludes otherwise:

> An agency relationship may be created by written agreement or by conduct. The classic three factors considered in determining whether an agency relationship exists are whether: (1) the agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent has the power to alter the legal relations of the principal. [Cigna's quote ends here. *See* Def. Mem. at 8.] These are *not exclusive* factors; *rather than being determinative*, the three factors should be viewed within the context of the entire circumstances of the transaction or relations.

*See Worsham v. Direct Energy Servs., LLC*, 2021 WL 948819, at *6 (D. Md. Mar. 12, 2021)

(internal comment and emphasis added). Accordingly, Bradley need not demonstrate that

DentalPlans acted primarily for the benefit of Cigna so long as the "entire circumstances" establish

the existence of an agency relationship. *See id.*

Bradley has satisfied the standard outlined in *Worsham*. *See id.* She has provided *prima*

*facie* evidence that DentalPlans was under Cigna's right of control by a variety of contractual

provisions, and that DentalPlans had the power to enlist members in Cigna's discount dental plan.

That DentalPlans also contracted with Cigna's competitors is immaterial, even assuming the

messages at issue could have related equally to other discount plans. Bradley's *prima facie*

showing cannot be short-circuited so easily; "[a]n agent can serve multiple principals at once, even

principals that are competing with one another." *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722

F.3d 1229, 1250 (10th Cir. 2013) (citing Rest. (3d) of Agency § 3.14).

Whether DentalPlans acted primarily for the benefit of Cigna, while relevant, is not

dispositive. *See Bhambhani v. Innovative Health Sols., Inc.*, 2020 WL 673180, at *4 (D. Md. Feb.

11, 2020) (noting cases where courts have found an agent did not have a duty to act primarily for

the benefit of the principal yet still finding an agency relationship existed). In any event, the

contractual provisions proffered by Bradley—combined with her detailed allegations in the

amended complaint—are sufficient for a *prima facie* showing. *See Bilek*, 470 F. Supp. 3d at 861

(denying motion to dismiss where the plaintiff alleged a seller "maintained *at least some* right of

control" over the conduct of the third-party).[15]

The fact that Cigna's contract with DentalPlans disclaims an agency relationship is

similarly not dispositive. (Def. Reply at 14; Mktg. Agreement, at § 9.1.) Although an express

disclaimer of an agency relationship is a relevant factor, *see Proctor v. Metro. Money Store Corp.*,

579 F. Supp. 2d 724, 737 (D. Md. 2008), "parties cannot avoid the legal obligations of agency by

simply contracting out of them." *Krakauer*, 925 F.3d at 660 (citing Rest. (3d) of Agency § 1.02);

*see also Proctor*, 579 F. Supp. 2d at 738. A failure to "look beyond the contract . . . might lead to

absolving a company . . . that acquiesced in and benefitted from a wrongful course of conduct that

was carried out on its behalf." *Krakauer*, 925 F.3d at 660–61. "At no time" has the Fourth Circuit

"suggested that a contractual disclaimer was alone dispositive." *Id.* at 661 (citing *Robb v. United

States*, 80 F.3d 884, 893 n.11 (4th Cir. 1996)).

None of the contractual provisions cited by Bradley, of course, rebut Havely's claim that

Cigna never *actually* controlled (or even discussed) the manner of the telemarketing campaign.

But Bradley need not demonstrate that Cigna *actually* controlled the manner and means of the

telemarketing campaign; at this stage, *prima facie* evidence of Cigna's "*right* to control" the

---

[15] Courts around the country have permitted claims of an agency relationship to survive past the pleading stage on fewer facts. *See, e.g., Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 704 (M.D. Pa. 2014) ("This pleading, by itself, is enough to state a claim, plausible on its face, that Fannie Mae is vicariously liable for the phone calls made by Resolve."); *McCabe v. Caribbean Cruise Line, Inc.*, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014) ("While McCabe's allegation that the free cruise robocall was made pursuant to a contract to which CCL is a party is sparse, in conjunction with the other allegations contained in the amended complaint it suffices to "nudge" his claims against CCL "across the line from conceivable to plausible.") At the pleading stage, a plaintiff need only allege a factual basis that gives rise to an inference of an agency relationship. *See Dish Network*, 28 FCC Rcd. at 6593 n. 139 ("[N]othing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf."). Although these cases discuss pleading standards under a motion to dismiss for failure to state a claim, the inquiry here is similar. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (evaluating whether a plaintiff satisfies the *prima facie* standard under a Rule 12(b)(2) motion "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)").

campaign will suffice. *See Wilson*, 422 F. Supp. 3d at 980 (emphasis added, citation omitted). In citing the Agreement's provisions, the court is not making any final interpretation as to the meaning or effect of the contract. At this stage, the court merely finds that Bradley has provided *prima facie* evidence of jurisdiction after viewing the evidence in a light most favorable to her.

### B. Apparent Authority

An agent has apparent authority to bind a principal if a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. *See Dish Network*, 28 FCC Rcd. at 6586 (citing Rest. (3d) of Agency § 2.03). Apparent authority "applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority." Rest. (3d) of Agency § 2.03, cmt. a.

Cigna submits that apparent authority arises only from a manifestation made by a principal directly to a third party, and proclaims the lack of "any manifestation from Cigna *to the Plaintiff.*" (Def. Reply at 16.) Apparent authority, according to Cigna, "does not arise based on the third party's 'reasonable belief' regarding agency *or* the principal's 'express authorization' of the agent." (*Id.* at 17.)

Apparent authority is not so limited. Manifestations creating such authority "may take many forms," and the Restatement (Third) lists multiple circumstances that do not require a principal's direct communication with a third party:

> For example, a principal may make a manifestation about an agent's authority by directing that the agent's name and affiliation with the principal be included in a listing of representatives that is provided to a third party. The principal may make a manifestation by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing the agent in charge of a transaction or situation.

Rest. (3d) of Agency § 2.03, cmt. c.; *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 237 (4th Cir. 2019) ("Apparent authority . . . can exist where 'the principal *knowingly permits* the agent to exercise authority, *or* the principal holds the agent out as possessing such authority.'") (citations omitted and emphasis added).[16] Cigna's narrow interpretation of apparent authority may be an outdated relic from the Restatement (Second) era. The court will instead rely on the Restatement (Third), which sought "to eliminate any inference that, to create apparent authority, a principal's manifestation must be directed to a specific third person in a communication made directly to that person." Rest. (3d) of Agency § 2.03, reporter's note a; *see also Dish Network*, 28 FCC Rcd. at 6584 n.102 (applying the updated provision from the Restatement (Third) to the TCPA, noting the rule is "commonly understood under modern agency principles").

Bradley has made a *prima facie* showing of apparent authority. Bradley was a prior Cigna dental discount plan member, so when DentalPlans called to request that she "[r]enew [her] plan today" (Am. Compl. ¶ 15), Bradley reasonably believed that Cigna authorized the correspondence. The message provided a special discount code and stated, "[t]his is a renewal offer." (*Id.*) Even if Bradley could have selected a different discount plan at that time, no evidence suggests she was aware of those options. A person receiving a request to "renew their plan" would reasonably assume the message referred to their most recent plan. And in fact, the "default" for these "winback" calls was to renew customers with their prior program. (ECF 60-11, Keen Dep. 47:6-16.)

Bradley's belief is also traceable to Cigna's manifestations. Under its Agreement with DentalPlans, Cigna should have received the content and materials related to the call at issue. (*See* ECF 61-8, Mktg. Agreement, at § 2.1(e).) Even if mere receipt of this information is not sufficient

---

[16] Although the Fourth Circuit in *Berkeley County School District* analyzed South Carolina agency law, its description of apparent authority is not materially (if at all) different from the rule set out in the Restatement.

to show Cigna knew (or reasonably should have known) of DentalPlans' conduct, the Agreement requires Cigna's affirmative consent *after* Cigna's receipt of such material. (*Id.* at § 2.1.) And Cigna expressly permitted DentalPlans to hold itself out as a Cigna dealer, which included authorization for DentalPlans to use Cigna's name, logo, and trademark under certain circumstances. (Am. Compl. ¶ 15; Mktg. Agreement, at §§ 5.2–5.3.) Each of these manifestations are textbook examples of actions sufficient to demonstrate apparent authority. *See Dish Network*, 28 FCC Rcd. at 6592–93 (listing types of evidence demonstrating apparent authority including, *inter alia*, the marketer's ability to use the seller's name and trademark, as well as evidence showing the seller approved, wrote, or reviewed the telemarketing materials).

Accordingly, Bradley has made a *prima facie* showing that DentalPlans had apparent authority from Cigna when making the calls at issue.

### C. Ratification

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) (citing Rest. (3d) of Agency § 4.01(1)). A party "may ratify an act by failing to object to it or to repudiate it," or by "receiving or retaining [the] benefits it generates." Rest. (3d) of Agency § 4.01, cmts. f, g. A purported principal, however, "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge." *Id.* at § 4.06.

It is unclear whether Cigna affirmed or knowingly acquiesced to DentalPlans' telemarketing schemes. On the one hand, sworn statements from both Cigna and DentalPlans contend Cigna had no actual knowledge of the calls allegedly made to Bradley. On the other, the Agreement between Cigna and DentalPlans provides some circumstantial evidence that Cigna may

have known about the impermissible calls. The court need not decide the ratification issue, having already found that Bradley has stated a *prima facie* case of actual and apparent authority.

### III.   Reasonableness

The third and final prong asks whether exercising jurisdiction would be constitutionally reasonable. Under this prong, the defendant has the burden to "present a compelling case" that jurisdiction is unreasonable. *See Burger King*, 471 U.S. at 477. This "reasonableness" requirement "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage" in the litigation. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) (internal quotations omitted). The court must consider the "burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief" as part of the reasonableness inquiry. *Id.*

Cigna—a multinational corporation—would face little burden defending a lawsuit in Maryland. The corporation is quite familiar with the laws of this jurisdiction, having provided health-related products and services for thousands of Marylanders. Maryland has a significant interest in providing a forum for its citizens to seek relief for in-state injuries. Cigna has previously requested relief under Maryland law. For example, Cigna affirmatively filed a lawsuit *in this District* related to its Maryland customers and its transactions with Maryland surgery centers. *See Cigna Health & Life Ins. Co. v. Advanced Surgery Center of Bethesda LLC*, No. 8:14-cv-02376, 2014 WL 3689687 (D. Md. July 25, 2014). Further, modern developments in communication technology, such as the ability to conduct remote hearings, diminish the burden of defending a lawsuit in this District.

Accordingly, exercising jurisdiction over Cigna is constitutionally reasonable. With each prong satisfied, the court finds that it may exercise specific personal jurisdiction over Cigna.

24

## CONCLUSION

For the reasons discussed herein, the court will deny Cigna's motion to dismiss. The court's

holding evaluates only whether Bradley has made a *prima facie* showing of jurisdiction. The issue

of Cigna's vicarious liability may, of course, be revisited at later stages of the dispute. A separate

Order follows.

7/27/22
Date

Catherine C. Blake
United States District Judge