**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

DEBORAH BRADLEY, individually and on behalf
of others similarly situated,

       Plaintiff,

v.

DENTALPLANS.COM, and CIGNA HEALTH
AND LIFE INSURANCE COMPANY

       Defendants.

_____/

       CASE NO. 1:20-cv-01094

       **CLASS ACTION
       JURY TRIAL DEMANDED**

**DEFENDANT DENTALPLANS.COM'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Brian D. Frey, Maryland Bar No. 17592
The Atlantic Building, 950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
brian.frey@alston.com

Derin B. Dickerson (admitted *pro hac vice*)
David B. Carpenter (admitted *pro hac vice*)
Georgia Bar No. 292101
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
derin.dickerson@alston.com
david.carpenter@alston.com

Kelsey L. Kingsbery (admitted *pro hac vice*)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-862-2200
kelsey.kingsbery@alston.com

*Attorneys for Defendant DentalPlans.com*

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 2

       A.    DentalPlans' Policies and Procedures to Ensure TCPA Compliance.....................2

       B.    DentalPlans' Consent Disclosure and Calls with Plaintiff ...................................3

III.   LEGAL STANDARD............................................................................................. 5

IV.    ARGUMENT .......................................................................................................... 6

       A.    DentalPlans is Entitled to Summary Judgment Because Plaintiff Lacks Article III
             Standing to Pursue Her TCPA Claims........................................................................7

             1.    A Plaintiff Cannot Establish Injury-in-Fact by Claiming a Bare Procedural
                   Violation. ..........................................................................................................8

             2.    The Harm the TCPA Was Designed to Remedy is the Receipt of
                   Unauthorized Calls............................................................................................9

             3.    Plaintiff Has Not Suffered Concrete Injury. ...............................................11

             4.    Mere Receipt of Telephone Calls is Not a Concrete Injury.......................12

       B.    DentalPlans is Entitled to Summary Judgment on Plaintiff's TCPA Claims
             Because She Consented to the Calls at Issue. .........................................................14

             1.    DentalPlans' Plan Renewal Calls to Plaintiff are Not Telemarketing or
                   Advertising......................................................................................................15

             2.    Plaintiff Provided the Prior Express Consent Required for the Plan
                   Renewal Calls. ................................................................................................17

             3.    Plaintiff Also Provided Prior Express Written Consent to be Called. .......18

       C.    DentalPlans is Entitled to Summary Judgment on Plaintiff's Do-Not-Call Claim.
             ................................................................................................................................22

             1.    Plaintiff Did Not Request that DentalPlans Stop Calling Her. ..................22

             2.    The Do-Not-Call Regulations' Safe Harbor Protects DentalPlans from
                   Liability...........................................................................................................24

V.     CONCLUSION.................................................................................................... 29

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Ass'n of Political Consultants, Inc. v. FCC*,
923 F.3d 159 (4th Cir. 2019), ...................................................................................7, 10

*Am. Legion v. Am. Humanist Ass'n*,
139 S. Ct. 2067 (2019)...................................................................................................13

*An Phan v. Agoda Co. Pte.*,
798 F. App'x 157 (9th Cir. 2020) ..................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................................6

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020) ...........................................................................................8

*Brooks v. Receivables Performance Mgmt. LLC*,
2023 U.S. Dist. LEXIS 110835 (W.D.N.C. June 27, 2023) ...........................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................................6

*Cordoba v. DirecTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ....................................................................................22

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) ...........................................................................................6

*Derossett v. Patrowicz*,
2022 U.S. Dist. LEXIS 173564 (D. Md. Sept. 23, 2022) ........................................14, 15

*Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*,
329 F. Supp. 3d 146 (D. Md. 2018)...............................................................................12

*Friends of Animals v. Jewell*,
828 F.3d 989 (D.C. Cir. 2016)..........................................................................................9

*Gorss Motels, Inc. v. Safemark Sys., LP*,
931 F.3d 1094 (11th Cir. 2019) ...............................................................................11, 18

*Hall v. Smosh Dot Com, Inc.*,
72 F.4th 983 (9th Cir. 2023) ..........................................................................................12

*In re Dynasty Mortg., LLC*,
20 FCC Rcd 4921 (Mar. 1, 2005) ..................................................................................25

*Johansen v. Efinancial LLC*,
  2021 U.S. Dist. LEXIS 251092 (W. D. Wash. June 11, 2021)...........................................25, 26

*Johansen v. Efinancial LLC*,
  2022 U.S. Dist. LEXIS 8798 (W.D. Wash. Jan. 18, 2022)................................................25, 26

*Joseph v. Target Stores, Inc.*,
  2023 U.S. App. LEXIS 8745 (4th Cir. Apr. 12, 2023) ...........................................................6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................................................................7

*Lundbom v. Schwan's Home Serv., Inc.*,
  2020 U.S. Dist. LEXIS 91577 ..........................................................................11, 18, 19, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................................................6

*Morris v. Modernize, Inc.*,
  2018 U.S. Dist. LEXIS 232701 (W.D. Tex. Sept. 27, 2018)...................................................18

*Oliver v. TTC-Ameridial, LLC*,
  2018 U.S. Dist. LEXIS 39748 (N.D. Ill. Mar. 12, 2018)........................................................19

*Rotberg v. Jos. A. Bank Clothiers, Inc.*,
  345 F. Supp. 3d 466 (S.D.N.Y. 2018)....................................................................................14

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
  228 F. Supp. 3d 1056 (C.D. Cal. 2017) .................................................................................16

*Solis v. Prince George's County*,
  153 F. Supp. 2d 793 (D. Md. 2001) ......................................................................................24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................................................... passim

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)..................................................................................................................7

*Stephens v. County of Albemarle*,
  524 F.3d 485 (4th Cir. 2008) .................................................................................................7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)................................................................................................................9

*Van Patten v. Vertical Fitness Grp.*,
  LLC, 847 F.3d 1037 (9th Cir. 2017)................................................................................17, 19

*Zani v. Rite Aid Hdqtrs. Corp.*,
    725 F. App'x 41 (2d Cir. 2018) ........................................................................14

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................................5

**STATUTES**

47 U.S.C. § 227........................................................................................ passim

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394-95 ........10, 14

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200 ................................................................................. passim

137 Cong. Rec. 30821-22 (1991)................................................................10

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 FCC Rcd. 7961 (July 10, 2015) ..........................................................14

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    21 F.C.C. Rcd. 3787 (Apr. 5, 2006) ("2006 FCC Order").................................15, 16

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    7 FCC Rcd. 8752 (Sept. 17, 1992) ..........................................................17

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    27 FCC Rcd. 1830 (Feb. 15, 2012)..........................................................18

## I.    INTRODUCTION

Plaintiff Deborah Bradley ("Plaintiff") seeks potentially tens of millions of dollars in this putative class action lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff's claims are based on allegations that DentalPlans.com's ("DentalPlans"), without permission, "sent multiple prerecorded messages to [her] cell phone number, for the purpose of selling her goods and services." Dkt 42, Amended Class Action Complaint (hereinafter, "Complaint") ¶¶ 14-15, 18-19. Plaintiff, however, expressly authorized DentalPlans to make the calls about which she now complains. DentalPlans does not cold call unwitting consumers. Consumers must initiate contact with DentalPlans either by calling and speaking to a representative or by enrolling in a dental savings plan on the company's website. When Plaintiff called DentalPlans to inquire about purchasing a dental savings plan, she expressly agreed to receive prerecorded calls from DentalPlans "to keep [her] updated with plan information." Dkt 111-6, Transcript of November 26, 2018 Call at 2:21-3:13; section II.B, *infra*. Plaintiff thus provided prior express written consent, and her TCPA claim must be dismissed. Even though Plaintiff expressly authorized DentalPlans to call her using a prerecorded message, she now claims that DentalPlans has violated the TCPA by sending prerecorded voice messages to her telephone. DentalPlans, however, is not subject to liability under the TCPA and is entitled to summary judgment on each of Plaintiff's claims.

Plaintiff also alleges that she "recalls requesting that [DentalPlans] stop contacting her" but calls "continued thereafter." Complaint ¶ 16. The evidentiary record, however, disproves this allegation. Accordingly, Plaintiff's do-not-call claim must similarly be dismissed.

In short, summary judgment should be granted because there are no genuine issues of material fact, and DentalPlans is entitled to judgment as a matter of law for the following reasons:

- Plaintiff lacks Article III standing to sue in federal court because she has not suffered a concrete injury. Mere receipt of calls is not the injury that the TCPA is intended to remedy, and a bare procedural violation without actual harm does not establish standing.

- Plaintiff provided prior express consent and prior express written consent to be called using a prerecorded message.

- Plaintiff's do-not-call claim fails because there is no evidence that she asked DentalPlans to stop contacting her. And even if she had, DentalPlans is not liable because it satisfies the requirements of the statutory safe harbor.

For these reasons and as set forth more fully herein, DentalPlans respectfully requests that this Court enter judgment in its favor pursuant to Federal Rule of Civil Procedure 56.

## II.    STATEMENT OF FACTS

### A.    DentalPlans' Policies and Procedures to Ensure TCPA Compliance

DentalPlans sells dental savings plans, or dental discount plans, to consumers who visit its website or call its representatives seeking to enroll in a plan. DentalPlans does not cold call consumers. *See* Dkt 111-4, Keen Dep. Tr. 25:15-25. Rather, DentalPlans only places plan renewal calls to customers who provide their telephone numbers and authorization to receive calls via an automatic telephone dialing system ("ATDS") or a prerecorded voice message. *Id*. at 12:7-14.

DentalPlans utilizes a consent script to ensure proper compliance with TCPA requirements. The consent script walks through how to obtain prospective customers' information, including their name and telephone numbers, to request consent to call customers using an ATDS or prerecorded voice message, and to disclose that customers' consent is not required as a condition of purchase. *See* Dkt 111-5, DentalPlans Training Presentation at DP000012-14. Although the consent script has changed over time, it has consistently required representatives to expressly obtain prospective customers' consent to receive calls from DentalPlans. *See id.* All DentalPlans representatives are trained on how to use the consent script and on compliance with TCPA requirements and do-not-call regulations. *See* Dkt 111-4, Keen Dep. Tr. 55:19-25, 58:16-59:6.

Further, the consent script is incorporated into DentalPlans' training manual and available through its Customer Relationship Management ("CRM") system, which is "an application" that DentalPlans' representatives can log into, access customers' dental savings plan information, and enter information for prospective customers. *Id.* at 22:16-23:4; *see* Dkt 111-5, DentalPlans Training Presentation at DP000014-15.

> **B.**     **DentalPlans' Consent Disclosure and Calls with Plaintiff**

On November 26, 2018, Plaintiff called DentalPlans and enrolled in a dental savings plan. *See* Dkt 111-6, Transcript of November 26, 2018 Call. The call lasted approximately 36 minutes. *Id.* at 1. During the first moments of the call, Plaintiff confirmed her telephone number and indicated that DentalPlans could contact her using an ATDS or prerecorded voice message. The conversation between Plaintiff and the DentalPlans' representative went as follows:

| | |
|---|---|
| **Representative**: | At times, Deborah, we may contact you with an automatic dialing system or a prerecorded voice message. Is that okay? |
| **Plaintiff**: | What would that be for? What would be the calling for? |
| **Representative**: | Keep you updated – to keep you updated with any plan information. |
| **Plaintiff**: | Okay. And they don't have no – they don't sell out my information to third parties? |
| **Representative**: | No, ma'am. |
| **Plaintiff**: | Okay. Because I will opt out of anything like that or giving my information to a third party. |
| **Representative**: | Okay. Yeah. No, ma'am, we don't do that. It'll only be us calling you or contacting you, okay? |
| **Plaintiff**: | Okay. Yes. |

Dkt 111-6, Transcript of November 26, 2018 Call at 2:21-3:13. After this exchange, Plaintiff directed DentalPlans' representative to open a member account using her cellular telephone

3

number and email address, her husband's name (Dennis Bradley), and her husband's credit card.[1] *Id.* at 3; Dkt 111-2, Bradley Dep. Tr. at 66:11-13.

DentalPlans' second call with Plaintiff was on September 3, 2019, when Plaintiff called to inquire about discounts for dental implants. *See* Dkt 111-8, Transcript of September 3, 2019 Call. This call lasted approximately 24 minutes. *Id.* at 1. During the call, Plaintiff asked the DentalPlans representative for a "quote or rate" to renew her dental savings plan. *Id.* at 15:14-16. The representative explained that Plaintiff had a "manual renewal" set up, *id.* at 15:17-19, which is used when customers "want to be contacted prior" to renewing their dental savings subscription, Dkt 111-4, Keen Dep. Tr. 41:1-8. The representative further explained that Plaintiff's plan was "not set up to call [her] at a certain time," but DentalPlans recommends renewal "around 30 business days" before plan expiration "to ensure there is no lapse in coverage." Dkt 111-8, Transcript of September 3, 2019 Call at 15:25-16:5. To that end, the representative said that she would set up Plaintiff's account so that DentalPlans could call before the plan expires. *Id.* at 16:7-8. Plaintiff did not object, but instead went on to ask about renewal discounts. *Id.* at 16:6-12. The representative, therefore, explained that DentalPlans was having a Labor Day promotion that would provide a 15% discount on Plaintiff's renewal rate of $179.95. *Id.* at 16:15-19:21. Plaintiff responded that she would wait until closer to the plan expiration date before deciding whether to renew. *Id.* 19:22-20:6. At the end of the call, Plaintiff gave the representative permission to send her an email survey to provide feedback. *Id.* at 21:13-18.

DentalPlans' first call to Plaintiff was on September 5, 2019, when it called to inform her that her plan was expiring soon. *See* Dkt 111-9, DentalPlans Call Log. During that call, DentalPlans offered Plaintiff an "opportunity for early renewal at a discount." *See* Dkt 111-3,

---

[1] Dennis Bradley has not joined this action as a plaintiff.

Duckworth Dep. Tr. 24:1-6 (explaining the purpose of "90-day manual" renewal calls). Plaintiff did not answer the call, so DentalPlans left a voice message on her answering machine. *See* Dkt 111-9, DentalPlans Call Log. DentalPlans did not call Plaintiff again until October 2, 2019, and like before, she did not answer. *See id*. Thereafter, DentalPlans called Plaintiff at regular intervals regarding the impending expiration of her dental savings plan. *See id.* Plaintiff did not answer any of these calls. *See id.*; Dkt 111-2, Bradley Deposition Tr. 44:5-11. Plaintiff's dental savings plan ultimately expired on December 1, 2019, *see* Dkt 111-7, Bradley Member Account, and DentalPlans placed several more calls before its final call to Plaintiff on February 26, 2020, to offer an opportunity for renewal post-expiration. *See* Dkt 111-9, DentalPlans Call Log; Dkt 111-4 Keen Dep. Tr. 47:10-16 (discussing purpose of winback calls); Dkt 111-3, Duckworth Dep. Tr. 24:1-6 (same). Based on DentalPlans' records, Plaintiff did not answer any of these calls either. *See* Dkt 111-9, DentalPlans Call Log. DentalPlans also has no record of receiving any communications, via phone or email, requesting that it stop calling Plaintiff, and Plaintiff's phone records do not reflect any such calls. *See generally* Dkt 111-2, Bradley Dep. Tr. 60:12-61:14 (discussing phone records from September 1, 2018 through October 12, 2020).

On April 28, 2020, Plaintiff filed this action alleging that DentalPlans violated the TCPA by placing calls to her and putative class members using a prerecorded voice message without prior express consent. DentalPlans now moves for summary judgment on Plaintiff's individual claim.

## III.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant satisfies this burden either "(1) by offering evidence that negates an essential

5

element of the nonmoving party's claim; or (2) by showing that the nonmoving party lacks evidence to carry its burden of persuasion at trial." *Joseph v. Target Stores, Inc.*, 2023 U.S. App. LEXIS 8745, at *5 (4th Cir. Apr. 12, 2023) (citations omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The burden then shifts to the nonmoving party to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To withstand a motion for summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than "some metaphysical doubt as to the material facts"). An "alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

## IV.    ARGUMENT

Unlike the typical TCPA case, DentalPlans' calls were *not* placed absent permission or invitation. To the contrary, it is undisputed that Plaintiff called DentalPlans, provided her telephone number, and *expressly authorized* DentalPlans to call her about dental plan information using a prerecorded message. Accordingly, Plaintiff's TCPA claim against DentalPlans fails as a matter of law because she: (i) suffered no concrete harm to confer Article III standing; and (ii) provided prior express consent and prior express written consent. Additionally, Plaintiff's do-not-call claim fails because she did not revoke her express permission, which would have stopped

any later unwanted calls. Even if Plaintiff had revoked consent, DentalPlans is still not liable for violating the TCPA or national do-not-call regulations because it meets the standards for the statutory safe harbor. This Court should, therefore, grant summary judgment for DentalPlans as discussed below.[2]

### A.    DentalPlans is Entitled to Summary Judgment Because Plaintiff Lacks Article III Standing to Pursue Her TCPA Claims.

The "irreducible constitutional minimum of standing" requires Plaintiff to demonstrate (1) an injury-in-fact that is (2) fairly traceable to the defendant's conduct, and (3) likely to be redressed by a favorable judicial ruling. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). These elements are "an indispensable part of the plaintiff's case," and therefore, "each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561 ; *Spokeo*, 578 U.S. at 338. While "general factual allegations" may suffice at the pleading stage, the plaintiff cannot rely on "mere allegations" in response to a summary judgment motion. *Lujan*, 504 U.S. at 561; *Stephens v. County of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008) (same). Rather, at the summary judgment stage, the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" establishing each element of standing. *Lujan*, 504 U.S. at 561.

For the "first and foremost" element, that is, injury-in-fact, Plaintiff must show that she suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and

---

[2] DentalPlans is also entitled to summary judgment because the TCPA, 47 U.S.C. § 227 *et. seq.*, was unconstitutional at all relevant times when DentalPlans made the calls at issue. Specifically, the TCPA violated the First Amendment of the U.S. Constitution because the government-debt exception enacted in 2015 was an unconstitutional content-based restriction on speech. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 161 (4th Cir. 2019) (holding that the government-debt exception renders the TCPA an unconstitutional content-based restriction), *aff'd sub nom. Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020). The TCPA was, therefore, unconstitutional between 2015 when Congress enacted the government-debt exception and 2020 when the U.S. Supreme Court invalidated the exception and severed it from the TCPA. *See Barr* , 140 S. Ct. at 2343. Recognizing that many courts have rejected this argument, DentalPlans respectfully raises it here to preserve the record for appeal.

"actual or imminent." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Lujan*, 504 U.S. at 560. Concreteness refers to whether the alleged injury "actually exist[s]," is "real and not abstract." *Spokeo*, 578 U.S. at 340 (citations omitted). Federal courts routinely enter summary judgment for defendants when plaintiffs fail to establish concrete injury, and the result here should be no different. *See, e.g.*, *Brooks v. Receivables Performance Mgmt. LLC*, 2023 U.S. Dist. LEXIS 110835, at *1 (W.D.N.C. June 27, 2023) (granting summary judgment for defendant because plaintiff "failed to show a concrete injury 'with the manner and degree of evidence required'") (citation omitted); *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 258 (4th Cir. 2020) (vacating summary judgment for plaintiffs who failed to show a concrete injury). Recently in *Ramirez v. TransUnion*, the U.S. Supreme Court reinforced that plaintiffs must suffer a concrete injury even for alleged violations of a federal statute. 141 S. Ct. 2190, 2200 (2021). Plaintiff has failed to demonstrate a concrete injury underlying her TCPA claim because she authorized DentalPlans to make the calls at issue. Accordingly, DentalPlans is entitled to summary judgment as a matter of law.

### 1. A Plaintiff Cannot Establish Injury-in-Fact by Claiming a Bare Procedural Violation.

The U.S. Supreme Court has held time after time that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "The [Supreme] Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2198 (citing *Spokeo*, 578 U.S. at 341). In *Spokeo*, the Supreme Court emphasized that "a 'concrete' injury must be '*de facto*;' that is, it must actually exist." *Spokeo,* 578 U.S. at 340. For that reason, Plaintiff cannot "allege a bare procedural violation [of the TCPA], divorced from any concrete harm, and satisfy the injury-in-

fact requirement of Article III" standing. *Id*. at 341; *TransUnion*, 141 S. Ct. at 2213 (same); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). To be sure, a "violation of [a statute's] procedural requirements" (*e.g.*, failure to provide a required notice to consumers) "may result in no harm." *Spokeo*, 578 U.S. at 342-43. As the Supreme Court put it, "[n]o concrete harm, no standing." *Ramirez*, 141 S. Ct. at 2200.

Following Supreme Court precedent, the Fourth Circuit held in *Dreher v. Experian Information Solutions, Inc.* that a technical omission of statutorily required information did not cause a concrete injury. 856 F.3d 337, 340 (4th Cir. 2017). In *Dreher*, the plaintiff alleged that he suffered an informational injury because the defendant omitted the name of a servicer for a delinquent account on his credit report in violation of the Fair Credit Reporting Act. *Id.* at 341-42. Rejecting this argument, the Fourth Circuit explained that "a plaintiff suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, *and* he 'suffers, by being denied access to that information, the type of harm Congress *sought to prevent* by requiring disclosure.'" *Id.* at 345 (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)).

### 2. The Harm the TCPA Was Designed to Remedy is the Receipt of Unauthorized Calls.

Mere receipt of telephone calls from DentalPlans is not sufficient harm to establish Article III standing. In *Spokeo*, the U.S. Supreme Court supplied a two-part framework to assess whether an alleged intangible injury is sufficiently concrete to confer standing. 578 U.S. at 340-41. Courts must consider: (1) the "judgment of Congress" in "identifying and elevating intangible harms" into a statutory right; and (2) whether the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American

9

courts." *Id.* Here, both "history and the judgment of Congress" favor a finding that Plaintiff has not suffered a concrete injury sufficient to confer standing. *Id.* at 340.

The history of the TCPA plainly indicates that the statute is not about receiving calls, but rather calls that are made *without authorization*, and thus, intrude upon consumers' right to be left alone. The congressional findings underpinning the TCPA elaborate:

> Banning [] automated or prerecorded telephone calls to the home, ***except when the receiving party consents*** to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394-95 (emphasis added). These findings squarely identify the harm that Congress intended to remedy by enacting the TCPA—that is, automated and prerecorded calls placed *without* consumers' consent. *See* 137 Cong. Rec. 30821-22 (1991) (statement of Sen. Ernest Hollings). Notably, the TCPA itself does not define "prior express consent," further confirming that Congress was concerned with whether a consumer authorized a call, not whether certain words were used in obtaining that consent. Furthermore, there is no historical or common-law analog where the mere receipt of telephone calls amounts to a concrete injury.

Plaintiff cannot demonstrate that she has suffered the kind of injury that the TCPA is intended to remedy because all evidence in the record indicates she consented to be called (even if the disclosure language is not perfect). *See* Dkt 111-6, Transcript of November 26, 2018 Call; section IV.B, *infra*. And the TCPA does not create a legally protected right to sue for merely receiving telephone calls that Plaintiff authorized. *See Am. Ass'n of Political Consultants, Inc.*, 923 F.3d at 169 (discussing TCPA exemptions and noting that "consent generally diminishes any expectation of privacy").

10

### 3.    Plaintiff Has Not Suffered Concrete Injury.

This lawsuit is different from nearly every other TCPA class action because the Plaintiff in this case expressly authorized DentalPlans to call her. Plaintiff seeks to convince this Court that she has suffered an injury "in at least one of the manners contemplated by Congress" because she received "prerecorded telephone calls" that she claims were "a nuisance and an invasion of privacy." Complaint ¶¶ 27-29. But like the plaintiff in *Dreher*, Plaintiff's entire case rests on a mere technical omission of information divorced from any concrete harm. Plaintiff purports to satisfy Article III standing based on the allegation that DentalPlans did not use the term "telemarketing" when obtaining her consent to be called. Putting aside the fact that Plaintiff's argument fails on the merits because it ignores the reality that DentalPlans "need not use magic words" to obtain customers' consent under the TCPA,[3] even if the TCPA prescribed specific terminology, Plaintiff did not suffer a concrete informational injury because the formulation of DentalPlans' consent language did not cause her to suffer the type of harm Congress sought to prevent.

Despite Plaintiff's allegations that DentalPlans' calls were made *without* her consent, the evidence plainly disproves these allegations. As discussed in detail in section IV.B, Plaintiff expressly consented to receive calls using a prerecorded voice message when she called DentalPlans on November 26, 2018. The voice recording of that call plainly establishes that Plaintiff provided consent. Specifically, Plaintiff authorized DentalPlans to call her about "plan information" using a "prerecorded voice message." Dkt 111-6, Transcript of November 26, 2018 Call at 2:21-3:13. When confronted with the voice recording at her deposition, Plaintiff admitted

---

[3] *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019); *Lundbom v. Schwan's Home Serv., Inc.*, 2020 U.S. Dist. LEXIS 91577, at *14 ("[C]ourts have found specific language unnecessary for consent under the TCPA.").

under oath that she consented to receiving such calls, conceding that she told DentalPlans it could contact her for "whatever they needed to talk to [her] about." Dkt 111-2, Bradley Dep. Tr. 69:13-70:16, 71:15, 75:6-9. Plaintiff consented to receive the calls at issue, regardless of whether they are deemed to be telemarketing, and thus, has not suffered any actual harm. And there is no evidence that Plaintiff ever tried to opt out of receiving the calls, despite her allegations to the contrary. *See* Complaint ¶ 16 (claiming that "Plaintiff recalls requesting that DentalPlans.com stop contacting her, around September 2019"). Accordingly, there is no good faith dispute that Plaintiff authorized the calls about which she now complains.

Because Plaintiff consented to be called, this lawsuit is distinguishable from the multitude of TCPA cases where courts find standing. *See, e.g.*, *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (holding that plaintiff had standing because she received unsolicited text messages despite being on the do-not-call registry); *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 153 (D. Md. 2018) (finding the receipt of an unauthorized fax constitutes a concrete injury sufficient to establish standing). Plaintiff should not be allowed to consent to calls and claim those same calls have invaded her right to privacy. Because she understood and intended to authorize DentalPlans to make the calls at issue, she did not suffer any concrete harm, let alone the harm the TCPA is intended to remedy.

### 4.  Mere Receipt of Telephone Calls is Not a Concrete Injury.

Because Plaintiff did in fact authorize the calls at issue, even if DentalPlans did not technically comply with the statute (although it did), Plaintiff has suffered no actual harm. The Complaint alleges that DentalPlans did not have consent to make calls to Plaintiff "because [its] consent policy, practice and procedures fell materially short of compliance with [the TCPA]." Complaint ¶ 19. The deficiency, according to the Complaint, is that DentalPlans obtained "written consent on the telephone, without disclosing that the consumer is agreeing to receive telemarketing

calls." *Id.* ¶ 18. Besides being factually incorrect, Plaintiff's argument raises nothing more than a technical compliance issue—*i.e.*, whether the TCPA requires DentalPlans to use the word "telemarketing" when obtaining prior express written consent. Even assuming this is a statutory procedural requirement, which it is not, the alleged violation of such requirement did not cause any actual harm to Plaintiff to confer Article III standing. *See Spokeo*, 578 U.S. at 342 (finding that violating a procedural requirement for credit bureaus to notify individuals of their consumer information, without more, may not cause concrete harm).

The allegedly omitted information—that Plaintiff would receive telemarketing calls—did not have any "real impact" on Plaintiff because she complains only about something the TCPA does not require to be disclosed—the frequency of calls. *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019) (Article III requires a "a real controversy with real impact on real persons"). Plaintiff's own testimony establishes that her alleged injury is because of the frequency of DentalPlans' telephone calls, not because she received telemarketing calls without her consent:

> **Q· What do you allege that DentalPlans did wrong?**
> A· Excessive calling.
> **Q· Would you have filed this complaint if they had only called you once?**
> A· No.

Dkt 111-2, Bradley Dep. Tr. 56:15-20.

> **Q  Did you testify earlier today that you did not tell DentalPlans that they could contact you?**
> A  Just normal contact, yes, but not repeated calls, no. . . . Occasionally giving a call to update or whatever they needed to talk to me about. If they needed to contact me, then that would have been fine, but not in the manner that I received those calls
> **Q  What do you mean by the manner? The frequency?**
> A  Yes, sir.

*Id.* at 71:5-8 (emphasis added). Given Plaintiff's testimony, strict compliance with the TCPA (as Plaintiff defines it) would not have changed her alleged injury because the statute does not proscribe the conduct complained of. Specifically, the TCPA does not restrict the frequency of

calls or require disclosure of the frequency with which entities place calls to customers. *See generally* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394-95 (finding that a ban on automated and prerecorded calls is necessary to protect consumers "except when the receiving party consents"). Plaintiff, therefore, has not demonstrated a concrete, actionable injury for Article III standing.

> **B.      DentalPlans is Entitled to Summary Judgment on Plaintiff's TCPA Claims Because She Consented to the Calls at Issue.**

Even if Plaintiff had standing (and she does not), her TCPA claim must be dismissed because she consented to receive the calls from DentalPlans. The TCPA makes it unlawful to call any cellular telephone using an ATDS or a prerecorded voice *unless* the call complies with exemptions promulgated by the Federal Communications Commission (the "FCC") or was made "with the ***prior express consent*** of the called party." 47 U.S.C. § 227(b)(1)-(2); 47 C.F.R. § 64.1200(a)(1)-(2) (emphasis added). If such telephone calls contain advertisements or telemarketing, then "***prior express written consent***" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added). In other words, "prerecorded calls that *do not* include telemarketing are lawful as long as the called party has provided prior express consent" and "prerecorded calls that *do* include telemarketing require prior express written consent." *Derossett v. Patrowicz*, 2022 U.S. Dist. LEXIS 173564 at *10 (D. Md. Sept. 23, 2022) (emphasis added) (citing *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 477 (S.D.N.Y. 2018)). Interpreting the TCPA regulations, federal courts have settled that prior express consent "is a lower threshold" than prior express written consent. *See id.* (alteration omitted). A called party gives express consent, orally or in writing, by providing her telephone number to an entity. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (July 10, 2015); *Zani v. Rite Aid Hdqtrs. Corp.*, 725 F. App'x 41, 43 (2d Cir. 2018) (concluding

14

that prior express consent "need not be in writing or subject to specific disclosures"). By contrast, express written consent "is harder to obtain" since it requires a signed, written agreement provided after specific disclosures. *Derossett*, 2022 U.S. Dist. LEXIS 173564 at *10 (citing 47 C.F.R. § 64.1200(f)(9)).

Because the plan renewal calls here are not telemarketing or advertisements, DentalPlans needs only *prior express consent* from Plaintiff. Even if the calls were telemarketing or advertisement, DentalPlans was still authorized to place them because Plaintiff gave prior express written consent.

### 1.    DentalPlans' Plan Renewal Calls to Plaintiff are Not Telemarketing or Advertising.

Plaintiff erroneously alleges that she received telemarketing calls from DentalPlans. *See* Complaint ¶¶ 18, 35. But case law and regulatory guidance demonstrate that the calls at issue are not telemarketing. Telemarketing is "the initiation of a telephone call or message *for the purpose of encouraging the purchase or rental* of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13) (emphasis added). In an analogous context, the FCC has held that a facsimile is not an advertisement[4] if its "purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 21 F.C.C. Rcd. 3787, 3812 (Apr. 5, 2006) (hereinafter the "2006 FCC Order"). For example, "[a] subscription renewal notice would be considered 'transactional' in nature, provided the recipient is a current subscriber and had affirmatively subscribed to the publication." *Id*. at 3813.

---

[4] The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission." 47 U.S.C. § 227(a)(5).

15

Courts interpreting the 2006 FCC Order have expanded the "transactional message" rule to calls and text messages. *See, e.g.*, *An Phan v. Agoda Co. Pte.*, 798 F. App'x 157, 158 (9th Cir. 2020) (mem.) (text messages are not advertisements because they confirmed a commercial transaction); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1065-66 (C.D. Cal. 2017) (calls regarding changes to consumer's insurance plan are not advertisements). In *Worsham v. Discount Power, Inc.*, this District Court held that calls offering "discounts and rebates on 'already-purchased and paid-for electrical services'" did not constitute advertisements in violation of the TCPA. 2021 U.S. Dist. LEXIS 230937, at *13-14 (D. Md. Dec. 1, 2021) (*recons. denied*, 2022 U.S. Dist. LEXIS 71601, at *11 (D. Md. Apr. 19, 2022).)

Like the calls in *Worsham*, DentalPlans' plan renewal calls are placed solely to customers who *already purchased* savings plan subscriptions that are set to expire and require renewal. *See* 2021 U.S. Dist. LEXIS 230937, at *13-14. The renewal plan calls are precisely the type of subscription renewal notices the FCC has determined to be transactional in nature. *See* 2006 FCC Order at 3813. The fact that DentalPlans offered discounts and savings to customers who renewed does not change the analysis. *See Worsham*, 2021 U.S. Dist. LEXIS 230937, at *13 (noting that the calls were not advertisement "[r]egardless of whether [they] were intended to encourage customer retention").

Indeed, DentalPlans' plan renewal calls fall into the precise category of calls that the FCC intended to exclude from TCPA liability, namely "subscription renewal notice[s]," as they were only sent to existing customers who had "affirmatively subscribed" to a dental plan. 2006 FCC Order at 3813. The plan renewal calls are not intended "to encourage[e] the purchase" of a new product or service, *Worsham*, 2021 U.S. Dist. LEXIS 230937, at *13; instead, they notify

16

customers, like Plaintiff, of the expiration of their *existing* dental savings plans and provide an opportunity to renew their *existing* dental savings plans. *See* Dkt 111-4, Keen Dep. Tr. 45:10-18.

### 2. Plaintiff Provided the Prior Express Consent Required for the Plan Renewal Calls.

Because the plan renewal calls are not telemarketing, only prior express consent (rather than prior express *written* consent) is required to place the calls at issue. The TCPA "does not define the term 'prior express consent.'" *Van Patten v. Vertical Fitness Grp*., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017) (analyzing "prior express consent" requirements where more stringent "prior express written consent" requirements were not applicable). However, the FCC has concluded that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd 8752, 8769 (Sept. 17, 1992).

Here, Plaintiff provided express consent to be called when she confirmed her "callback [telephone] number" with DentalPlans' representative and said "yes" to receiving future calls. Dkt 111-6, Transcript of November 26, 2018 Call at 2:21-3:13. It is undisputed that Plaintiff provided her information, including her name, telephone number, and email address, when she called DentalPlans and enrolled in a dental savings plan on November 26, 2018. *See id.* at 2:21-3:23. Moreover, DentalPlans' representative specifically asked Plaintiff over the phone if it was okay for DentalPlans to contact her "with an automatic dialing system or a prerecorded voice message." *Id.* at 2:21-23. Plaintiff answered "yes" and proceeded to talk with the representative for more than 30 minutes, without ever indicating that she did not wish to be contacted. *See id.* at 2:21-27:16. Based on this evidence, a rational trier of fact could not find that Plaintiff did not provide prior express consent to be called.

17

### 3.      Plaintiff Also Provided Prior Express Written Consent to be Called.

While the plan renewal calls do not constitute advertisements or telemarketing, DentalPlans nevertheless obtained Plaintiff's prior express *written* consent for such calls. The TCPA and its implementing regulations provide that telemarketing calls using an ATDS or a prerecorded voice message can only be made with the "the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2). As defined by the FCC, prior express written consent is:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9). The agreement must include "a clear and conspicuous disclosure," which "inform[s] the person signing that":

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or service."

47 C.F.R. § 64.1200(f)(9)(i) As discussed below, DentalPlans' method of obtaining Plaintiff's express written consent complies with the TCPA's requirements.[5]

There is no magic language necessary to obtain consumers' consent under the TCPA. *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019); *see Lundbom*, 2020 U.S. Dist. LEXIS 91577, at *14 ("[C]ourts have found specific language unnecessary for consent under the TCPA."). Courts have held that "the scope of a consumer's consent to being contacted

---

[5] The fact prior express written consent was obtained by voice recording does not make it deficient. "The FCC has determined that telemarketers may 'obtain prior express written consent using any medium or format permitted by the E-Sign Act,' including 'email, website form, text message, telephone keypress, or *voice recording*.'" *See, e.g.*, *Morris v. Modernize, Inc.*, 2018 U.S. Dist. LEXIS 232701, at *5-6 (W.D. Tex. Sept. 27, 2018) (emphasis added) (*citing In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (Feb. 15, 2012)).

depends on the transactional context in which it is given." *Van Patten*, 847 F.3d at 1040; *Oliver v. TTC-Ameridial, LLC*, 2018 U.S. Dist. LEXIS 39748, at *7 (N.D. Ill. Mar. 12, 2018) (same). In other words, the communications "must be based on the circumstance in which the consumer gave his or her number." *Van Patten*, 847 F.3d at 1040. Accordingly, "the words 'advertisement' or 'telemarketing' need not be used verbatim in a disclosure to satisfy the 'express written consent' standard." *Id.* The disclosure need only be "clear and conspicuous," which means "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." 47 C.F.R. § 64.1200(f)(3) (emphasis added).

At least one court interpreting the "clear and conspicuous" standard has held that a reasonable consumer would understand that communications from a seller likely include telemarketing even if the disclosure itself does not state so. *See Lundbom*, 2020 U.S. Dist. LEXIS 91577, at *13-15. In that case, a food delivery company sent a text message disclosure to consumers notifying them that they would "[r]eceive delivery notifications, important updates and program news straight to [their] phone." *Id.* at *13-14. The plaintiff argued that the disclosure was "ineffective because the terms 'important updates and program news' indicate that the communications have an informative rather than advertising purpose." *Id.* at *14. The court rejected the plaintiff's argument on the basis that "a reasonable consumer would understand" the communications were "likely to include promotional or advertising content" because the defendant's "sole purpose is to sell food products." *Id.* at *15.

Here, DentalPlans' representative provided a clear and conspicuous disclosure to obtain Plaintiff's consent and put Plaintiff on notice that she would receive plan renewal calls. The representative read the disclosure, with some variation, from DentalPlans' consent script that mirrors the "clear and conspicuous" language provided in the TCPA's implementing regulations.

19

*See* Dkt 111-5, DentalPlans Training Presentation; 47 C.F.R. § 64.1200(f)(9)(i). The representative asked Plaintiff to confirm her "callback [telephone] number" and asked if DentalPlans "may contact [her] with an automatic dialing system or a prerecorded voice message." Dkt 111-6, Transcript of November 26, 2018 Call at 2:17-23. The representative also noted that DentalPlans would call to "keep [Plaintiff] updated with any plan information." *Id*. at 3:1-2. Furthermore, the representative explained that DentalPlans would not sell Plaintiff's information to third parties and that only DentalPlans would call Plaintiff pursuant to her consent. *Id*. at 3:3-12. This disclosure is sufficient to put reasonable consumers on notice that they would receive calls from DentalPlans, especially the calls made to Plaintiff concerning expiration, renewal, and discounts for her dental savings plan.

Without conceding that the plan renewal calls are telemarketing, DentalPlans' disclosure was sufficient to put Plaintiff on notice that calls may include telemarketing. Like the text message in *Lundbom*, DentalPlans' disclosure did not specifically mention the term "telemarketing." Nevertheless, the circumstances under which Plaintiff provided her telephone number and consent to DentalPlans indicated that she might receive telemarketing calls. *First*, DentalPlans is "a marketing company that sells dental plans." Dkt 111-3, Duckworth Dep. Tr. 4:23-25. Plaintiff obviously understood that DentalPlans' purpose is to sell dental plans because she called to inquire about dental subscriptions and enrolled in a dental savings plan. *Second*, Plaintiff agreed to receive calls from DentalPlans after she was explicitly informed that the calls would provide "plan information." *See* Dkt 111-6, Transcript of November 26, 2018 Call at 2:21-3:13.

A reasonable consumer would understand that "plan information" could include telemarketing content regarding the plans that DentalPlans sells as part of its regular business. *See Lundbom*, 2020 U.S. Dist. LEXIS 91577, at *15. Indeed, Plaintiff concedes that DentalPlans' use

of the phrase "plan updates and promotions" was sufficient to indicate that text messages would include marketing content. *See* Dkt 107-1, Mem. in Support of Pl. Mot. for Class Cert. at 4. It is disingenuous for Plaintiff to suggest that her agreement to receive prerecorded voice messages regarding "plan information" was somehow unclear. Moreover, Plaintiff had not purchased a dental savings plan at the time of the disclosure, so consent to calls about "plan information" necessarily involved calls regarding purchasing a plan. *See* Dkt 111-6, Transcript of November 26, 2018 Call at 2:5-4:10. It is also clear that Plaintiff understood that she was consenting to receive some telemarketing calls given that she asked if DentalPlans would give or sell her information to third parties. *Id*. at 3-5. Such a question would be illogical if she understood the scope of the disclosure to be limited to information about her account (which did not yet exist). After stating she would "opt out of anything . . . giving [her] information to a third party," Plaintiff still agreed to receive plan information updates from DentalPlans via prerecorded messages. *Id.* at 3:3-13.

To the extent Plaintiff complains that DentalPlans did not put her on notice regarding *how many* calls she would receive, the TCPA does not require such disclosure. *See* section IV.A.4, *supra*. Moreover, it would be impossible to provide such disclosure because the exact number of plan renewal calls made to a DentalPlans' customer depends on numerous factors. *See* Dkt 111-3, Duckworth Dep. Tr. 36:7-24. Those factors include when a customer renews, how a customer renews (automatically or manually), whether a savings plan subscription is pre- or post-termination, and whether the customer revokes consent to be called in which case DentalPlans' "flag[s] the account" and never calls again. *See id*.; Dkt 111-4, Keen Dep. Tr. 39:18-23 (explaining how DentalPlans' handles do-not-contact requests).

**C.    DentalPlans is Entitled to Summary Judgment on Plaintiff's Do-Not-Call Claim.**

The TCPA and its implementing regulations prohibit entities from initiating telemarketing unless they have "instituted procedures for maintaining" an internal do-not-call list. 47 C.F.R. § 64.1200(d). Plaintiff alleges that DentalPlans violated this provision because it "did not have a sufficient or compliant Do Not Call policy or training, and/or did not follow the procedures it had in place." Complaint ¶ 54. Federal courts, however, have held that persons who never made a do-not-call request do not have standing to sue over violations of internal do-not-call regulations. *See Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1272-76 (11th Cir. 2019) (holding "that recipients of [] calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list").

Nothing in the record, other than Plaintiff's bare allegations, indicates that she ever requested that DentalPlans stop contacting her. For that reason alone, Plaintiff's do-not-call claim fails. Even if it were true that Plaintiff requested that calls stop, DentalPlans is still not liable because any subsequent calls were made in error based on the good faith belief that DentalPlans had permission to call Plaintiff. Moreover, DentalPlans meets the enumerated regulatory safe harbor provisions for ensuring compliance with national do-not-call rules.

**1.    Plaintiff Did Not Request that DentalPlans Stop Calling Her.**

There is not one scintilla of evidence that Plaintiff requested "DentalPlans.com stop contacting her, around September 2019," or anytime for that matter. *See* Complaint ¶ 16. DentalPlans conducted a diligent review of its records and produced documents, including audio recordings of telephone calls made to and received from Plaintiff. *See* Dkt 111-13, Audio Recordings of November 26, 2018 and September 3, 2019 Calls. Of those telephone calls, Plaintiff

22

herself called DentalPlans twice: *first*, on November 26, 2018, when she enrolled in a dental savings plan and consented to receiving calls using ATDS and prerecorded voice message, *see* Dkt 111-6, Transcript of November 26, 2018 Call; and *second*, on September 3, 2019, when she called about a discount for dental implants, *see* Dkt 111-8, Transcript of September 3, 2019 Call. The September 3, 2019, call lasted approximately 24 minutes, and at no point during the call did Plaintiff request that DentalPlans stop contacting her. In fact, Plaintiff answered the representative's questions, requested a renewal quote for her dental savings plan, expressed an interest in DentalPlans' Ambassador Program,[6] and consented to receiving an email survey to rate the representative's performance on the call. *See id.* Plaintiff *did not* complain to DentalPlans' representative about receiving unwanted telephone calls, nor did she express a desire to change or revoke her prior consent to be called.

There also is no evidence of DentalPlans calling Plaintiff between her enrollment on November 26, 2018, and her call on September 3, 2019, so Plaintiff would have had no cause to request that DentalPlans stop contacting her at any time during that period. DentalPlans only placed calls to Plaintiff's cellular telephone between September 5, 2019, and February 26, 2020. *See* Dkt 111-9, DentalPlans Call Log; section II.B, *supra*. Each telephone call was related to the imminent expiration and renewal of Plaintiff's dental savings plan. Plaintiff did not answer any of these calls. *See* Dkt 111-9, DentalPlans Call Log; *see also* Dkt 111-2, Bradley Dep. Tr. 44:9-11 (confirming that she never answered any calls from DentalPlans). In fact, besides Plaintiff's two calls to DentalPlans discussed above (in which no stop request was made), Plaintiff never spoke

---

[6] DentalPlans' Ambassador Program provides interested customers with a referral code that may be shared with friends and family. For each person who enrolls using the referral code, the customer gets one month free off their dental savings plan. On the September 3, 2019 call, the DentalPlans' representative explained to Plaintiff how the Ambassador Program works. Dkt 111-8, Transcript of September 3, 2019 Call at 20:15-21:3. Plaintiff responded: "Oh, okay. All right. And what's that code?" *Id.* at 21:4-5.

to anyone at DentalPlans. Dkt 111-2, Bradley Dep. Tr. 44:9-11. Moreover, Plaintiff has not identified and DentalPlans also has no record of receiving any communications from Plaintiff (or her husband), via phone or email, requesting that it stop calling her telephone number. In fact, Plaintiff admitted in her deposition that she never told DentalPlans not to call her. Dkt 111-2, Bradley Dep. Tr. 60:9-11.

DentalPlans was not aware of Plaintiff's desire to stop receiving telephone calls until Plaintiff filed the initial complaint in this action on April 28, 2020. DentalPlans immediately placed Plaintiff on its internal do-not-call list, and she did not receive any further telephone calls from DentalPlans. Plaintiff's "bare allegations" that she revoked consent, "unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." *Solis v. Prince George's County*, 153 F. Supp. 2d 793, 807 (D. Md. 2001). Despite Plaintiff's allegations that she "recalls requesting that DentalPlans stop contacting her, around September 2019," there is no evidence of such a request. Complaint ¶ 16; *see also* Dkt 111-9, DentalPlans Call Log.

Given the dearth of evidence supporting Plaintiff's do-not-call claim, this Court must enter summary judgment in favor of DentalPlans.

### 2. The Do-Not-Call Regulations' Safe Harbor Protects DentalPlans from Liability.

The TCPA and its implementing regulations do not penalize entities, like DentalPlans, that make a good faith effort to prevent calling phone numbers on the DNC Registry. Instead, the do-not-call regulations provide those entities a statutory safe harbor from liability: "It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). An entity, therefore, will not be liable for do-not-call violations that result from error

24

if it can demonstrate that, "as part of its routine business practice," it meets various standards set forth in the implementing regulations. 47 C.F.R. § 64.1200(c)(2)(i). DentalPlans meets these standards and is entitled to the statutory safe harbor, which forecloses Plaintiff's internal do-not-call claim as a matter of law.

> i.    *Even if Plaintiff Had Revoked Consent, Any Calls Would Have Been the Result of a Bona Fide Mistake.*

An entity falls within the statutory safe harbor if its calls were placed in error. Generally, "[a] party can support a claim of error by showing that the telephone solicitation was made unintentionally" and "detailing any procedural breakdowns that led to such calls." Notice of Apparent Liability for Forfeiture, *In re Dynasty Mortg., LLC*, 20 FCC Rcd. 4921, 4929 (Mar. 1, 2005); *Simmons v. Charter Commc'ns*, Inc., 222 F. Supp. 3d 121, 135 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). However, "it is not clear that procedural breakdown is the *sine qua non* of the safe harbor provision." *Simmons*, 222 F. Supp. 3d at 135. Some courts, therefore, rely on the "plain meaning of the word 'error'," which is "a mistake." *Johansen v. Efinancial LLC*, 2022 U.S. Dist. LEXIS 8798, at *15 (W.D. Wash. Jan. 18, 2022) (hereinafter "*Johansen II*") In *Johansen II*, the court held that the defendant's "mistaken belief constitutes an 'error' within the purview of the TCPA safe harbor provisions." *Id.* The defendant had demonstrated that it received an insurance quote request through a web form, which contained the plaintiff's contact information. *Johansen v. Efinancial LLC*, 2021 U.S. Dist. LEXIS 251092, at *21-22 (W. D. Wash. June 11, 2021) (hereinafter "*Johansen I*"), *R. & R. adopted by Johansen II*. The web form clearly stated that persons would be consenting to receive calls by submitting an insurance quote request, and thus, the defendant believed that the plaintiff provided express consent. *Id.* As such, the defendant's "call to [the plaintiff] was based on the mistaken but reasonable belief that [the plaintiff] provided consent to be called." *Id.* at *30.

25

If Plaintiff had revoked her consent, any calls that DentalPlans placed to her were plainly in error based on the absence of any evidence of revocation in DentalPlans records (or in the evidentiary record in this case). Like the defendant in *Johansen I* and *II*, DentalPlans had no reason to believe that Plaintiff had asked to be placed on DentalPlans' do-not-call list. Indeed, Plaintiff confirmed in her deposition that she did not communicate with anyone at DentalPlans after it began calling her. Dkt 111-2, Bradley Dep. Tr. 44:5-11. If Plaintiff now claims that she made some mysterious request not to be called, DentalPlans made the plan renewal calls without knowledge of that fact. Accordingly, even if Plaintiff's contention were true, DentalPlans' calls fall within the first requirement of the safe harbor provision because they were made based on a "mistaken but reasonable belief" that Plaintiff had not requested to not be called. *See Johansen I*, 2021 U.S. Dist. LEXIS 251092 at *30; *Johansen II*, 2022 U.S. Dist. LEXIS 8798, at *15. *Cf. Simmons*, 222 F. Supp. 3d at 135 (finding that the defendant placed calls in error because it was "under the mistaken belief that it was calling a number" that belonged to someone who gave consent).

> ii. *DentalPlans Has Written Procedures to Comply with Do-Not-Call Rules.*

DentalPlans has procedures to ensure compliance with the do-not-call rules. These procedures are set forth in DentalPlans' sales training manual, which includes the consent script that representatives utilize when speaking with prospective customers. *See* Dkt 111-5, DentalPlans Training Presentation; Dkt 111-4, Keen Dep. Tr. 32:16-19. The consent script was implemented around 2016 and was in place during all times relevant to this action. *See* Dkt 111-4, Keen Dep. Tr. 48:7-10. DentalPlans' representatives follow the consent script with some variation to obtain prospective customers' telephone numbers, to request consent to place calls using an ATDS and prerecorded voice messages, and to disclose that consent is not required as a condition of purchase. *See* Dkt 111-5, DentalPlans Training Presentation at DP000012-14. Furthermore, DentalPlans'

sales training manual contains a module on "Contact Preferences," which instructs representatives to verify prospective customers' opt-in-contact and do-not-contact preferences. *See* Dkt 111-4, Keen Dep. Tr. 62:1-63:15. The module also provides the procedure for handling do-not-contact requests: If a prospective or existing customer states that they do not want to be contacted, DentalPlans' representative immediately flags the person's account by selecting a red button that says "Do not contact at all." *See id.*; Dkt 111-3, Duckworth Dep. Tr. 50:1-51:25. This same procedure is followed if a customer initially provides consent to be called and later makes a request, via email or phone, to stop receiving calls. *See* Dkt 111-4, Keen Tr. 60:7-19 (explaining that the "practice," as set forth in the training manual, is that "whoever receives the [do-not-contact request] will mark the customer's account to do not contact"). These established procedures ensure that any customer who indicates that they do not wish to be contacted by DentalPlans will not be called again.

### iii.   DentalPlans Trains its Representatives on Compliance with National Do-Not-Call Rules.

DentalPlans trains its representatives on how to comply with its policies and procedures concerning do-not-call rules. *See* Dkt 111-4, Keen Dep. Tr. 32:16-19. Part of this training includes a two-week orientation for new representatives, where a DentalPlans' employee "reviews each portion" of the sales training manual. *Id.* at 61:14-19. Representatives can access the sales training manual on the Internet whenever they need it. *Id.* at 61:4-11. They also receive "coaching on reading the [consent] script," which provides guidance on how to identify do-not-call requests and what to do about them. *Id.* at 55:19-25, 58:16-59:6. Moreover, DentalPlans reviews its representatives "to ensure they're adhering to guidelines." *Id.* at 59:5-13. Reviews are conducted using "a quality scorecard," which considers whether representatives are accurately utilizing and

reading the consent script. *Id.* "[I]f they don't read the script and obtain consent, they receive an auto-fail." *Id.* at 59:7-9.

          *iv.*     *DentalPlans Maintains an Internal Do-Not-Contact List.*

DentalPlans maintains an internal list of telephone numbers that it may not contact. The evidence produced in this action demonstrates that DentalPlans has various written materials on how to use and update its internal do-not-call list. *See* Dkt 111-5, DentalPlans Training Presentation; Dkt 111-3, Duckworth Dep. Tr. 49:22-52:21 (explaining DentalPlans' do-not-call procedure); Dkt 111-4, Keen Dep. Tr. 39:18-23, 60:7-19 (explaining that customers are immediately designated do-not-call once they make a request). Moreover, DentalPlans has written service contracts with inContact, a leading cloud-based solution for call centers. *See* Dkt 111-3, Duckworth Dep. Tr. 9:6-8, 10:17-11:1. inContact's technology allows DentalPlans' representatives to effectively create, update and maintain calling lists for consenting customers and do-not-call lists. A do-not-call designation ensures that the person who makes the request is never contacted again, whether by telephone call, SMS text message, or email. This procedure, and the training materials outlining it, shows that DentalPlans has a policy and practice of honoring do-not-call requests. The efficacy of DentalPlans' policy is also evident in that Plaintiff was placed on the internal do-not-call list in late April 2020 and has not received any further plan renewal calls since then.

28

## V.    CONCLUSION

Each of Plaintiff's claims fails as a matter of law. For this reason, and as set forth above, DentalPlans respectfully requests that the Court grant its Motion for Summary Judgment on all counts of the Complaint.

Date: October 11, 2023

**ALSTON & BIRD LLP**

*/s/ Derin B. Dickerson*

Brian D. Frey, Maryland Bar No. 17592
The Atlantic Building, 950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3300
Facsimile: 202-239-3333
brian.frey@alston.com

Derin B. Dickerson (admitted pro hac vice)
David B. Carpenter (admitted pro hac vice)
Georgia Bar No. 292101
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
derin.dickerson@alston.com
david.carpenter@alston.com

Kelsey L. Kingsbery (admitted pro hac vice)
555 Fayetteville Street, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-862-2200
kelsey.kingsbery@alston.com

*Attorneys for Defendant DentalPlans.com*

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on October 11, 2023, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was filed with the Clerk of Court using the Court's CM/ECF system, which will automatically send notification of such filings to all counsel of record in this action.

This 11th day of October, 2023.

/s/ Derin B. Dickerson
Derin B. Dickerson (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
Georgia Bar No. 292101
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  404-881-7000
Facsimile: 404-881-7777
derin.dickerson@alston.com

*Attorney for Defendants*

30