**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

DEBORAH BRADLEY, individually and on
behalf of others similarly situated,
     Plaintiff,
                                      Case No. 1:20-cv-01094-CCB

v.                                           **REDACTED VERSION**

DENTALPLANS.COM and
CIGNA HEALTH AND LIFE
INSURANCE COMPANY,
     Defendants.

                                        /

**PLAINTIFF'S OPPOSITION TO DENTALPLANS.COM'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

**Page**

I.      BACKGROUND ...........................................................................................................2

        A.      The TCPA. .......................................................................................................2

        B.      Statement of Facts. .........................................................................................5

                1.      DentalPlans' Practices. ........................................................................5

                2.      Plaintiff's Experience. .........................................................................7

II.     LEGAL STANDARD.................................................................................................8

III.    ARGUMENT..............................................................................................................8

        A.      DentalPlans Does Not Challenge any Aspect of Plaintiff's *Prima Facie* Case.......9

        B.      DentalPlans Lacked Prior Express Written Consent for Telemarketing
                Robocalls.........................................................................................................9

                1.      DentalPlans' calls constitute telemarketing. ....................................10

                2.      DentalPlans' did not obtain Bradley's "prior express written consent" for
                        prerecorded message robocalls. .......................................................13

                3.      DentalPlans' Oral Consent ≠ Written Consent. ................................18

                        i.      DentalPlans fails to satisfy E-SIGN's requirements for
                                written contracts.....................................................................19

                        ii.     DentalPlans did not obtain a valid electronic signature, either......21

        C.      Plaintiff Has Article III Standing...............................................................23

IV.     DO-NOT-CALL CLAIM...........................................................................................25

V.      CONCLUSION..........................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................. 8

*Atkinson v. Pro Custom Solar LLC*,
  2022 WL 4071998 (W.D. Tex. Sept. 1, 2022) ......................................................................... 21

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
  235 F.R.D. 435 (N.D. Ill. 2006) ............................................................................................ 19

*Booth v. Appstack*, Inc.,
  2016 WL 3030256 (W.D. Wash. May 25, 2016) ...................................................................... 23

*Derossett v. Jonathan C. Patrowicz, D.O., P.A.*,
  2022 WL 4448859 (D. Md. Sept. 23, 2022) ............................................................................ 9

*Dickson v. Cranor v. 5 Star Nutrition, L.L.C.*,
  998 F.3d 686 (5th Cir. 2021) ................................................................................................ 24

*Dickson v. Direct Energy, LP*,
  69 F.4th 338 (6th Cir. 2023) ................................................................................................. 24

*Drazen v. Pinto*,
  74 F.4th 1336 (11th Cir. 2023) .............................................................................................. 24

*Ewing v. Flora*,
  2015 WL 12564225 (S.D. Cal. Mar. 25, 2015) ....................................................................... 9

*Fitzgerald's Lakeforest Motors, Inc. v. Toyota Motor Sales USA, Inc.*,
  2021 WL 4339204 (D. Md. Sept. 23, 2021) ........................................................................... 8

*Gadelhak v. AT&T Servs., Inc.*,
  950 F.3d 458 (7th Cir. 2020) ................................................................................................ 24

*Gaker v. Citizens Disability, LLC*,
  2023 WL 1777460 (D. Mass. Feb. 6, 2023) ........................................................................... 17

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ................................................................................................ 24

*Golan v. Veritas Ent., LLC*,
  788 F.3d 814 (8th Cir. 2015) ................................................................................................ 10

*Karpilovsky v. All Web Leads, Inc.*,
  2018 WL 3108884 (N.D. Ill. June 25, 2018) ............................................................... 15

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) ............................................................................... 1, 23

*Larson v. Harman Mgmt. Corp.*,
  2016 WL 6298528 (E.D. Cal. Oct. 27, 2016) ............................................................. 4

*Libertarian Party of Va. v. Judd*,
  718 F.3d 308 (4th Cir. 2013) ................................................................................... 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................... 23

*Lundbom v. Schwan's Home Serv., Inc.*,
  2020 WL 2736419 (D. Or. May 26, 2020) ................................................................ 15

*Mantha v. Quotewizard.com, LLC*,
  2021 WL 6061919 (D. Mass. Dec. 13, 2021) ........................................................... 21

*Melito v. Experian Mtkg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ..................................................................................... 24

*Mey v. Got Warranty, Inc.*,
  193 F. Supp. 3d 641 (N.D. W. Va. 2016) ................................................................. 23

*Mey v. Venture Data, LLC*,
  245 F. Supp. 3d 771 (N.D.W. Va. 2017) .................................................................. 24

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ............................................................................................... 2

*Powell v. West Asset Management, Inc.*,
  773 F.Supp.2d 761 (N.D.Ill., 2011) ......................................................................... 25

*Scott v. Harris*,
  550 U.S. 372 (2007) ................................................................................................. 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .......................................................................................... 23, 24

*Sullivan v. All Web Leads, Inc.*,
  2017 WL 2378079 (N.D. Ill. June 1, 2017) ................................................................ 4

*Susinno v. Work Out World Inc.*,
  862 F.3d 346 (3d Cir. 2017) ............................................................................... 23, 24

*Tolan v. Cotton*,

134 S. Ct. 1861 (2014) ................................................................................................. 8

*United States v. Fernandez Sanchez,*
  46 F.4th 211 (4th Cir. 2022) ..................................................................................... 19

*Van Patten v. Vertical Fitness Grp., LLC,*
  847 F.3d 1037 (9th Cir. 2017) ........................................................................... 9, 23, 24

*Worsham v. Disc. Power, Inc.,*
  2021 WL 5742382 (D. Md. Dec. 1, 2021) ................................................................. 12

## Statutes

15 U.S.C. § 7001 ........................................................................................................... 18

15 U.S.C. § 7001(a) ....................................................................................................... 19

15 U.S.C. § 7001(c) ....................................................................................................... 19

15 U.S.C. § 7001(c)(1) ............................................................................................. 20, 21

15 U.S.C. § 7001(c)(1)(B)(iv) ....................................................................................... 21

15 U.S.C. § 7001(c)(1)(D) ............................................................................................ 20

15 U.S.C. § 7006(5) ...................................................................................................... 22

47 U.S.C. § 227 ............................................................................................................... 2

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................... 2

47 U.S.C. § 227(b)(3) .................................................................................................... 25

Md. Code Ann., Cts & Jud.Proc. § 10-402 ................................................................... 22

Md. Code Ann., Cts & Jud.Proc. § 10-405(a) ............................................................... 22

PL 102-243, 105 Stat. 2394 (Dec. 20, 1991) ................................................................ 25

## Other Authorities

CFPB Compliance Bulletin 2015-06 (Nov. 23, 2015) .................................................... 21

*Electronic Signatures in Global and National Commerce Act: The Consumer Consent Provision
  in Section 101(c)(1)(C)(ii)*, Federal Trade Commission (June 2001) ......................... 20

*In re* TCPA,
  21 FCC Rcd. 3787 (2006) .......................................................................................... 12

*In re TCPA*,
   23 FCC Rcd. 559 (2008) ............................................................................................. 2

*In re TCPA*,
   25 FCC Rcd. 1501 (2010) ........................................................................................... 2

*In re TCPA*,
   27 FCC Rcd. 1830 (2012) .................................................................................... passim

Restatement (Second) of Torts, § 652B ........................................................................ 23

## Rules

Fed.R.Civ.P. 30(b)(6) ..................................................................................................... 9

Fed.R.Civ.P. 56(a) ......................................................................................................... 8

## Regulations

12 C.F.R. § 1005.10(b) ................................................................................................ 21

47 C.F.R. § 64.1200(a)(1)(iii) ........................................................................................ 2

47 C.F.R. § 64.1200(a)(2) ................................................................................. 10, 24, 25

47 C.F.R. § 64.1200(c)(2)(ii) ....................................................................................... 23

47 C.F.R. § 64.1200(f)(1) ............................................................................................ 12

47 C.F.R. § 64.1200(f)(13) .................................................................................... passim

47 C.F.R. § 64.1200(f)(15) .......................................................................................... 23

47 C.F.R. § 64.1200(f)(9) ...................................................................................... passim

The TCPA prohibits using prerecorded messages during telemarketing calls to cellular telephone numbers. DentalPlans called Plaintiff's cell number numerous times, and played prerecorded messages such as:

> Renew your plan today and get 25% off when you mention the special code "Secret25". This offer won't last long so please call our DP at your service team back at 1-844-371-2316 between the hours of 8:30 a.m. and 10:00 p.m. Eastern Standard Time. Again, don't forget to mention the code "Secret25" to get your special 25% discount. Thank you and we look forward to speaking with you soon.

DentalPlans does not challenge whether these messages were prerecorded, nor does it dispute that it used those prerecorded messages during calls to Plaintiff's cell number. Instead, DentalPlans spuriously argues that its calls are not telemarketing, even though telemarketing is a specified term in the TCPA, defined as calls made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13).

There is an affirmative defense available if a TCPA defendant can show that it had "prior express written consent" to make robocalls to the consumer's cell number. Prior express written consent is *also* a term of art with specifically delineated requirements at 47 C.F.R. § 64.1200(f)(9). DentalPlans wrongly contends that the Court should allow it to invoke the "written consent" requirements, even though its consent was not written, and it admittedly did not obtain consent to make "telemarketing" calls as the regulation requires.

DentalPlans also argues that Plaintiff lacks Article III standing. But the Fourth Circuit has already rejected such arguments in *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019), which DentalPlans does not cite or distinguish, and every Circuit to consider the issue has ultimately found that people who receive calls proscribed by the TCPA have Article III standing to sue in federal court.

For these reasons, and as addressed further herein, DentalPlans' motion for summary

judgment should be denied.

## I.     <u>BACKGROUND</u>

### A.     The TCPA.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The TCPA broadly bans making any call to a cell phone number using any autodialer or an artificial or prerecorded voice (i.e., a "robocall"), without "prior express consent." 47 C.F.R. § 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA's "prior express consent" standard for robocalls was relatively lax for thirty years, requiring that the recipient merely provided her phone number to the caller in connection with the subject matter of a call. *In re TCPA*, 23 FCC Rcd. 559, 564 ¶¶ 9-11 (2008). However, in 2010, the FCC issued a Notice of Proposed Rulemaking that asked for comment as to whether imposing a *written* consent requirement might be more appropriate for telemarketing robocalls, only. *In re TCPA*, 25 FCC Rcd. 1501, 1507 ¶¶ 13-23 (2010). And in 2012, "[b]ased on substantial record support, [and] the volume of consumer complaints [the FCC] continue[s] to receive concerning unwanted, telemarketing robocalls," the FCC issued revised regulations requiring a heightened "prior express written consent" standard for telemarketing calls. *In re TCPA*, 27 FCC Rcd. 1830, 1838 ¶¶ 20-34 (2012).

The FCC reasoned that a heightened consent standard for prerecorded robocalls was proper for numerous reasons. First, the Commission found that such a rule was consistent with Congress' findings in enacting the TCPA in the first place:

> Among the findings Congress made when adopting the TCPA were that: (1) the use
> of the telephone to market goods and services to the home and to other businesses

has become pervasive due to the increased use of cost-effective telemarketing techniques; (2) telephone subscribers considered automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy; and (3) individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals yet permits legitimate telemarketing practices.

The FCC next found that the then-current rule of "regular" consent was insufficient to curb the onslaught of prerecorded telemarketing in the United States:

> While current regulations provide a measure of consumer protection from unwanted and unexpected calls, the complaint data, as noted above, show that the proliferation of intrusive, annoying telemarketing calls continues to trouble consumers. We conclude that requiring prior express written consent for telemarketing calls utilizing autodialed or prerecorded technologies will further reduce the opportunities for telemarketers to place unwanted or unexpected calls to consumers.

The FCC specifically found that requiring informed *and written* consent to receive *prerecorded telemarketing* would better protect consumers and reduce confusion:

> We believe that requiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer -- providing permission in writing -- to authorize autodialed or prerecorded telemarketing calls, and will reduce the chance of consumer confusion in responding orally to a telemarketer's consent request. We further find that the unique protections for wireless consumers contained in the TCPA supports requiring prior written consent for telemarketing robocalls.

The FCC found that telemarketing robocalls to cell phones are particularly intrusive, such that heightened protections are appropriate.

> Because section 227(b)(1)(A) of the Act specifically protects wireless users, among others, from autodialed or prerecorded calls to which they have not consented, we must ensure that our rules address privacy issues for wireless consumers. In addition, we note that the substantial increase in the number of consumers who use wireless phone service, sometimes as their only phone service, means that autodialed and prerecorded calls are increasingly intrusive in the wireless context, especially where the consumer pays for the incoming call. Further, the costs of receiving autodialed or prerecorded telemarketing calls to wireless numbers often rests with the wireless subscriber, even in cases where the amount of time consumed by the calls is deducted from a bucket of minutes. Given these factors,

3

we believe that it is essential to require prior express written consent for autodialed or prerecorded telemarketing calls to wireless numbers.

Finally, the FCC rejected the notion that oral consent – or consent without mention of telemarketing specifically – might be sufficient:

> One commenter, USAA, appears to suggest that oral consent is sufficient to permit any autodialed or prerecorded calls to wireless numbers. It argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect marketing and service calls. We disagree. **Consumers who provide a wireless phone number for a limited purpose -- for service calls only -- do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted.** Moreover, as use of wireless numbers continues to increase, we believe that increased protection from unwanted telemarketing robocalls is warranted.

*In re TCPA*, 27 FCC Rcd 1830, 1839-40, ¶¶ 24-25 (2012). The FCC reiterated that "the seller bears the burden of proving that a clear and conspicuous disclosure was provided, and that an unambiguous consent was obtained." *Id.* at 1844, ¶ 32; *Larson v. Harman Mgmt. Corp.*, 2016 WL 6298528, at *3-4 (E.D. Cal. Oct. 27, 2016) (analyzing TCPA's written consent requirement); *Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at *7-8 (N.D. Ill. June 1, 2017) (denying motion to dismiss where internet-based TCPA consent not clear and conspicuous).

The TCPA's written consent requirement – applicable for telemarketing calls – is specific. 47 C.F.R. § 64.1200(f)(9) provides:

> The term *prior express written consent* means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> > (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
> >
> > > (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

**B.      Statement of Facts.**

**1.      DentalPlans' Practices.**

DentalPlans' oral consent policy, on its face, fails to comport with the "prior express written consent" requirement that it obtain unambiguous, *written* consent for prerecorded-voice telemarketing. Its marketing script is conversational, and includes a series of questions directed to the consumer. The script goes like this:

a.  "████████████████████████████████████████████" <u>Ex. A</u> at DP000013.

After the consumer answers or asks further questions, its agents are instructed to ask,

b.  "████████████████████████████████" *Id.*

c.  ████████████████████████████████████████████
████████████████████████████████████" *Id.*

d.  After the consumer answers or asks further questions, the script then asks, "████████
████████████████████████████████████████████
████████████████████████" *Id.* at DP000014.

e.  Finally, after receiving a response, the script tells the consumer, "████████████████
████████████████████████████████████████" *Id.*

According to DentalPlans' Fed.R.Civ.P. 30(b)(6) witness, this entirely-oral exchange is the *only* way DentalPlans obtained purported consent for its prerecorded-voice calls for customers who

signed up on the telephone. Ex. B, Keen Dep. at 26:18-27:8.[1]

The fact that DentalPlans never obtained written consent precludes it from obtaining summary judgment. Moreover, even if for the sake of argument oral consent were sufficient, DentalPlans' script does not "clearly authorize" or "clearly and conspicuously" authorize DentalPlans to "deliver … to the signatory telemarketing calls using [a] prerecorded voice." 47 C.F.R. §§ 64.1200(f)(9) & 64.1200(f)(9)(i)(A).

DentalPlans used its inContact-brand dialer to make prerecorded-voice calls to Plaintiff and other consumers whose plan had lapsed, for the purpose of encouraging them to purchase a new plan—whether the same product or a different one altogether. Ex. B, Keen Dep. at 21:4-22, 46:25-47:5; Ex. C, Duckworth Dep. at 9:2-8, 14:13-20, 18:23-19:20.[2] DentalPlans used a blend of outbound robocall campaigns, all of which are reflected in its call records. *E.g.,* Ex. D (call records for Plaintiff); Ex. C, Duckworth Dep. at 9:2-8, 14:13-20, 15:8-17, 18:23-19:20.

DentalPlans concedes that, for just *one* of its prerecorded-voice call types—agentless "Winback Chaser" calls—it initiated prerecorded-voice calls to 57,240 unique cell phone numbers associated with a former customer.[3] Ex. C at 14:13-20, 19:10-20. DentalPlans also concedes that it made prerecorded-voice calls soliciting to at least 20,738 former Cigna plan customers who originally signed up orally by phone, applicable to the Subclass. Ex. F, Interrog. No. 1 (3d Set).

---

[1]    DentalPlans obtained "consent" on the Internet, too, but that consent-gathering method is not at issue in this case or applicable to Plaintiff or the Class.

[2]    *See also* Ex. E, Interrog. No. 6 (1st Set) ("[A]ll call recordings are performed by inContact and transferred to a local FTP site. All outbound dialer calls were conducted via the InContact Personal Connection dialer, which is the only telephony system in place through the call center.").

[3]    *See* Ex. C, Duckworth Dep. at 35:23-36:2 (identifying the "Winback Chaser" as a type of call first made "roughly 60 days or the second calendar month after termination"); Ex. D (showing agentless "Winback Chaser" call to Plaintiff on February 26, 2020).

6

### 2.      Plaintiff's Experience.

Plaintiff Deborah Bradley is a Maryland consumer and subscriber to the cellular telephone number at which DentalPlans called her. Ex. G, Bradley Decl. ¶ 3. On November 26, 2018, Plaintiff and her husband purchased a Cigna dental savings plan from DentalPlans over the phone, effective starting December 1, 2018. *Id.* ¶ 4; Dkt. 61-9 at BRADLEY000202.

Consistent with DentalPlans' consent script, nothing in this conversation "clearly authorized" or "clearly and conspicuously" authorized DentalPlans to "deliver … to [Plaintiff] telemarketing calls using [a] prerecorded voice." 47 C.F.R. § 64.1200(f)(9) & 64.1200(f)(9)(i)(A). Ex. G, Bradley Decl. ¶ 5.

Dissatisfied with the product—which she never used because it was so poor—Plaintiff allowed the plan to terminate without renewal on December 1, 2019. *Id.*; Ex. H, Bradley Dep. at 66:1-19. Beginning in September 2019, DentalPlans began calling Plaintiff's cell number with prerecorded-voice calls to try to get her to renew her plan and become a customer again. Ex. G, Bradley Decl. ¶ 6; Ex. D (log). Although Plaintiff never expressly consented to receive telemarketing (let alone in writing), DentalPlans made dozens of these calls to Plaintiff's cell phone, including at least ten after the plan terminated on December 1, 2019, and she was no longer a customer. *Id.*[4]

Plaintiff filed this lawsuit on April 28, 2020, seeking redress on behalf of herself and others

---

[4]      Some calls were completely "agentless," meaning that prerecorded messages were played with no opportunity for human interaction, such as calls on December 10, 2019, December 28, 2019, December 30, 2019, and February 26, 2020—all after her subscription terminated on December 1, 2019. Ex. C, Duckworth Dep. at 16:14-17, 22:23-24:24; Ex. D; Dkt. 61-9 at BRADLEY000202. Others were made using an "Outbound Dialer" that was programmed to play a prerecorded message if the call was answered by an answering machine, such as its calls to Plaintiff on December 3, 2019, December 9, 2019, December 12, 2019, December 17, 2019, December 20, 2019, and December 23, 2019—again, all after she was no longer a customer. Ex. C, Duckworth Dep. at 16:18-17:10, 18:9-19:4; Ex. D.

whose cell numbers DentalPlans robocalled to try to win back their business without valid consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff also amended her complaint to add Cigna, one of DentalPlans' two primary clients on whose behalf it solicited Plaintiff and the Subclass, as a defendant. Dkt. 42; Ex. B, Keen Dep. at 46:22-24. DentalPlans has not altered its consent or calling policies or practices since this lawsuit was filed. Ex. B, Keen Dep. at 44:20-24.

## II.   **LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Fitzgerald's Lakeforest Motors, Inc. v. Toyota Motor Sales USA, Inc.*, 2021 WL 4339204, at *3 (D. Md. Sept. 23, 2021) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "The court must view the evidence in the light most favorable to the nonmoving party," *Id.* (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)), "and draw all reasonable inferences in [its] favor," *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

## III.   **ARGUMENT**[5]

---

[5]   DentalPlans' attempt to "preserve the record for appeal" via a footnote argument that the TCPA was unconstitutional when DentalPlans made the calls at issue is groundless. DentalPlans' failure to develop this argument in its opening brief results in waiver. *United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022). Moreover, the Supreme Court's plurality in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2355 n.12 (2020), rejected DentalPlans' position that the *entire* TCPA was unconstitutional from 2015 until an inapplicable "government-debt exception" was severed in 2020. *Lerner v. AmeriFinancial Sols., LLC*, 2021 WL 1785138, at *4 (D. Md. May 5, 2021) (citing cases). This argument is also procedurally defective because DentalPlans failed to serve notice under Fed.R.Civ.P. 5.1.

## A. DentalPlans Does Not Challenge any Aspect of Plaintiff's *Prima Facie* Case.

The elements of a claim under the TCPA are: (1) that the defendant called the plaintiff's cellular telephone number, (2) using an automatic telephone dialing system or an artificial or prerecorded voice. *Ewing v. Flora*, 2015 WL 12564225, at *6 (S.D. Cal. Mar. 25, 2015). What is more, "[c]onsent is not an element of a TCPA claim, but rather 'an affirmative defense for which the defendant bears the burden of proof.'" *Derossett v. Jonathan C. Patrowicz, D.O., P.A.*, 2022 WL 4448859, at *4 (D. Md. Sept. 23, 2022) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)).

DentalPlans does not challenge that it called Plaintiff's cell phone, and it does not challenge that it played a prerecorded message. Nor can it: Plaintiff confirms she received the calls at issue on her cell phone, and DentalPlans produced records of its calls to that cell phone. Ex. G, Bradley Decl. ¶ 3; Ex. D (call log); Ex. C, Duckworth Dep. at 15:8-22. The prima facie elements of Plaintiff's TCPA claim are undisputed and established.

## B. DentalPlans Lacked Prior Express Written Consent for Telemarketing Robocalls.

Instead of attacking the elements of Plaintiff's case, DentalPlans argues its affirmative defense that it cannot be held liable because – in its view – it had proper consent to call Plaintiff. DentalPlans first attacks the standard for consent, arguing that its calls were not "telemarketing" or "advertisements," and that consequently a relaxed, non-written standard for consent applies. DentalPlans is wrong: As the robocall scripts and its Fed.R.Civ.P. 30(b)(6) witness testimony show, the purpose of the robocalls at issue is to try to sell DentalPlans' goods and services.

DentalPlans then argues that its recorded telephone conversations with Plaintiff constituted an "agreement, in writing" with Bradley's "signature" agreeing to receive prerecorded telemarketing calls, even though it never discussed prerecorded telemarketing calls with Bradley.

9

DentalPlans is incorrect on both arguments, and the Court should deny its motion for summary judgment.

### 1. DentalPlans' calls constitute telemarketing.

The portion of the TCPA at issue in this case prohibits "[i]nitiat[ing], or caus[ing] to be initiated, any telephone call that includes or *introduces an advertisement* or *constitutes telemarketing*, using an automatic telephone dialing system or an artificial or prerecorded voice[.]" 47 C.F.R. § 64.1200(a)(2) (emphasis added). "Telemarketing" is a term of art, defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).[6]

The text of DentalPlans' calls makes clear that its purpose was to try to "win back" customers whose subscriptions to DentalPlans' had expired, and sell them another year of service. The robocalls Plaintiff received said:

> Message 1: *Renew your plan today and get 25% off when you mention the special code "Secret25"*. This *offer won't last long* so please call our DP at your service team back at 1-844-371-2316 between the hours of 8:30 a.m. and 10:00 p.m. Eastern Standard Time. Again, *don't forget to mention the code "Secret25" to get your special 25% discount*. Thank you and we look forward to speaking with you soon.
>
> _____
>
> Message 2: …*exclusive renewal offer*, please call us back today at (855) 217-3939 between the hours of 8:30 AM and 10:00 PM to *take advantage of this limited time offer*. Thank you and have a wonderful day.
>
> _____
>
> Message 3: … our family. That's why today, *we're offering you 20% off your annual*

---

[6]    Note that the definition of "telemarketing" hinges upon a call's *purpose*, rather than on what happens during the call. *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820-21 (8th Cir. 2015) (prerecorded message left on voice mail asking recipient to do an informational "survey" was telemarketing even though recording did not mention any product or service, because the call's *purpose* of was to advertise a movie.)

*renewal*. To *take advantage of this special offer*, please call our DP at your service team back at 1-855-202-1363 between the hours of 8:30 AM and 10:00 PM Eastern Standard Time. Thank you, and we look forward to offering you another great year of savings.

Ex. 1, Burke Decl. ¶ 11 (emphasis added); Ex. I (Prod. Req. 3); Ex. J (audio files). When asked,

DentalPlans' Fed.R.Civ.P. 30(b)(6) witness characterized these calls as "telemarketing":

> Question:   Would you please provide an overview of the ***telemarketing*** that DentalPlans has done in the past five years.
>
> Answer:    [We make calls to] member[s] who currently or previously had a plan with us, and we're following -- we're contacting them to renew their plan.

Ex. B, Keen Dep. at 11:18-12:6 (emphasis added). The calls are overseen by DentalPlans'

marketing department, which tracks their "efficacy" in generating sales. Ex. C, Duckworth Dep.

at 38:9-14, 45:17-47:5. These facts are dispositive, because they demonstrate that the purpose of

DentalPlans' calls was to "encourage[e] the purchase … of … property, goods, or services[,]" 47

C.F.R. § 64.1200(f)(13)—here, a dental discount plan.

Indeed, DentalPlans does not argue that its calls are not "telemarketing." It simply quotes

that portion of the regulation, and then goes into an argument about whether its calls were

"advertisements" (a separately defined term under the TCPA), relying almost exclusively on

analogizing the FCC's 2006 Junk Fax Prevention Act to support an argument that its calls were

not "telemarketing." DentalPlans offers no reason for the Court to look past the regulatory

definition of "telemarketing" in its analysis, and it should decline to do so.

Indeed, the FCC order that DentalPlans cites as analogous is simply not so. Instead, it

relates to regulatory language applicable to *junk faxes* alone, and addresses what constitutes an

"unsolicited advertisement" under the *junk fax* rules.[7] That order held that "messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements[.]" *In re* TCPA, 21 FCC Rcd. 3787, 3912-913, ¶ 49 (2006) (emphasis added). In doing so, the FCC gave an example that "[a] subscription renewal notice would be considered 'transactional' in nature, provided the recipient was a current subscriber and had affirmatively subscribed to the publication." *Id.*

Aside from the fact that the 2006 Order did not address "telemarketing" and does not apply to phone calls, there is a material difference between a subscription-renewal notice that informs a customer who has already agreed to automatic renewal that the term is about to renew, and reaching out for the purpose of asking the customer to buy a new good or service. A true subscription-renewal notice is purely informational because it notifies an existing customer that they will incur a charge or renewal without further action.

By contrast, DentalPlans' calls targeted Plaintiff and others—former customers who had affirmatively chosen *not* to renew[8]—with robocalls to try to get them to renew or purchase a different product altogether.[9] Ex. B, Keen Dep. at 11:18-12:6, 46:25-47:5; Ex. C, Duckworth Dep. at 14:13-20, 19:10-20:8. As such, because DentalPlans' calls were made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. §

---

[7]    The 2006 Order dealt with the TCPA's separate junk fax rules and the definition of "advertisement," which are separate and apart from the TCPA's robocall rules and the definition of "telemarketing." *Compare* 47 C.F.R. § 64.1200(f)(1), *with* 47 C.F.R. § 64.1200(f)(13). Indeed, DentalPlans' opening brief *concedes* that section 64.1200(f)(13) applies, just before it argues that the junk fax rules should also apply. Dkt. 116-1, Def.'s Br. at 15.

[8]    Ex. B, Keen Dep. at 41:11-19 (describing "DNR" coding signifying consumer indicated "they don't want to be automatically renewed").

[9]    *Worsham v. Disc. Power, Inc.*, 2021 WL 5742382, at *5 (D. Md. Dec. 1, 2021), says nothing different. Unlike here, *Disc. Power* concerned calls to existing customers about their existing accounts, whereas DentalPlans was calling former customers in an attempt to enter into a new transaction.

64.1200(f)(13), they are telemarketing and the "written consent" regulations apply. *In re TCPA*, 27 FCC Rcd. 1830, 1838 (2012).

### 2. DentalPlans' did not obtain Bradley's "prior express written consent" for prerecorded message robocalls.

The FCC imposed the express written consent requirement for telemarketing robocalls to "better protect consumer privacy because such consent requires conspicuous action by the consumer -- providing permission in writing -- … and will reduce the chance of consumer confusion in responding orally to a telemarketer's consent request." *In re TCPA*, 27 FCC Rcd. 1830, 1839 (2012).

Toward that end, 47 C.F.R. § 64.1200(f)(9) requires the caller to obtain a written agreement with the consumer that "clearly" authorizes advertisements or telemarketing robocalls to their cell phone number. The regulations emphasize that disclosures on the written agreement must "clear[ly] and conspicuous[ly]" inform the consumer: (1) that by agreeing, they authorize the seller to make "telemarketing messages using … an artificial or prerecorded voice," and (2) that they are "not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." *Id.*

Here, DentalPlans' conversation with Plaintiff would not constitute "prior express written consent," even if it had been in writing, because it did not provide clear and conspicuous notice of what 47 C.F.R. § 64.1200(f)(9) requires. The conversation between Plaintiff and DentalPlans' representative went as follows:



13



<u>Ex. K</u>, Call Tr. (Nov. 26, 2018) at 2:2-3:13.[10]

This exchange fails to satisfy the TCPA's requirements for "prior express written consent," because it does not mention prerecorded *telemarketing* calls. Pursuant to its script, the DentalPlans' representative started off by falsely telling Plaintiff that it only wanted Plaintiff's phone number as a "callback number" "in case we're disconnected." *Id.* at 2:17-19. What is more, DentalPlans' next question again focused on informational (non-telemarketing) calls when it asked whether it would be okay if it used prerecorded messages, without any reference whatsoever to telemarketing. *Id.* at 2:21-23.  And when Plaintiff inquired, the representative doubled-down on DentalPlans' prior deception, by reiterating that calls would be informational, only, "to keep you updated with any plan information." *Id.* at 3:1-2.

DentalPlans' suggestion that Plaintiff had reason to suspect telemarketing might occur, because she clarified that she did not want her information being provided to third parties, does

---

[10]    DentalPlans' recitation of the call in its brief chops off the part in which DentalPlans' representative indicates that it needs Plaintiff's phone number as a callback number if the line happens to disconnect.

not make sense. That a consumer does not want their information being sold, or to receive calls from *other* people, says nothing about whether they agree to receive telemarketing specifically from the immediate entity.[11] Plaintiff's testimony that she did not anticipate that DentalPlans would telemarket to her, and that she would have opted out if this were the case, rebuts DentalPlans' speculation. Ex. H, Bradley Dep. at 77:2-7. Plus, consent to receive prerecorded telemarketing must be "clear and conspicuous," *Karpilovsky v. All Web Leads, Inc.*, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018); a seller saying enough so that a consumer *might* suspect she *might* receive prerecorded telemarketing calls is insufficient.

DentalPlans' heavy reliance on *Lundbom v. Schwan's Home Serv., Inc.*, 2020 WL 2736419 (D. Or. May 26, 2020), to argue that a reasonable consumer might have inferred from the script that DentalPlans would send them telemarketing robocalls, is also not persuasive. First, the standard is not whether a reasonable person might "infer" anything at all; the standard set by the FCC's regulations requires a written agreement that unambiguously authorizes the caller to send "telemarketing messages using … an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). In *Lundbom*, the plaintiff registered for a home food delivery service account through the defendant's website, checked a box to "Stay connected – Receive delivery notifications, important updates and program news" via autodialed text message, *Id.* at *2, and agreed in writing to receive "SMS messages that contain delivery-specific notifications and *promotions* for Schwan's Home Service and our *products and services*." *Id.* at *7 (emphasis added). The *Lundbalm* plaintiff thus expressly consented in writing to receive the text messages at issue in that case.

DentalPlans' attempt to glean consent by virtue of the script its representatives referenced

---

[11]    Even if the Court were to accept DentalPlans' suggestion that it infer that Plaintiff saying she did not want to have her information sold means she anticipated that telemarketing calls might occur, then Plaintiff's statement that she would "opt out" indicates that she did not want it.

while talking to Plaintiff and other class members likewise fails to satisfy 47 C.F.R. § 64.1200(f)(9), because its script does not ask about – or even contemplate – consent for telemarketing robocalls, either. The following table illustrates the point:

| DentalPlans' Script Segment | Does the question authorize prerecorded-voice telemarketing calls? |
|---|---|
|  | No. |
| | No. |
| | No. |
| | No. |
| | No. |
| | No. |

*See* <u>Ex. L</u>, Haruvy Rep. ¶ 20 (quoting <u>Ex. A</u>, DP000014) (spacing added).

Plaintiff submits that DentalPlans' consent procedures are *intentionally* ambiguous: Note how DentalPlans first induces the consumer into providing her phone number under the pretense

of . Ex. A, DP000014. From there, DentalPlans builds up to see if the consumer will ███████████████████. *Id.*

██████████████████████████████

██████████████████████████████

███████ *Id.*

DentalPlans knows how to make disclosures in a more straightforward way, because its online form for consumers who make their purchase over the Internet does so. It reads:

> By opting in, you agree that **DentalPlans.com may contact you with marketing messages** at the phone number you've provided. These communications may include, but are not limited to, calls made to you **using an automatic telephone dialing system and/or pre-recorded voice messages**. You are not required to agree as a condition of purchasing any products and/or services. Please note that we may still contact you with information regarding your membership as permitted by law.

Ex. M.[12] DentalPlans thus has no excuse for failing to provide at least the same level of notice to those who purchased its services by phone, i.e., Plaintiff and the Class.

DentalPlans' omission of any reference to prerecorded telemarketing in its telephone script directly conflicts with the FCC's goal in preventing consumer confusion about what they are agreeing to—which is the point of the "written consent" requirement. *In re TCPA*, 27 FCC Rcd. 1830, 1839 (2012). In *Gaker v. Citizens Disability, LLC*, 2023 WL 1777460, at *7 (D. Mass. Feb. 6, 2023), for example, the court declined to find "prior express written consent" where the consent

---

[12] To be clear, Plaintiff does not concede that DentalPlans' online form constitutes "prior express written consent," either. Among other things, the disclosure language is small and difficult to read, DentalPlans has produced nothing to establish it satisfies E-SIGN, and other elements of DentalPlans' website suggest that the consumer has no real ability to avoid "consenting" if they want to make a purchase. However, because the Class is limited to people like Plaintiff who purchased their plan by phone, DentalPlans' online "consent" process is not at issue.

17

disclosures appeared designed to prevent consumers from understanding that they were agreeing to received telemarketing robocalls. Because DentalPlans' script language tip-toes around "consent" generally without securing unambiguous, express authorization for prerecorded telemarketing calls like the TCPA requires, the Court should deem it similarly insufficient.

### 3.    DentalPlans' Oral Consent ≠ Written Consent.

Even if the Court finds that DentalPlans' script to Plaintiff unambiguously authorized prerecorded-voice telemarketing, it should nonetheless deny DentalPlans' motion because DentalPlans failed to satisfy the TCPA's "written" consent and signature requirements.

Pursuant to 47 C.F.R. § 64.1200(f)(9), "prior express written consent" requires:

(1) A written agreement,
(2) formed before the subject call occurs,
(3) bearing the signature of the person called,
(4) containing clear and conspicuous disclosures informing the signatory that:
    a. by executing the agreement, the consumer authorizes the seller to "deliver … telemarketing calls using an … artificial or prerecorded voice," and
    b. signing the agreement is not a condition of purchase.

As the seller, DentalPlans "bears the burden of proving that a clear and conspicuous disclosure was provided, and that an unambiguous consent was obtained." *In re TCPA*, 27 FCC Rcd 1830, 1844, ¶ 33 (2012).

It is undisputed that, if any consent was conferred, it occurred entirely by phone. Dkt. 116-1, Def.'s Br. p. 3. Thus, DentalPlans bears the burden of demonstrating that its "written" contract and Bradley's "signature" are valid under the E-SIGN Act, 15 U.S.C. § 7001 *et seq*. However, DentalPlans has not done so. It mentions E-SIGN in a footnote, only, and does not even attempt to analyze whether it has satisfied E-SIGN under the facts of this case. A "party waives an argument by failing to present it in its opening brief" or by "failing to 'develop [its] argument— even if [its] brief takes a passing shot at the issue.'" *United States v. Fernandez Sanchez*, 46 F.4th

211, 219 (4th Cir. 2022). Plaintiff submits that this principle is particularly applicable where, as here, the movant bears the burden of proof as to the unbriefed matters.[13]

On its merits, DentalPlans' oral script does not qualify as a "written" document under E-SIGN. Although it is true that the FCC authorized use of E-SIGN and call recordings, it did not *carte blanche* authorize sellers to obtain written consent by simply asking for such on the phone. To the contrary, the FCC specified that only "documentation and signature requirements recognized by the [E-SIGN Act]" would satisfy its written consent rules. *In re TCPA, Final Regulatory Flexibility Analysis*, 27 FCC Rcd. 1830, 1867 (2012).

As this passage suggests, for consent to be valid under E-SIGN *both* (1) the documentation requirements of 15 U.S.C. § 7001(c), *and* (2) the signature requirements of 15 U.S.C. § 7001(a) must be satisfied. DentalPlans satisfies neither.

### i.    *DentalPlans fails to satisfy E-SIGN's requirements for written contracts.*

E-SIGN provides that, where a statute or regulation requires that information relating to a transaction be in writing, the use of an "electronic record" may be sufficient, so long as the consumer knowingly consents to enter into the contract through electronic means. The FTC explained it this way:

> Careful to preserve the underlying consumer protection laws governing consumers' rights to receive certain information in writing, Congress imposed special requirements on businesses that want to use electronic records or signatures in consumer transactions.

> Section [7001(c)(1)] of the Act provides that information required by law to be in writing can be made available electronically to a consumer only if he or she

---

[13]    "Loading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving everything for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006)

affirmatively consents to receive the information electronically and the business clearly and conspicuously discloses specified information to the consumer before obtaining his or her consent.

Ex. N, *Electronic Signatures in Global and National Commerce Act: The Consumer Consent Provision in Section 101(c)(1)(C)(ii)*, Federal Trade Commission (June 2001) (available at https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-esign/esign7.pdf). The FTC found these requirements to be an "effective tool to prevent fraud and increase consumer confidence in the electronic marketplace." Ex. N at 8.

TCPA consent through E-SIGN is thus only valid if it occurs after a "clear and conspicuous" disclosure of: (i) the consumer's right to opt out, (ii) the scope of such consent, (iii) the procedures needed to withdraw that consent, and (iv) how to obtain a paper copy of the electronic record; and (C) "the hardware and software requirements for access to and retention of the electronic records" (which the consumer consented in a manner demonstrating his or her ability to access). 15 U.S.C. § 7001(c)(1)(A)-(C). The consumer must also be kept updated on any changes as to hardware or software requirements to access such. 15 U.S.C. § 7001(c)(1)(D).

Here, the undisputed facts demonstrate that DentalPlans failed to adhere to E-SIGN because: (1) It did not provide Plaintiff or the class with any of the disclosures E-SIGN separately requires, and (2) it did not first obtain consent to use an electronic record in lieu of the written agreement the TCPA requires. Ex. K, Call Tr. (Nov. 26, 2018) at 2:2-3:13. Because DentalPlans did not adhere to E-SIGN's requirements, it cannot rely on E-SIGN to claim that there was a

20

"written" agreement between it and Bradley.[14]　[15]

For example, *Mantha v. Quotewizard.com, LLC*, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), entered summary judgment for the plaintiff on the ground that the defendant failed to first obtain the consumer plaintiff's consent to use E-SIGN before obtaining TCPA consent:

> The E-SIGN Act provides that an electronic record may be used to provide information to a consumer that is required to be made in writing per a statute or regulation where the consumer is provided with certain disclosures, including how to withdraw consent. 15 U.S.C. § 7001(c). Those disclosures were not included in the consent form defendant identified.

*Id.*; *cf. Atkinson v. Pro Custom Solar LLC*, 2022 WL 4071998, at *5 (W.D. Tex. Sept. 1, 2022) (recording of oral consent insufficient to confer written consent).

### ii.　DentalPlans did not obtain a valid electronic signature, either.

Whether DentalPlans obtained a valid "electronic signature" from Plaintiff is a separate issue that DentalPlans also botched. Under E-SIGN, an electronic signature is only effective if there is: (1) an "electronic sound, symbol, or process" that is (2) "attached to or logically associated

---

[14]　For example, the E-SIGN Act required that DentalPlans' disclosures be available in paper format, and that the consumer be informed of how to obtain such. 15 U.S.C. § 7001(c)(1)(B)(iv). And, of course, the electronic record version of the TCPA disclosures should also have been provided to the consumer. 15 U.S.C. § 7001(c)(1). But none of this ever happened.

[15]　For example, Regulation E requires that persons that obtain authorizations for preauthorized electronic fund transfers ("EFTs") provide a copy of the terms of the authorization to the consumer. 12 C.F.R. § 1005.10(b). In CFPB Compliance Bulletin 2015-06 (Nov. 23, 2015), the Consumer Financial Protection Bureau found that "oral recordings obtained over the phone may authorize preauthorized EFTs under Regulation E provided that these recordings also comply with the E-Sign Act." *See* https://files.consumerfinance.gov/f/201511_cfpb_compliance-bulletin-2015-06-requirements-for-consumer-authorizations-for-preauthorized-electronic-fund-transfers.pdf. However, E-SIGN does not negate companies' obligation to comply with Regulation E's authorization production requirement, and the CFPB held that, even in the case of an oral recording authorization, a company must still provide a written copy of the authorization to the consumer. *Id.* p. 4 (finding simply making a copy "available upon request" wasn't sufficient). So, too, here was DentalPlans required to provide a "written agreement" containing the required disclosures to its telemarketing robocall recipients, which they needed to receive and agree to *before* being called. 47 C.F.R. § 64.1200(f)(9).

with a contract or other record," and (3) "executed or adopted by a person," (4) "with the intent to sign the record." 15 U.S.C. § 7006(5). Thus, while it is true that a "voice recording" may in some instances qualify as an electronic signature, *In re TCPA*, 27 FCC Rcd. 1830, 1844 (2012), this will only be the case if all of the E-SIGN requirements have been satisfied. 15 U.S.C. § 7006(5).

DentalPlans' alleged "consent" conversation with Plaintiff fails each requirement for a signature. First, there was no mention of a signature, and no sound, symbol, or process that was identified by DentalPlans as creating a signature during the call. Second, the disjointed, interactive, and deceptive nature of DentalPlans' consent script prevents any signature – even if there had been one – from being "logically associated" with any contract. Third, there is no evidence that Plaintiff executed or adopted – or was even aware of – any contract. And perhaps most importantly, fourth: DentalPlans points to no evidence that Plaintiff intended to sign anything at all.

What is more, Maryland is a two-party consent state for call recording, Md. Code Ann., Cts & Jud.Proc. §§ 10-402(a) & 10-402(c)(3), and requires that consent to record calls be obtained "prior" to such recording. Because DentalPlans did not do this, the recordings it has submitted are inadmissible. Md. Code Ann., Cts & Jud.Proc. § 10-405(a).

The Court should reject DentalPlans' suggestion that it allow companies to create the legal fiction of a "signed" and "written" agreement by passively and secretly recording a telephone conversation with consumers who have no idea they might be "signing" a "written" agreement. Compliance with E-SIGN would remedy this infirmity. Because Plaintiff did not intend to sign a written agreement with DentalPlans that authorized it to robocall her cell number with telemarketing messages, "prior express written consent" does not exist, and DentalPlans' motion should, consequently, be denied.

22

### C. Plaintiff Has Article III Standing.

DentalPlans also challenges whether Plaintiff incurred sufficient injury to confer Article III standing. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019)—a TCPA case that DentalPlans' fails to address or cite—addressed this issue succinctly:

> Looking both to Congress's judgment and historical practice, as *Spokeo* instructs, the private right of action here plainly satisfies the demands of Article III. In enacting § 227(c)(5)[16] of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests....
>
> Our legal traditions, moreover, have long protected privacy interests in the home. Intrusions upon personal privacy were recognized in tort law and redressable through private litigation. *See generally* Restatement (Second) of Torts, § 652B (defining "[i]ntrusion upon seclusion" as "intentional[ ] intru[sion], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns").
>
> Cognizable intrusions include intrusions made via phone calls. *Id.* The straightforward application of *Spokeo* thus neatly resolves this matter, as many other courts have held in similar settings. *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Booth v. Appstack*, Inc., 2016 WL 3030256, at *5-6 (W.D. Wash. May 25, 2016) (holding that under *Spokeo* violations of the TCPA's robocalling provision are "sufficiently concrete to confer standing"); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641 (N.D. W. Va. 2016) ("[U]nwanted phone calls cause concrete harm.")….
>
> Congress is empowered to "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law," *Spokeo*, 136 S. Ct. at 1549 (citing *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130), and that is precisely what it did [with the TCPA].

The harm Plaintiff incurred is the same harm the Fourth Circuit found sufficient in *Krakauer*: receipt of nonconsensual telemarketing. And just as in *Krakauer*, the harm here shares "a close

---

[16]    As with the nonconsensual robocall prohibition at issue in this case, the TCPA's National Do Not Call Registry regulation at issue in *Krakauer* likewise applies to nonconsensual calls. *See* 47 C.F.R. § 64.1200(c)(2)(ii) & (f)(15) (exception for calls made with "prior express invitation or permission").

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)—invasion of privacy, intrusion upon seclusion, and trespass to chattels.[17] Or, as then-Circuit Judge Barrett found in holding that Article III standing exists for nonconsensual text message calls, in enacting the TCPA, "Congress identified a modern relative of a harm with long common law roots." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461-63 (7th Cir. 2020) (Barrett, J.).[18] Case law is, thus, clear that Plaintiff has Article III standing.

Additionally, DentalPlans' assertion that Plaintiff did not suffer a concrete and particularized harm ignores Plaintiff's testimony about the unwanted, unauthorized, annoying, invasive harm, trespass, and waste of time she suffered as a result of DentalPlans' calls. Ex. H, Bradley Dep. at 34:12-20, 45:15-50:6, 51:16-53:9. That Plaintiff agreed to receive customer-service type calls about the plan she purchased does not, as DentalPlans suggests, negate the harm caused by DentalPlans robocalling her with unauthorized telemarketing prerecords about some new possible transaction. Likewise, DentalPlans' blame-the-victim suggestion that Plaintiff should have tried harder to opt out is meritless because the TCPA contains no such requirement, 47 C.F.R. § 64.1200(a)(2), and would unfairly require Plaintiff to spend even more time addressing calls for which the TCPA required *DentalPlans* to have valid consent in the first instance. *See Powell v.*

---

[17]    "Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as 'plac[ing a] foot on another's property' is trespass." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 779 (N.D.W. Va. 2017).

[18]    Other Circuit Courts are in accord with the Fourth and Seventh Circuits. *Melito v. Experian Mtkg. Sols., Inc.*, 923 F.3d 85, 92-93 (2d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Dickson v. Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021); *Dickson v. Direct Energy, LP*, 69 F.4th 338, 349 (6th Cir. 2023); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017); *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023).

*West Asset Management, Inc.*, 773 F.Supp.2d 761, 764 (N.D.Ill., 2011) (failure to mitigate not a valid affirmative defense for TCPA claims). And DentalPlans' attempt to distort Plaintiff's testimony to suggest that the only harm she incurred was due to the volume of calling, or that she agreed to be called for any purpose, contradicts the record. Plaintiff testified that she would have been fine with "normal communications" such as "[o]ccasionally giving a call to update" or "[i]f they needed to contact me" about the plan, but she clarified that DentalPlans did not ask her if it could make telemarketing robocalls to her phone, and that she would not have consented if that were the case. Ex. H, Bradley Dep. at 71:5-17, 77:2-7.

These harms were particularized to Plaintiff because she incurred them personally as a direct result of DentalPlans calling her, and they are precisely the concrete harms Congress intended to prevent in granting a private right of action under the TCPA. *See* PL 102-243, 105 Stat. 2394 § 2(12) (Dec. 20, 1991) (reflecting intent to "protect[] telephone consumers from this nuisance and privacy invasion"); 47 C.F.R. § 64.1200(a)(2); 47 U.S.C. § 227(b)(3). Thus, Plaintiff has Article III standing.

## IV.    DO-NOT-CALL CLAIM

Although Plaintiff remembers asking DentalPlans not to call her, she has not uncovered corroborating evidence to support this recollection. Plaintiff thus wishes to abandon her internal do-not-call claims raised in Count II.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny DentalPlans.com's Motion for Summary Judgment, Dkt. 116, and grant such other and further relief the Court deems reasonable and just. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

DEBORAH BRADLEY, individually and on behalf of others similarly situated

Dated: November 17, 2023

By: /s/ Alexander H. Burke
    Alexander H. Burke (*pro hac vice*)
    Daniel J. Marovitch (*pro hac vice*)
    BURKE LAW OFFICES, LLC
    909 Davis St., Suite 500
    Evanston, IL 60201
    Telephone: (312) 729-5288
    aburke@burkelawllc.com
    dmarovitch@burkelawllc.com

    Peter A. Holland (Fed. Bar No. 10866)
    Emanwel J. Turnbull (Fed. Bar No. 19674)
    THE HOLLAND LAW FIRM, P.C.
    914 Bay Ridge Rd. Ste 230
    Annapolis, MD 21401
    Telephone: (410) 280-6133
    peter@hollandlawfirm.com
    eturnbull@hollandlawfirm.com

    Amanda J. Allen (*pro hac vice*)
    THE CONSUMER PROTECTION FIRM, PLLC
    401 E. Jackson St., Suite 2340
    Tampa, FL 33602
    Telephone: (813) 500-1500
    amanda@theconsumerprotectionfirm.com

    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

    /s/ Daniel J. Marovitch

26