## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| .DEBORAH BRADLEY, *individually and on behalf of others similarly situated,* | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 20-1094-BAH |
| DENTALPLANS.COM *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Deborah Bradley ("Plaintiff") brings this case on behalf of herself and others similarly situated against Defendants DentalPlans.com ("DentalPlans") and Cigna Health and Life Insurance Company ("Cigna") (collectively "Defendants"). ECF 42. Pending before the Court are Plaintiff's motion for class certification, ECF 107,[1] and DentalPlans's motion for summary judgment, ECF 116. The parties have fully briefed each motion and have provided exhibits supporting their memoranda of law.[2] *See* ECFs 111, 121, 113, 115, 124, 127, 129. On April 29, 2024, Plaintiff and DentalPlans were ordered to submit additional briefing regarding the motion for summary judgment. ECF 133. Plaintiff and DentalPlans responded. ECFs 136, 137. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6

---

[1] A sealed, unredacted version of this motion is filed at ECF 108. The sealed version of this motion, like its unsealed twin, is GRANTED for the reasons explained in the memorandum opinion.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

(D. Md. 2023). Accordingly, for the reasons stated below, Plaintiff's motion for class certification, ECF 107, is GRANTED, and DentalPlans's motion for summary judgment, ECF 116, is DENIED.

## I.   **BACKGROUND**

DentalPlans operates a "direct-to-consumer marketplace" that sells "dental savings plans" that allow customers to receive discounts on dental treatments. ECF 116-1, at 7; ECF 111-4, at 3. At least one of these dental savings plans is provided by Cigna. *See* ECF 111-11 (Cigna dental savings plan membership agreement). Plaintiff placed a call to DentalPlans in November 2018, intending to sign up for a dental savings plan. ECF 124-9, at 2. The representative to whom Plaintiff spoke confirmed Plaintiff's phone number and then asked Plaintiff if she consented to DentalPlans "contact[ing] [her] with an automatic dialing system or a prerecorded message." ECF 113-2; ECF 111, at 21. Plaintiff requested clarification, asking about the purpose of the automated calls. ECF 113-2; ECF 111, at 21. "The representative responded, 'to keep you updated with any plan information,' and confirmed that only DentalPlans would be calling." ECF 111, at 21 (quoting ECF 113-2, at 4). Plaintiff agreed to receive the calls as described by the representative. *Id.*; ECF 113-2, at 4. Plaintiff proceeded to successfully sign up for a Cigna dental discount plan through DentalPlans during the phone call. ECF 124-9, at 2.

The representative to whom Plaintiff spoke during this initial sign-up process utilized a sales script during the call. *See* ECF 111, at 19; ECF 113-1, at 11–12. The script calls for DentalPlans's agents to (1) "collect[] the consumer's name and telephone number,"; then (2) ask if the caller would "like to receive plan updates and promotions via text message"; before (3) asking for the caller's consent to "contact [them] using an[] automated telephonic dialing system and/or prerecorded message"; and finally, (4) informing the caller that they "are not required to agree as a condition of purchasing any products and or services." ECF 111, at 19 (quoting ECF

113-1, at 11–12).  This script is used by DentalPlans for all incoming calls from non-customers, though the actual conversations vary naturally depending on the caller's response. *Id.*

Nearly a year after Plaintiff's initial call to DentalPlans, in September 2019, Plaintiff called DentalPlans again to inquire about the specifics of her plan. ECF 116-1, at 28; ECF 113-4, at 3–23.  While on the phone, the DentalPlans representative discussed the potential renewal of Plaintiff's plan. ECF 113-4, at 16–20.  Plaintiff explained that she did not want her plan to auto-renew, and the agent told her she would be notified before her plan expired. *Id.* This is the last phone call Plaintiff had with any live person at DentalPlans. *See* ECF 113-5, at 2 (log of calls between DentalPlans and Plaintiff showing that Plaintiff did not speak with any other agents).

As Plaintiff's plan's expiration date grew near, DentalPlans began placing calls to her phone using a prerecorded voice to inform her that her membership was ending soon and that she could renew her plan. *See* ECF 124, at 13; ECF 113-5, at 2 (showing log of calls made to Plaintiff using machine); ECF 124-9, at 2 ("DentalPlans has called my cell phone number dozens of times with prerecorded-voice messages[] to try to get us to reup or renew the Cigna plan.").  Plaintiff chose not to renew her plan and ignored the calls. ECF 129-10, at 8.  Her plan expired on December 1, 2019. *Id.*

Plaintiff continued to receive prerecorded calls from DentalPlans after her plan expired. ECF 113-5, at 2 (showing calls placed to Plaintiff's number after December 1, 2019).  These calls, characterized by DentalPlans as "winback" calls, attempted to "win back" Plaintiff's business by encouraging her to repurchase her Cigna plan with DentalPlans. *See* ECF 111-4, at 14 ("Winback is, their plan has expired, and we're contacting them to renew their plan after expiration.").  According to DentalPlans's records, Plaintiff received ten of these calls between December 3, 2019, and February 26, 2020, when the calls stopped. ECF 113-5, at 2. DentalPlans estimates that

3

it placed winback calls to 57,240 former customers during the time period relevant to this case. ECF 113-3, at 6.

Plaintiff grew increasingly frustrated with the prerecorded calls from DentalPlans. ECF 111-2, at 5. Ultimately, she filed this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants had violated the statute by placing unauthorized telemarketing calls to her and the proposed class of former DentalPlans customers.[3] ECF 43.

## II. LEGAL STANDARDS

"When a Motion for Summary Judgment and a Motion for Class Certification are both pending in a case, the Court has discretion to decide the question of summary judgment before reaching the issue of class certification." *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 679 (D. Md. 2017). Because the analysis of the summary judgment motion "sheds light on issues relevant to the disposition" of the motion for class certification, the Court will consider the motion for summary judgment first. *See id.* at 679–80.

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

---

[3] Plaintiff initially brought a second claim alleging a violation of the "do-not-call list" provisions of the TCPA, ECF 42, at 11–13, but now voluntarily abandons that claim, ECF 124 at 31. As such, the second count of Plaintiff's complaint is **DISMISSED** with prejudice.

4

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials,

without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

### B.   Motion for Class Certification

"In seeking class certification under Rule 23, the plaintiff has the burden of demonstrating that the requirements for class-wide adjudication have been met." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Rule 23 enumerates four "threshold requirements applicable to all class actions, commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy.'" *Id.* (citing Fed. R. Civ. P. 23(a)). The Fourth Circuit also reads into Rule 23 an implied requirement of "ascertainability," meaning that the Court "court can readily identify the class members in reference to objective criteria." *Id.* (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)).

After a plaintiff demonstrates that the proposed class meets the threshold criteria, they must then demonstrate that the proposed class falls into one of the allowable types of class actions enumerated by the rule. Fed. R. Civ. P. 23(b). The class action type at issue here is laid out in Rule 23(b)(3), which requires that the Court find "[1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* These requirements are often referred to as "predominance" and "superiority." *Krakauer*, 925 F.3d at 655. "Since the requirements of Rule 23 are often enmeshed in the factual and legal issues comprising the plaintiffs' cause of action, the district court must rigorously examine the core issues of the case at the certification stage." *Id.* at 954 (citation omitted).

III.   **ANALYSIS**

Congress passed the TCPA in response to Americans' growing frustration with repeated telemarketing calls. *Krakauer*, 925 F.3d at 663. Among other proscribed practices, the TCPA prohibits "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" without "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). If an "automatic telephone dialing system" or "artificial or prerecorded voice" is being used for a "any telephone call that includes or introduces an advertisement or constitutes telemarketing," the caller must have the "prior express *written* consent of the called party." 47 C.F.R. § 64.1200(a)(2) (emphasis added). Plaintiff alleges that DentalPlans, at times acting as an agent of Cigna, placed telemarketing calls to her and to the members of the purported class using an artificial or prerecorded voice without obtaining the requisite prior consent of the individuals receiving the calls. ECF 42, at 9–11.

A.   **DentalPlans's motion for summary judgment is denied.**

DentalPlans asserts that summary judgment should be granted in its favor because "all evidence in the record indicates that there is no genuine issue of material fact as to whether Plaintiff provided prior express written consent and prior express consent to be called using a prerecorded voice," and such consent dooms Plaintiff's claim, or, alternatively, because Plaintiff lacks standing to bring this claim.[4] ECF 116, at 1–2. Plaintiff counters that the required consent was not provided,

---

[4] DentalPlans also argues in a footnote that it is entitled to summary judgment because the TCPA "was unconstitutional at all relevant times when DentalPlans made the calls at issue." ECF 116-1, at 12 n.2. This argument refers to the Supreme Court's 2020 holding that one provision of the TCPA, the so-called "government debt exception," violated the First Amendment. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (plurality opinion). But even in that opinion, the Supreme Court made clear that the rest of the TCPA, including the remaining provisions of the "robocalls" prohibition, remained operative, stating explicitly that their "decision [] does not negate the liability of parties who made robocalls covered by the robocall restriction."

and, as such, summary judgment in DentalPlans's favor would be inappropriate. ECF 124, at 7–
8. The Court first addresses the question of standing before turning to the question of consent.

                   1.      <u>Plaintiff has standing to bring this action.</u>

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007). It is the plaintiff's burden to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A]fter *Spokeo*, a plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (citing *Spokeo*, 578 U.S. at 341). "In a class action, [the Court must] analyze standing based on the allegations of personal injury made by the named plaintiff[]." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

DentalPlans claims that Plaintiff does not have an injury sufficient to confer standing because the harm she alleges is a "bare procedural violation" that does not amount to a concrete

---

*Id.* at 2355 n.12. As DentalPlans rightly acknowledges, "many courts," including this one, "have rejected" the argument that DentalPlans now makes: that the invalidation of one provision of the TCPA invalidated the entire law between the passage of the offending provision and the Supreme Court's decision in 2020 that severed the rest of the act from the "government debt exception." ECF 116-1, at 12 n.2; *see also Lerner v. AmeriFinancial Sols., LLC*, Civ. No. GLR-20-965, 2021 WL 1785138, at *4 (D. Md. May 5, 2021) (collecting cases). This Court now joins the chorus of jurists that have denied this argument.

injury. ECF 116-1, at 12–19. Unfortunately for DentalPlans, the Fourth Circuit recently addressed

nearly this exact argument in *Krakauer*. In that case, the Fourth Circuit considered a class action

brought pursuant to the "do-not-call" provision of the TCPA. *Krakauer*, 925 F.3d at 648. The

defendants challenged the plaintiffs' standing, claiming, as do Defendants here, that the plaintiffs'

harm was merely procedural. *Id.* at 653–54. The Fourth Circuit held that the receipt of unwanted

telemarketing calls prohibited under the TCPA was unambiguously sufficient to constitute an

injury for Article III standing. *Id.* at 653–54. As the Fourth Circuit explained:

> Looking both to Congress's judgment and historical practice, as *Spokeo* instructs,
> the private right of action here plainly satisfies the demands of Article III. In
> enacting . . . the TCPA, Congress responded to the harms of actual people by
> creating a cause of action that protects their particular and concrete privacy
> interests. To bring suit, the plaintiffs here must have received unwanted calls on
> multiple occasions. . . . This is not a statute authorizing citizen-suits for any legal
> violation to which a plaintiff might take issue. The statute requires that an
> individual receive a call on his own . . . number . . . . There is nothing ethereal or
> abstract about it. . . . Since that harm is both particular to each person and imposes
> a concrete burden on his privacy, it is sufficient to confer standing.

*Id.* at 653 (citations omitted).

Defendants argue that *Krakauer* should not apply in this case because *Krakauer* dealt solely

with a do-not-call claim under the TCPA. *Id.* at 8–9. But that distinction is irrelevant here. The

actual harm at issue—the receipt of unauthorized telemarketing calls in violation of the TCPA—

is the same here as it was in *Krakaeur*. Thus, the injury analysis of *Krakauer* applies with equal

force here. Plaintiff here has an injury sufficient to confer standing.

Alternatively, Defendants argue that Plaintiff cannot establish injury because she

consented to the calls at issue. ECF 111, at 19–22. While it is true that courts have found that a

plaintiff's consent to receive telemarketing calls eliminates any injury under the TCPA, *see Winner

v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017),

Defendants have not shown that this is the case here, as explained more fully below. As such, Plaintiff has standing.

2. DentalPlans has not proven that Plaintiff consented to receive the prerecorded calls.

Prior consent is an affirmative defense under the TCPA for which the defendant bears the burden of proof.[5] *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022); *see also Beard v. John Hiester Chevrolet, LLC*, 640 F. Supp. 3d 420, 428 (E.D.N.C. 2022) ("Prior express consent is an affirmative defense to liability under the TCPA." (citation omitted)). It is undisputed that the calls in question—those received by Plaintiff from DentalPlans leading up to and after the expiration of her dental savings plan—were made with the aid of a prerecorded voice. *See* ECF 113-5, at 2 (showing multiple "machine" calls to Plaintiff); ECF 124, at 15 ("DentalPlans does not challenge that it called Plaintiff's cell phone, and it does not challenge that it played a prerecorded message."). Thus, this analysis turns entirely on the question of consent.[6]

---

[5] The parties here accept that consent is an affirmative defense under the TCPA. ECF 124, at 7 ("There is an affirmative defense available if a TCPA defendant can show that it had 'prior express written consent' to make robocalls to the consumer's cell number."); ECF 121, at 7 (acknowledging DentalPlans's "affirmative defense" argument). It is worth noting that there is some dispute in the courts on this topic. *See Carlin v. Navient Sols., LLC*, Civ. No. 19-491, 2020 WL 8254195, at *2 n.4 (E.D. Va. Feb. 11, 2020) ("Courts within the Fourth Circuit are split on whether the absence of consent is an essential element of a TCPA claim or the presence of consent is an affirmative defense to a TCPA claim."), *aff'd*, No. 20-1300, 2021 WL 5564671 (4th Cir. Nov. 29, 2021). As no party argues otherwise in this case, though, the Court will treat consent as an affirmative defense.

[6] The surreply and sur-surreply submitted by the parties provide additional argument on this question. Parties may not file a surreply (or a sur-surreply) without leave of the Court. Loc. R. 105.2(a). "Though disfavored, surreplies 'may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 410 (D. Md. 2015) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 Fed. App'x. 960 (4th Cir. 2004) (per curiam)). Here, though DentalPlans mentioned the argument that a voice recording is a proper signature in a footnote of their initial motion for summary judgment, their reply brief expanded significantly upon that argument and introduced additional reasoning. *See* ECF 116-1, at 23 n.5; ECF 129, at 10–13. As such, Plaintiff's motion to file a surreply, ECF 130, is **GRANTED**. Because Plaintiff

To establish whether Plaintiff provided proper consent for DentalPlans's calls, however, it must first be established whether the calls in question should be classified as telemarketing calls under the TCPA. 47 C.F.R. § 64.1200(a)(2) (setting higher consent standard for telemarketing calls); *see also* ECF 116-1, at 19 (explaining the differing consent standards for telemarketing and non-telemarketing calls under the TCPA). If the calls were not telemarketing calls, then Defendants need only have obtained Plaintiff's "prior express consent" to comply with the TCPA. 47 C.F.R. § 64.1200(a)(1). If the calls were telemarketing calls, however, then the TCPA required Defendants to meet the heightened standard of "prior express written consent." 47 C.F.R. § 64.1200(a)(2). After determining what type of consent Plaintiff needed to provide, the question shifts to whether that consent was provided.

> i.    The "winback" calls were telemarketing and required "prior express written consent."

Under the TCPA, "[t]he term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13). According to DentalPlans, the calls placed to Plaintiff were not telemarketing calls because they related only to the renewal of Plaintiff's existing plan rather than trying to sell her a new product. ECF 116-1, at 20–22. Plaintiff disagrees, arguing that DentalPlans's calls were indeed intended to sell her a new product: a second subscription to a plan she chose not to renew. ECF 124, at 16–19.

---

introduced new arguments and authorities in the surreply, ECF 130, at 1–4, Defendants' motion to file a sur-surreply, ECF 131, is also **GRANTED**. *See also Elrod v. WakeMed*, 561 F. Supp. 3d 592, 610 n.11 (E.D.N.C. 2021) ("While the court does not condone the practice of seeking leave to file a sur-sur-surreply, the court has reviewed the substance [of] plaintiffs' proposed sur-sur-surreply as part of considering whether leave should be granted. Thus, as a practical matter, the court already has taken into account plaintiffs' proposed sur-sur-surreply in determining the instant motions to dismiss."), *aff'd*, No. 21-2203, 2023 WL 1256601 (4th Cir. Jan. 31, 2023).

11

The calls at issue can be broken into two categories: those Plaintiff received before her plan expired, notifying her that her expiration date was near and encouraging her to subscribe for another year, and those that Plaintiff received after her plan expired in an attempt to bring her back into the fold, DentalPlans's so-called "winback" calls. *See* ECF 113-5, at 2; ECF 124, at 13. The Court finds that at least the winback calls constituted telemarketing.

While a call utilizing a prerecorded voice that does nothing more than inform an existing customer that their plan will soon expire and can be renewed might fall outside of the definition of telemarketing under the TCPA, *see* ECF 116-1, at 20–22, the winback calls are different. The winback calls were placed *after* Plaintiff's plan had expired and were placed with the intention of inducing her to purchase a *new* version of her expired plan. ECF 124-9, at 2; ECF 111-4, at 14.

DentalPlans compares the calls made in this case (without distinguishing between the pre-expiration calls and the post-expiration winback calls) with the calls made in *Worsham v. Discount Power, Inc.* ECF 116-1, at 21–22. In *Worsham*, this Court considered calls made to a plaintiff utilizing a "robovoice" that notified the plaintiff that he would be receiving a rebate on his electrical service and informed him that he was eligible for a 30% reduction on his monthly bill because he had not missed any payments. Civ. No. RDB-20-0008, 2021 WL 50922, at *2 (D. Md. Jan. 6, 2021), *amended*, Civ. No. RDB-20-0008, 2021 WL 1390310 (D. Md. Apr. 13, 2021). The Court found that the notification of "a discount or rebate on [the plaintiff's] already-purchased and paid-for electrical services" did not "constitute[] an advertisement or telemarketing" under the TCPA. *Id.* at *5. In a subsequent opinion in the same case, the Court reiterated this line of reasoning, finding that "[r]egardless of whether these calls were intended to encourage customer retention," the plaintiff had not pled any facts supporting the claim that the calls were advertising

or telemarketing calls. *Worsham v. Disc. Power, Inc.*, Civ. No. CV RDB-20-0008, 2021 WL 5742382 (D. Md. Dec. 1, 2021), *aff'd*, No. 22-1942, 2023 WL 2570961 (4th Cir. Mar. 20, 2023).

Despite DentalPlans's insistence to the contrary, however, the calls at issue in *Worsham* are not analogous to the winback calls in this case. In *Worsham*, the calls related to the plaintiff's then-existing account and informed him of rebates and discounts relevant to his ongoing services. 2021 WL 50922, at *5. Even if the calls sought to further the plaintiff's business with the company in the future, they did so through information and discounts regarding his current account, for which he had already paid. *Id.* Such is not the case for the winback calls. In the winback calls, Plaintiff's membership with DentalPlans had already expired; she did not have any current account with them. ECF 129-10, at 8 (stating that Plaintiff's plan expired on December 1, 2019); ECF 113-5, at 2 (showing calls made after December 1, 2019). That she had an account with them in the past does not entitle DentalPlans to treat her as a current customer forever. The winback calls were an attempt to induce Plaintiff to purchase a new membership with DentalPlans. ECF 111-4, at 14 ("Winback is, their plan has expired, and we're contacting them to renew their plan after expiration."). Thus, those calls, at least, were made for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13). As such, the winback calls were telemarketing calls, and in order to be in compliance with the TCPA, Defendants must have had prior express *written* consent from Plaintiff for those calls. 47 C.F.R. § 64.1200(a)(2).

ii.   *DentalPlans has not shown that Plaintiff provided prior express written consent to receive the winback calls.*

The parties fiercely dispute what qualifies as "prior express written consent" under the TCPA. ECF 124, at 24–28; ECF 129, at 10–13. And they are right to do so, because this seemingly

13

straightforward phrase belies the term of art's complex definition. The TCPA regulations define "prior express written consent" to mean:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9). The regulations go on to specify that this agreement must include "clear and conspicuous disclosure[s]" notifying the signatory that "[b]y executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice" and that "[t]he person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." § 64.1200(f)(9)(i).

Adding a further layer of complexity, the regulations specify that "[t]he term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law." § 64.1200(f)(9)(i). The Federal Communications Commission—which is responsible for writing the regulations implementing the TCPA—issued guidance making clear that "consent obtained in compliance with the E-SIGN Act [15 U.S.C. § 7001 et seq.] will satisfy the requirements of [the TCPA rules], including permission obtained via an email, website form, text message, telephone keypress, or *voice recording.*" *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (emphasis added). Under the E-SIGN Act, an agreement is considered to be "in writing" if it exists in any electronic record form and complies with the requirements of the E-SIGN Act. *See* 15 U.S.C. § 7001(1)(a) ("[A] signature, contract,

or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form").

The E-SIGN Act imposes its own set of requirements in order for an electronic record to qualify as a "writing." First, the E-SIGN Act requires that the signatory *intend* to sign the record, 15 U.S.C. § 7006(5). More confusingly, the E-SIGN Act imposes additional "consumer disclosure" requirements "if a statute, regulation, or other rule of law requires that information relating to a transaction . . . be provided or made available to a consumer in writing." 15 U.S.C. § 7001(c). In particular, this section of the E-SIGN Act provides that a required disclosure provided via "electronic record" "satisfies the requirement that such information be in writing" if certain additional disclosures are made and additional consent is received. *Id.* § 7001(c)(1). But while this section allows for disclosures provided via electronic records to satisfy a requirement that those disclosures be in writing, it also specifically provides that "[a]n oral communication or a recording of an oral communication shall not qualify as an electronic record for purposes of this subsection except as otherwise provided under applicable law." § 7001(c)(6).

Having now recited the regulations that comprise the complex tapestry of the definition of "prior express written consent," the Court now attempts to boil these rules down to a digestible set of requirements. In order to satisfy the "prior express written consent" standard of the TCPA, a party must show, at a minimum, (1) an agreement, (2) a signature (that the signatory intended to function as a signature), and (3) "clear and conspicuous" disclosures about the content of the agreement and that the consumer need not sign the agreement. Each of these requirements must be in writing. If a non-electronic writing is provided, nothing additional is required. If the writings are electronic, however, it must be decided whether the *additional* requirements of the E-SIGN Act's "consumer disclosures" section apply to the disclosures required by the TCPA—specifically

the "consumer disclosures" section's prohibition on providing required disclosures via voice recordings. Plaintiff and DentalPlans hotly dispute whether this section of the E-SIGN Act applies.

### a. The "consumer disclosures" section of the E-SIGN Act applies in this case.

The additional E-SIGN Act's "consumer disclosures" requirements apply when "a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing." 15 U.S.C. § 7001(c)(1). Here, the relevant question is the application of this provision to the TCPA, *i.e.*, whether the TCPA requires any information relating to the underlying transaction to be provided to the consumer in writing. If so, then the E-SIGN Act will not permit those disclosures required by the TCPA to be provided via voice recording.[7] § 7001(c)(6).

Though Defendants argue that the TCPA includes no requirement that "information relating to the sale, lease, exchange, licensing, or disposition of property or services [] be in writing," ECF 129, at 12, a careful reading of the statute proves otherwise. As Plaintiff points out, the TCPA regulations expressly state that "prior express written consent" requires a "written agreement" that includes "a clear and conspicuous disclosure informing the person signing" that they are consenting to receive telemarketing calls using a prerecorded voice and that "[t]he person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. §

---

[7] This conclusion is not in tension with the FCC's guidance that "consent obtained in compliance with the E-SIGN Act [15 U.S.C. § 7001 et seq.] will satisfy the requirements of [the TCPA rules], including permission obtained via an email, website form, text message, telephone keypress, or *voice recording*." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (emphasis added). The signature and consent the consumer provides can still be provided via voice recording, as can the substance of the agreement; the only portion of the agreement that would not be able to be provided via voice recording under this outcome would be the TCPA's required disclosures.

64.1200(f)(9)(i); ECF 132, at 8; ECF 130, at 4. DentalPlans itself acknowledges that a "written agreement" is required under the TCPA. ECF 137, at 1–2 (noting that a "written agreement" is required for "prior express written consent").

DentalPlans attempts to argue both that electronic records, such as a voice recording, can be completely equated with writings and that the "consumer disclosures" provision of the E-SIGN Act "has no application here because neither the E-SIGN Act nor the TCPA requires DentalPlans to provide any information in writing rather than electronic format." ECF 137, at 3. But this is not the proper framing for this analysis. The E-SIGN Act does not ask whether a law requires disclosures to be provided "in writing rather than electronic format"; it asks whether the law requires such disclosures to be provided "*in writing.*" 15 U.S.C. § 7001(c)(1) (emphasis added). As DentalPlans itself concedes, the TCPA requires a "written agreement" as a prerequisite for "prior express written consent," ECF 137, at 1–2, 4, and the TCPA clearly requires that the written agreement "include a clear and conspicuous disclosure" that "[b]y executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice" and that "[t]he person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."[8] § 64.1200(f)(9)(i). As such, a plain reading of these admittedly complex statutes and regulations make clear that the TCPA does, indeed, "require[] that information relating to a transaction or transactions in or

---

[8] And while DentalPlans claims that the TCPA does not explicitly require that the disclosures in § 64.1200(f)(9)(i) be in writing, it acknowledges that the TCPA does require that the disclosures "be included in whatever written agreement bears the consumer's consent and signature." ECF 137, at 4. It is unclear how DentalPlans imagines the disclosures could be included in a written agreement without themselves being in writing.

affecting interstate or foreign commerce be provided or made available to a consumer in writing."[9]

15 U.S.C. § 7001(c)(1).

Defendants attempt to rely on *Morris v. Modernize, Inc.*, 2018 WL 7076744, for the

proposition that the provisions of § 64.1200(f)(9)(i) are not the type of statutory or regulatory

requirements with which the E-SIGN Act is concerned. ECF 131-1, at 3. But the court in *Morris*

explained that the plaintiff there "ha[d] not identified a rule of law requiring [the defendant] to

provide any sort of information or electronic record in connection with the parties' agreement."

*Morris*, 2018 WL 7076744, at *3. Though § 64.1200(f)(9)(i) is referenced elsewhere in the *Morris*

opinion, *see id.* at *2, it is not referenced in the context of E-SIGN Act disclosures, *see id.* at *3.

Similarly, in *Reinert v. Power Home Remodeling Group, LLC*, also relied upon by DentalPlans,

ECF 131-1, at 2–3, the court found that the E-SIGN disclosures were not required because the

---

[9]  DentalPlans also argues that the disclosures required by the TCPA do not "relat[e] to a
transaction or transactions in or affecting interstate or foreign commerce" in this instance because
the thing to which Plaintiff allegedly consented was the receipt of phone calls, not any "'sale, lease,
exchange, or other disposition' or property or services." ECF 137, at 3 (citing 15 U.S.C. §
7006(13)). This argument is unconvincing.

The E-SIGN Act defines a "transaction" as "an action or set of actions relating to the
conduct of business, consumer, or commercial affairs between two or more persons, including
. . . the sale, lease, exchange, licensing, or other disposition of (i) personal property, including
goods and intangibles, (ii) services, and (iii) any combination thereof." 15 U.S.C. § 7006(13).
Few courts appear to have delved into the finer points of the definition of "transaction" under the
E-SIGN Act, but at least one court has read the definition to be broad, finding that a plaintiff's
signature on "an employment application and authorization to obtain a consumer report is clearly
'relating to the conduct of business' within the scope of the statute." *Miller v. Quest Diagnostics*,
85 F. Supp. 3d 1058, 1062 (W.D. Mo. 2015).

DentalPlans offers no cases that suggest that consent to receive phone calls about the
purchase of a product (as the winback calls could aptly be described) do not constitute a transaction
under the E-SIGN Act. In light of a dearth of case law to support DentalPlans's argument, this
Court is inclined to interpret the E-SIGN Act's definition of "transaction" broadly. Like the court
in *Miller*, this Court finds that the authorization of repeated phone calls relating to the sale of
additional products is "clearly 'relating to the conduct of business'" and therefore constitutes a
transaction under the E-SIGN Act. 85 F. Supp. 3d, at 1062.

plaintiff there "ha[d] not shown" that the TCPA required written disclosures. No. 19-13186, 2020 WL 6743094, at *3 (E.D. Mich. Nov. 17, 2020). Plaintiff here clearly points to authority in the TCPA that requires written disclosures, separating this case from *Morris* and *Reinert*. ECF 130, at 4; *see also Mantha v. Quotewizard.com, LLC*, Civ. No. 19-12235, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, Civ. No. 19-12235, 2022 WL 325722 (D. Mass. Feb. 3, 2022) (finding that 15 U.S.C. § 7001(c) of the E-SIGN Act required electronic record disclosures because the TCPA required written disclosures).

As such, the "consumer disclosure" section of the E-SIGN Act applies, and the required written disclosures outlined in § 64.1200(f)(9)(i) of the TCPA cannot be provided via voice recording.[10] Because these disclosures were not adequately provided, the voice recording cannot constitute a valid written signature. Summary judgment cannot be granted in favor of DentalPlans.

### b. There is a genuine question of material fact as to whether Plaintiff intended to sign the agreement.

The E-SIGN Act also requires that an individual intend that an electronic record function as a signature in order for such an alleged signature to be valid. 15 U.S.C. § 7006(5). Here, DentalPlans made no argument at all regarding Plaintiff's alleged intent to "sign" an agreement through the voice recording until its response to this Court's order directing supplemental briefing. *See* ECF 116-1, at 23–26 (making no mention of Plaintiff's intent to sign an agreement through her voice recording); ECF 129, at 10–11 (same); *see also* ECF 124, at 28 (stating in Plaintiff's

---

[10] Contrary to DentalPlans's assertion, a finding that the voice recording at issue in this case does not constitute a valid signature under the E-SIGN Act is not equivalent to "'invalidat[ing]' agreements that are required to be in writing by a federal statute 'solely because they were made electronically.'" ECF 137, at 2 (quoting *Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 602 (4th Cir. 2013)). Rather, the voice recording is not valid here as an electronic signature because it does not comply with the requirements of the E-SIGN Act, without which it would not qualify as a writing at all.

opposition to DentalPlans's motion for summary judgment, "DentalPlans points to no evidence that Plaintiff intended to sign anything at all."); ECF 137, at 2–3 (arguing for the first time that Plaintiff intended the voice recording to act as a signature in DentalPlans's response to the Court's order directing supplemental briefing). When DentalPlans did finally put forth an argument that Plaintiff had intended to sign the agreement through the voice recording, it argued only that "the transactional context in which Plaintiff gave her consent plainly indicates that she intended to 'sign the record.'" ECF 137, at 2–3 (quoting 15 U.S.C. § 7006(5)). Plaintiff disputes that she had the requisite intent to establish a valid signature. ECF 124, at 28; ECF 136, at 8–9. At a minimum, this creates a genuine dispute of material fact with respect to whether Plaintiff intended to sign the agreement, which is a second independent basis on which DentalPlans's motion for summary judgment must be denied.[11]

### B.    Plaintiff's motion for class certification is granted.

Plaintiff seeks to certify the following class and subclass in this case and to be appointed class representative, with her attorneys appointed as class counsel:

> **Class**. All persons who were non-customers at the time of the call (i) whom DentalPlans.com or someone on its behalf called using a prerecorded voice, (ii) to a cellular telephone number, (iii) for the purpose of trying to sell goods or services, (iv) for any consumer who signed up by telephone, (v) during any period when the marketing script in DP00013 and DP000142 was DentalPlans' "consent" practice and procedure.

> **Subclass**. All persons in the Class whose prior DentalPlans plan was through Cigna.

---

[11]    Plaintiff also argues repeatedly and extensively that Plaintiff's conversation with the DentalPlans representative wherein she agreed to receive prerecorded calls did not provide the required "clear and conspicuous" notice of what she was agreeing to. *See, e.g.,* ECF 124, at 19–24. Because the above disputes are sufficient on their own to defeat DentalPlans's motion for summary judgment, the Court need not reach this argument.

ECF 107-1, at 7. Plaintiff argues that each of the requirements for class certification is met with respect to both the class and the subclass, and that both the class and the subclass should be certified pursuant to Rule 23(b)(3). ECF 107-1, at 13–23. Defendants contest this. ECF 111, at 13–35.

According to Plaintiff, the class is "ascertainable" because DentalPlans keeps detailed records of its "former customers, whose names, addresses, phone numbers, and email addresses DentalPlans has in its records," including which customers' plans were through Cigna. ECF 107-1, at 14. Similarly, Plaintiff asserts that the numerosity requirement is met because "DentalPlans concedes that it made prerecorded-voice renewal calls to at least 57,240 unique cell phone numbers of former customers that it obtained by phone through its call center, including to 20,738 people applicable to the Cigna-specific Subclass." *Id.* at 15. Defendants do not dispute either of these points. Rather, Defendants argue that class certification is inappropriate because (1) Plaintiff and the proposed class lack standing to bring this case;[12] (2) DentalPlans's arbitration clause and class action waiver preclude class certification; (3) Plaintiff's claims are not typical; (4) the key issues of the class are not common; (5) Plaintiff is not an adequate class representative, and (6) individual issues predominate over questions common to the class. ECF 111, at 13–35.

1. <u>Defendant offers no evidence beyond conclusory assertions to demonstrate that the class action waiver and arbitration clauses apply to the members of the class.</u>

Defendants assert that the proposed class is barred by a class action waiver and an arbitration clause contained in DentalPlans's Member Agreement and its website's terms of use. ECF 111, at 14–15. "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin.*

---

[12] As discussed above, Plaintiff has standing to bring this action. The members of the proposed class have standing by the same logic.

*Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chicago, Inc. v. Kaplan*,

514 U.S. 938, 944 (1995)).  In Maryland, as in all states, the formation of a contract requires (1)

mutual assent and (2) consideration.  *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007) ("It is

universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation

or formation of a contract.");  *Maryland Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1023 (Md.

1977) ("[I]t is usually necessary for one of the parties to propose to the other a promise which he

will make for a certain consideration, or to state the consideration which he will give for a certain

promise.").  It is a basic tenet of contract law that a party must have notice of the terms to which

they assent, as they cannot otherwise have the requisite intent to form a contract.[13]  *See Peer v.*

*First Fed. Sav. & Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975) (explaining that

formation of a contract requires "a knowing and sufficient acceptance"); *see also Binder v. Benson*,

171 A.2d 248, 250 (Md. 1961) ("[O]ne who has the capacity to understand a written document

who reads and signs it, or without reading it or having it read to him, signs it, is bound by his

signature as to all of its terms.").

Here, DentalPlans claims that contract terms in both its Member Agreement and its

website's terms of use require the proposed class members to forgo a class action and to arbitrate

any disputes. ECF 111, at 14–15.  DentalPlans's Member Agreement provided to its customers

who work with Cigna states that "[b]inding arbitration shall be the exclusive remedy for the

settlement of disputes arising under this agreement. . . . No action at law or in equity may be

---

[13]  Whether the party is subjectively aware of the terms to which they agree is a different question from whether they have notice of those terms. *See Nat'l Fire Ins. Co. of Hartford v. Tongue, Brooks & Co.*, 486 A.2d 212, 216 (Md. App. 1985) ("The 'test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended to mean, but what a reasonable person in the position of the parties would have thought it meant.'" (quoting *Ray v. Eurice*, 93 A.2d 272 (Md. 1952)).

instituted by either party, other than to enforce the award of the arbitrator." ECF 111, at 14; ECF 111-11, at 7. According to the agreement, its "terms and conditions apply to the Preferred Network Access by CIGNA." ECF 111, at 5.

Aside from the fact that the Member Agreement applies, by its terms, only to Plaintiff's proposed subclass who worked specifically with Cigna through DentalPlans, it also does not govern the conduct at issue. In considering whether a claim "arises under" a contract, "Fourth Circuit precedent directs the focus to 'whether the claims at issue have a direct nexus to the contractual obligations, and more specifically, whether the claims are related to the interpretation and performance of the contract itself.'" *Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1381 (Fed. Cir. 2017) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92–93 (4th Cir. 1996)). Here, the claim centers around the allegedly unauthorized calls Plaintiff and the proposed class received from DentalPlans *after* their existing plans had expired, urging the recipients to purchase wholly new plans. *See* ECF 107-1, at 7 (describing proposed class as "non-customers" of DentalPlans who received telemarketing calls and who had previously purchased a membership). Because the Member Agreement pertains directly—and exclusively— to any user's membership in a DentalPlans program, and because it contains no information or clauses suggesting that it would extend to communications after that membership had lapsed, the class's claims relating to calls they received after the expiration of their membership relating to an additional, new membership do not arise under this agreement. Therefore, the arbitration clause does not apply.

Similarly, DentalPlans's website's terms of use provides that "any claim [a user] may have against [DentalPlans] regarding the[] Terms of Use or [the] sites and services will be resolved through binding arbitration" and that the user "agree[s] to arbitrate with [DentalPlans] only in [the

user's] individual capacity, not as a representative or member of a class." ECF 111-12, at 2. The terms of use specify that a user is bound to the terms by "using [DentalPlans's] sites and services" and that the terms "do not apply to those sites and services that do not display or link to" the terms of use. ECF 111-12, at 2.

First and foremost, these terms of use appear only on DentalPlans's website, and Plaintiff's proposed class is specifically defined to include only those individuals had previously who signed up over the phone. *See* ECF 107-1, at 7 (limiting class to previous customers who had signed up over the phone). There has been no suggestion that these individuals ever visited DentalPlans's website. Furthermore, for similar reasoning as that regarding the Membership Agreement, phone calls placed to former customers after their plans had expired, once they were no longer customers, encouraging them to purchase new plans do not fall under the "sites and services" governed by the terms of use. Indeed, it is unclear how the terms of use, which "do[] not apply to those sites and services that do not display or link to" the terms of use could possibly apply to a phone call which makes no reference to them. *See* ECF 113-1, at 1–14 (showing DentalPlans's phone call enrollment training which makes no mention of the terms of use). Therefore, the terms of use do not bar the class's claims, either.

2.    Plaintiff is an adequate class representative.

Rule 23 requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citations omitted) (cleaned up). As discussed above, Plaintiff shares a common injury and theory of liability with the other members of the proposed class. There is no suggestion of any conflict of interest.

24

Still, Defendants contend that "Plaintiff is not an adequate class representative because she does not even understand the basic factual basis of her claims" and because she demonstrated a "general lack of knowledge and misunderstanding of key issues in this case." ECF 111, at 29. But "Rule 23 does not require the representative plaintiffs to have extensive knowledge of the intricacies of litigation, rather, the named plaintiffs must have a general knowledge of what the action involves and a desire to prosecute the action vigorously." *Benway v. Res. Real Est. Servs., LLC,* 239 F.R.D. 419, 425 (D. Md. 2006).

Plaintiff is not an attorney. She is not an expert on the TCPA or the nuances of telemarketing operations. However, she need not be any of those things to be an adequate representative. That Plaintiff cannot perfectly recall the details of conversations she had with DentalPlans's representatives several years ago does not mean that she "does not [] understand the factual basis of her claims." ECF 111, at 29. And that she may not fully understand all provisions of the TCPA does not mean that she fails to understand the key issues of this case. *See id.*

Plaintiff has met the requisite level of involvement and understanding of this case in order to serve as a class representative. Contrary to Defendants' assertion that Plaintiff did not review the complaint in this case, *see* ECF 111, at 29, Plaintiff stated at her deposition that she *had* reviewed the complaint, that she was familiar with all its facts and claims, and that the only part with which she was unfamiliar was the civil cover sheet—a legal form her lawyers could reasonably complete without her, as it does not pertain to the substance of the case. ECF 111-2, at 11. Plaintiff also explained that she took the initiative to contact the Better Business Bureau about her complaints with DentalPlans and that she ultimately proactively sought out her counsel to help her address the problems she was having with the prerecorded calls from DentalPlans. *Id.* at 5–6. She explained that this case is about "[o]btaining help to stop unwanted calls" and that she

understood that a class representative was someone that brings a lawsuit "[o]n behalf of others in the same, similar type situation." *Id.* at 10–11. This is sufficient to satisfy the Court that Plaintiff has a "general knowledge of what the action involves and a desire to prosecute the action vigorously." *Benway*, 239 F.R.D. at 425; *see also Fangman v. Genuine Title, LLC*, Civ. No. RDB-14-0081, 2016 WL 6600509, at \*11 (D. Md. Nov. 8, 2016) (finding that proposed class representatives' failure to keep abreast of each and every update in the case did not render them inadequate).

3. The key issues are common to all members of the class and subclass, and Plaintiff's claim is typical of the class and subclass.

"When considering commonality, the Court looks for a common contention across the class that is capable of classwide resolution." *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 687 (D. Md. 2017). This analysis "goes beyond the mere presence of 'common questions of law or fact' and instead requires that answering such questions 'will resolve an issue that is central to the validity' of each class member's claims 'in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Plaintiff identifies four key questions that she claims control both her individual claim and the claims of the class and subclass. ECF 107-1, at 16. These key questions are (1) whether DentalPlans's winback calls constituted telemarketing under the TCPA; (2) whether the oral consent Plaintiff and class members provided over the phone constitutes "prior express written consent" to receive telemarketing calls under the TCPA; (3) whether Defendants' actions were "willful" or "knowing" under the TCPA; and (4) with respect to the subclass, whether Cigna is vicariously liable for DentalPlans's calls that encouraged subclass members to purchase new Cigna plans. *Id.*

26

Defendants argue that these questions cannot be answered for each member of the class without individual fact-intensive investigation, defeating the commonality requirement. ECF 111, at 26–28. Specifically, Defendants claim that the Court would have to determine whether each individual class member understood themselves to be consenting to receive the winback calls when they verbally agreed to receive prerecorded calls. *Id.* But this is not the question in this case. As the Court determined above, the proper standard for consent in this case is "prior express *written* consent."[14] The true question in this case is whether the consent provided by the class members was legally sufficient in the form in which it was given. While there may be variation amongst the individual conversations each member of the class had with a DentalPlans representative, the questions of whether the voice recording was sufficient to constitute written consent and whether the proper disclosures were provided in writing can be answered for all members of the class uniformly by a consideration of DentalPlans's policies and procedures. For example, even though Plaintiff's conversation with the DentalPlans representative did exactly follow the wording in DentalPlans's script, DentalPlans's policies obviously guided the conversation. *See* ECF 108-4, at 5–15 (sealed) (showing DentalPlans's training on how to capture potential customer information); ECF 113-2 (sealed) (showing transcript of Plaintiff's conversation with DentalPlans representative, with key points of conversation mirroring training document).

Defendants also assert that the question of willful or knowing violations is "'not a common issue' susceptible to class-wide resolution." ECF 111, at 27 (citing *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 687 (D. Md. 2017)). But the case Defendants rely on for this proposition,

---

[14] "Since the requirements of Rule 23 are often enmeshed in the factual and legal issues comprising the plaintiffs' cause of action, the district court must rigorously examine the core issues of the case at the certification stage." *Krakauer*, 925 F.3d at 654 (internal citation and quotation marks omitted).

*Ginwright*, found that the defendant's state of mind was not a question capable of common resolution because of individualized questions regarding the proposed class members' consent. 280 F. Supp. 3d at 687 (explaining that whether the defendant's calls were "knowing and willful" violations of the TCPA was not a classwide common issue "because resolution of that question for a particular class member likely depends on the circumstances surrounding the individual class member's consent, or lack of consent, to receive autodialed calls from Exeter, whether the class member revoked consent, and whether Exeter complied with those instructions."). As explained below, these issues do not impact the analysis here because the sufficiency of DentalPlans's process of obtaining consent can be established as a matter of law by reviewing its policies and procedures. As such, the question of whether the violations were "willful or knowing" can be commonly resolved.

"To meet the typicality requirement, a plaintiff must show that the class representative's claims and defenses are 'typical of the claims or defenses of the class.'" *Ginwright*, 280 F. Supp. 3d at 686 (quoting Fed. R. Civ. P. 23(a)(3)). "That is, 'the named plaintiff's claim and the class claims [must be] so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

Defendants again point to variations between the conversation held by DentalPlans's representative with Plaintiff and those likely held with other members of the class. ECF 111, 23–25. According to Defendants, the fact that Plaintiff's conversation with a representative deviated

from the script for such calls defeats the typicality requirements because it altered the nature of the "clear and conspicuous" notice that she was consenting to prerecorded calls. *Id.* Defendants argue both that Plaintiff did not receive the intended full explanation of what she was consenting to and that she received more of an explanation than was required by the script. *See id.* Regardless, the material facts of Plaintiff's claim and those of the proposed class are the same: she agreed to receive prerecorded calls from DentalPlans during a recorded phone conversation. *See* ECF 113-2, at 3–4 (showing transcript of Plaintiff's phone conversation with a DentalPlans representative). "[T]he lack of perfect identity of claims does not prevent a finding of typicality." *Yates v. NewRez LLC*, Civ. No. TDC-21-3044, 2023 WL 5108803, at *7 (D. Md. Aug. 9, 2023) (citing *Broussard*, 155 F.3d at 344). Here, Plaintiff's claim is sufficiently similar to those of the other class members to satisfy typicality.[15] The prerequisite requirements of Rule 23(a) are met.

> 4.     The proposed class and subclass meet the requirements of Rule 23(b)(3).

Plaintiff asserts that the class and subclass should be certified under Rule 23(b)(3). ECF 107, at 2–3. Under this provision, class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). DentalPlans disagrees, claiming that individual issues predominate and that individual litigation is a superior method of resolution. ECF 111, at 30–35.

---

[15] Defendants also argue that the fact that Plaintiff takes issue with the number of calls she received from DentalPlans somehow also distinguishes her claim from those of other class members. ECF 111, at 25. But that Plaintiff was annoyed by the number of allegedly unauthorized calls she received does not in any way invalidate her TCPA claim, nor does an extra level of personal perturbation somehow detract from the key similarities between her claim and those of the class. *See* ECF 111-2, at 7 (explaining Plaintiff's irritation at receiving the prerecorded calls, which she viewed as "harassment").

     *i.  Common issues predominate over individual inquiries.*

   "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The Supreme Court has explained that this analysis "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation omitted).

   The primary issue in this case that might require individual analysis is whether the conversations each individual member of the class had with a DentalPlans representative contained sufficient language to give rise to a "clear and conspicuous" explanation of the nature of the prerecorded calls as required for prior express written consent. *See* ECF 111, at 31–33 (arguing that each individual conversation would need to be reviewed to evaluate if each class member had received "clear and conspicuous" notice of the nature of the winback calls). The question of whether consent inquiries destroy predominance in a TCPA case has been amply addressed by other courts. *See, e.g., Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 541 (D. Minn. 2017) ("Liability in each instance, or the extent thereof, will hinge on whether the class member orally consented to be called when contacted by Universal . . . or provided his or her consent in some other way. . . . [Therefore,] the circumstances surrounding consent are not susceptible to generalized, class-wide proof." (citations omitted)); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 173–74 (S.D. Cal. 2019) (collecting cases). "In the TCPA context, there are some circumstances where individualized issues of consent may predominate. . . . However, where consent was achieved through a common method, courts have generally found the common question of consent to be capable of classwide resolution." *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1146 (W.D. Mo. 2020).

There are several questions relating to consent in this case. In particular, a negative answer to either of the following questions would determine the case by defeating DentalPlans's consent defense: (1) whether DentalPlans provided the necessary disclosures in the required form and (2) whether DentalPlans's description of the prerecorded calls the class members allegedly authorized rises to the "clear and conspicuous" level of notice required by the TCPA under the "prior express written consent" standard. *See* 47 C.F.R. § 64.1200(f)(9)(i). While the former question can certainly be resolved at the class level through an examination of DentalPlans's policies and procedures, the latter question leaves more room for variation among the conversations had by individual class members with DentalPlans representatives, though the script used by DentalPlans's representatives on this point can provide compelling evidence at a classwide level. *See* ECF 111, at 31–33 (arguing that each class member's conversation varied to such an extent that they would have to be assessed individually for "clear and conspicuous" notice); ECF 107-1, at 9–10 (arguing that DentalPlans's script was deficient as a matter of law in providing clear and conspicuous notice).

Given the Court's above analysis of the adequacy of the DentalPlans's disclosures under the "prior express written consent" standard, however, whether the voice recording was sufficient to constitute written consent and whether the proper disclosures were provided in writing are issues that are likely to control the outcome of this case. While the Court does not reach the merits of a case on a motion for class certification, the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). Thus, unless the Court decides that the consent the class members provided would be otherwise sufficient, it need not delve into the question of whether DentalPlans provided "clear and conspicuous" regarding the nature of the

31

prerecorded calls. *See* supra note 10.[16] Having determined that the E-SIGN Act does not permit the TCPA disclosures to be provided via voice recording, an analysis of whether "clear and conspicuous" notice was provided during the calls is unnecessary. *See supra* Section III(A)(2)(ii)(a).

Because the question of "clear and conspicuous" language will likely be unnecessary for the Court to resolve and all other issues can be resolved at a classwide level, common issues predominate over individual inquiries. *See Tyson Foods, Inc.*, 577 U.S. at 453 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (citation omitted)). Should evidence arise that challenges this determination, Defendants may file a motion for decertification at that time. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

ii.   *A class action is superior to individual litigation for resolution of this case.*

"As for superiority, plaintiffs must be able to demonstrate that proceeding as a class 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Hogans v. Charter Commc'ns, Inc.*, 563 F. Supp. 3d 464, 483–84 (E.D.N.C. 2021) (quoting Fed. R. Civ. P. 23(b)(3)). As discussed above, issues of common proof will likely dominate this case,

---

[16] *See also Ginwright*, 280 F. Supp. 3d at 679–80 (considering motion for summary judgment before considering motion for class certification because the findings from the summary judgment analysis "shed[] light on issues relevant to the disposition of the Motion for Class Certification").

indicating that a class action would be a more efficient means to resolve this case than thousands of individual lawsuits.

Additionally, "[t]he features of the private right of action in [the TCPA] . . . evince an intent by Congress to allow consumers to bring their claims at modest personal expense. These same features also make TCPA claims amenable to class action resolution." *Krakauer*, 925 F.3d at 663. A class action in this case would align with the policy goals of the TCPA, as "the TCPA opted for a model that allows for resolution of issues without extensive individual complications" specifically because otherwise "few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy." *Id.* at 656.

Because a class action in this case would be a more efficient use of judicial resources than individual cases and because such a class action would advance the policies motivating the TCPA, the superiority requirement of Rule 23(b)(3) is satisfied. The class and subclass are certified.

## IV.   **CONCLUSION**

For the foregoing reasons, DentalPlans's motion for summary judgment, ECF 116, is **DENIED**, and Plaintiff's motion for class certification, ECF 107, is **GRANTED**.

A separate implementing Order will issue.


Dated: June 6, 2024                                                    /s/
                                                            Brendan A. Hurson
                                                            United States District Judge