# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| DEBORAH BRADLEY, | | |
| *individually and on behalf of others* | * | |
| *similarly situated,* | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 20-1094-BAH |
| DENTALPLANS.COM ET AL., | | |
| | * | |
| Defendants. | | |
| | * | |

\*    \*    \*    \*.    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Deborah Bradley ("Plaintiff") brings this case on behalf of herself and others similarly situated against Defendants DentalPlans.com ("DentalPlans") and Cigna Health and Life Insurance Company ("Cigna") (collectively "Defendants"). ECF 42 (amended class action complaint). Pending before the Court is DentalPlans' motion for reconsideration of the Court's prior memorandum opinion, which granted class certification and denied summary judgment, and for decertification ("motion for reconsideration and decertification").[1] ECF 166. Plaintiff filed an opposition, ECF 171, and DentalPlans filed a reply, ECF 175.[2] All filings include memoranda of law.[3] DentalPlans also filed a notice of supplemental authority, directing the Court to the Fifth

---

[1] While the same counsel represents DentalPlans and Cigna, the motion for reconsideration is made only by DentalPlans, as was the motion for summary judgment. *See* ECFs 116 and 166.

[2] Plaintiff also filed a motion for leave to file a surreply, ECF 176, which DentalPlans opposed, ECF 179, and to which Plaintiff filed a reply, ECF 180.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page, even where they contradict the party-supplied page number.

Circuit's recent opinion of *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809 (5th Cir. 2026). ECF 181. Plaintiff filed a response to that notice. ECF 182. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, DentalPlans' motion for reconsideration and decertification is **GRANTED**.

## I.    BACKGROUND

The Court has recounted much of the factual and procedural background in its memorandum opinion denying summary judgment and granting class certification, ECF 138, at 2–4, and in its memorandum opinion certifying issue for interlocutory appeal, ECF 158, at 1–4. To summarize, DentalPlans operates a "direct-to-consumer marketplace" that sells "dental savings plans" that allow customers to receive discounts on dental treatments. ECF 116-1, at 7; ECF 111-4, at 3. Plaintiff signed up for a Cigna dental discount plan through DentalPlans during a phone call in November of 2018. ECF 124-9, at 2. In signing up for the plan, Plaintiff orally agreed to receive automated calls from DentalPlans "to keep [her] updated with any plan information." ECF 138, at 2 (citing ECF 113-2, at 4). Later, after Plaintiff expressed that she did not want her plan to auto-renew, DentalPlans began placing calls to her phone using a prerecorded voice to inform her that her membership was ending soon and that she could renew her plan. *See* ECF 124, at 13; ECF 113-5, at 2; ECF 124-9, at 2. Plaintiff chose not to renew her plan and ignored the calls. ECF 129-10, at 8. Plaintiff's plan expired on December 1, 2019. *Id.*

After her plan expired, Plaintiff continued to receive prerecorded calls from DentalPlans. ECF 113-5, at 2. These calls, characterized by DentalPlans as "winback" calls, attempted to "win back" Plaintiff's business by encouraging her to repurchase her Cigna plan with DentalPlans. *See* ECF 111-4, at 14. According to DentalPlans' records, Plaintiff received ten of these calls between

December 3, 2019, and February 26, 2020, when the calls stopped. ECF 113-5, at 2. DentalPlans estimates that it placed winback calls to 57,240 former customers during the time period relevant to this case. ECF 113-3, at 6.

Plaintiff brings a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants violated the statute by placing unauthorized telemarketing calls to her and the proposed class of former DentalPlans customers.[4] ECF 42. On June 6, 2024, the Court granted Plaintiff's motion for class certification and denied Defendants' motion for summary judgment. ECF 138 (memorandum opinion); ECF 139 (implementing order). Upon motion, this Court then partially certified the memorandum opinion and order for interlocutory appeal regarding the question of whether the TCPA requires the additional disclosures provided for in the E-SIGN Act. See ECF 158 (memorandum opinion); ECF 159 (order). The Fourth Circuit denied Defendants' motion for permission to appeal. See ECF 23 in *Dentalplans.com v. Deborah Bradley*, No. 24-270 (4th Cir. Apr. 4, 2025).

DentalPlans then moved the Court to reconsider the June 6, 2024 summary judgment and class certification memorandum opinion and order and to decertify the class based on a change in controlling law.[5] See ECF 166. Central to the Court's summary judgment and class certification opinion was whether the winback calls were telemarketing calls and the corresponding definition of consent to receive the prerecorded calls. See ECF 138, at 10–11. The Court ultimately determined that the winback calls were telemarketing such that "prior express written consent"

---

[4] Plaintiff abandoned a second claim alleging a violation of the "do-not-call list" provisions of the TCPA. ECF 42, at 11–13 (amended complaint); ECF 124, at 31 (Plaintiff's opposition to summary judgment expressly abandoning claim); ECF 138, at 4 n.3 (dismissing claim without prejudice).

[5] While Plaintiff opposes the merits of the motion for reconsideration, she does not contest the propriety of filing the motion. See ECF 164 (teleconference regarding briefing schedule on motion for reconsideration); *see also generally* ECF 171.

3

was required (as opposed to "prior express consent"), and that there was a genuine dispute of material fact as to whether Plaintiff had provided the requisite consent. *See id.* at 11–20. DentalPlans argues that the Court's determination is no longer permissible after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), and that "[p]roperly construed, the TCPA cannot bear the interpretation proffered by the FCC [Federal Communications Commission], and adopted by this Court, that 'prior express consent' means 'prior express written consent' in the context of telemarketing calls." *See* ECF 166, at 2. That motion is now ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion to Reconsider Interlocutory Order

Rule 54(b) governs motions for reconsideration of interlocutory orders. "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003); *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018) (citing *Carlson v. Boston Sci. Corp.*, 856 F.3d 325 (4th Cir. 2017)). "[A] court may revise an interlocutory order under the [following] circumstances . . . : (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson*, 856 F.3d at 325 (quoting *Canoe Ass'n*, 326 F.3d at 515); *see also Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988). Plaintiff does not dispute that there has been a change in controlling law warranting reconsideration. *See* ECF 171 ("[A] trio of recent decisions from the Supreme Court have changed the landscape substantially.").

4

### B.    Motion for Decertification

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "[T]he Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification." *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 544 (E.D. Va. 2000) (citation omitted). Class decertification is reviewed under Rule 23 just the same as certification. *See Brasko v. First Nat'l Bank of Pennsylvania*, Civ. No. SAG-20-3489, 2024 WL 69580, at *2 (D. Md. Jan. 5, 2024) (citing *Minter v. Wells Fargo Bank, N.A.*, Civ. No. WMN-07-3442, 2013 WL 1795564, *2 (D. Md. Apr. 26, 2013)).

As a reminder, Rule 23 includes four "threshold requirements applicable to all class actions, commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy.'" *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019) (citing Fed. R. Civ. P. 23(a)). The Fourth Circuit also reads into Rule 23 an implied requirement of "ascertainability," meaning that the Court "can readily identify the class members in reference to objective criteria." *Id.* (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). "In addition, the class action must 'fall within one of the three categories enumerated in Rule 23(b).'" *Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671, 678 (4th Cir. 2024) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). "The present class action falls within Rule 23(b)(3), which requires a finding that common questions 'predominate over' any individualized questions, and that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at 678–79 (quoting Fed. R. Civ. P. 23) (citing *Gunnells*, 348 F.3d at 423).

5

## III.   DISCUSSION

### A. The Parties' Arguments

DentalPlans argues that this Court can no longer apply the FCC's regulations requiring prior express written consent for telemarketing calls after *Loper Bright* and *McLaughlin* as the regulations, in DentalPlans' view, "impose additional requirements divorced from the plain text of the TCPA and supported only by atextual policy goals." ECF 166-1, at 13. DentalPlans argues that reconsideration is warranted after "[a]pplying the appropriate standard" on three grounds:

> [1] the TCPA's exact language is "prior express consent" and it should be read with that plain meaning and not altered to add a requirement that it means "prior express written consent"; [2] the E-SIGN Act's additional consumer disclosures do not apply since the TCPA itself does not impose a writing requirement; and [3] Plaintiff gave prior express consent for the calls at issue.

*Id.* at 14; *see also id.* at 14–20. DentalPlans argues that decertification is appropriate for three reasons: (1) the certification decision "turns on a finding of uniform absence of prior express *written* consent, which is not required by the TCPA"; (2) "Plaintiff gave prior express consent, [so] she cannot satisfy the typicality requirement of Federal of Civil Procedure Rule 23(a)"; and (3) "individualized issues regarding consent predominate over common questions." *Id.* at 21–22 (emphasis in original); *see also id.* at 22–25.

In opposition, Plaintiff argues that DentalPlans overreads *Loper Bright*. ECF 171, at 10–13. The FCC regulations requiring "prior express *written* consent" for telemarketing calls, Plaintiff argues, fits squarely within Congress's delegation of authority to the FCC. *Id.* at 13–24. Further, Plaintiff contends that "prior express written consent" is a subcategory of "express consent," such that it is consistent with the TCPA's plain language and Congress's mandate to the FCC in implementing and enforcing the TCPA. *Id.* at 27–33. Finally, Plaintiff argues that reconsideration and decertification are not warranted because even under a "prior express consent" standard,

6

DentalPlans' argument fails since its call script did not ask consumers to consent to receive telemarketing calls, only to provide a phone number "in case we get disconnected." *Id.* at 33 (citing ECF 108-4, at 11–12).

In reply, DentalPlans argues that Plaintiff fails to identify the proper post-*Loper Bright* test and also claims she improperly fails to account for the TCPA's lack of ambiguity. *See* ECF 175, at 8–10. DentalPlans contends that after *Loper Bright*, the Court need do no more than apply basic principles of statutory interpretation. *Id.* at 10. Only if the statute is ambiguous—which DentalPlans contends is not the case here—would Plaintiff's proposed test come into play. *Id.* at 10–13. Applying tools of statutory construction, DentalPlans advances that "prior express consent" is not ambiguous and contains no *written* requirement, as the FCC regulations do. *Id.* at 13–14. DentalPlans further argues that Congress's delegation to the FCC does not include the ability to interpret or give a specific meaning to the terms of the TCPA, including "prior express consent." *Id.* at 14–20. Finally, DentalPlans argues that whether the FCC regulation is "consistent" with or "permissible" improperly applies *Chevron* deference, which is no longer applicable. *Id.* at 20.

### B. Surreply

The Court first addresses Plaintiff's motion for leave to file a surreply. ECF 176. Plaintiff did not file the proposed surreply along with the motion for leave. Plaintiff contends that a surreply is warranted because "Defendant's Reply involves procedurally and substantively complex issues, including novel matters that were not fully developed in the initial briefing. For instance, Dental[P]lans' opening brief did not address the FCC's congressionally-delegated authority to issue the subject regulations, whereas its reply brief focuses heavily on the subject." *Id.* at 1–2. DentalPlans opposes, arguing that whether an argument is "not fully developed" is not the standard

7

and that it did not present new facts or arguments in its reply. ECF 179, at 2–3. In reply (regarding the surreply), Plaintiff maintains that a surreply is warranted because

> DentalPlans' opening brief ignored the test for how Courts are to consider agency regulations post-*Loper/McLaughlin*, and did not explain why it did so. Now that DentalPlans has explained – for the first time in its reply – *why* it does not believe the three-part *Loper* applies, Plaintiff wishes to respond.

ECF 180, at 1. Plaintiff also wishes to address DentalPlans' "arguments as to the meaning of 'express consent,' which bears directly upon whether the FCC had proper congressional authority to issue regulations requiring written consent." *Id.* at 2.

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Loc. R. 105.2(a). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Court does not find a surreply warranted or necessary here. DentalPlans' discussion of the statutory delegation of authority and the proper test under *Loper Bright* in its reply are responses to arguments that Plaintiff made. Such circumstances do not justify a surreply. *See In re Erickson Ret. Communities, LLC*, Civ. No. WDQ-11-3736, 2012 WL 1999493, at *2 (D. Md. June 1, 2012) (citing *Khoury*, 268 F. Supp. 2d at 606) (noting that "when party raise[s] an issue for the first time in his opposition, he [is] not entitled to file a surreply to address the other party's response"). The motion for leave to file a surreply is denied.

## C. Analytical Framework in the Wake of *Loper Bright* and *McLaughlin*

Moving on to the merits, the Court begins by determining the proper test post-*Loper Bright* and *McLauglin*. *Loper Bright* overturned *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and changed how this Court reviews an administrative agency's

interpretation of a statute. *See Loper Bright*, 603 U.S. at 412. In *Loper Bright*, the plaintiff businesses brought an action under the Administrative Procedure Act ("APA") and argued that certain regulations of the National Marine Fisheries Service were not permitted under the Magnuson-Stevens Fishery Conservation and Management Act. *Id.* at 382. In overturning *Chevron*, the Supreme Court held that under the APA, even where a statute is ambiguous, courts must use traditional tools of statutory interpretation to interpret the true meaning of a statute, rather than defer to a "permissible" interpretation by an agency. *See id.* at 398–400, 413.

"In a case involving an agency, of course, the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 394–95. Congressional delegations of authority vary in degree:

> For example, some statutes "expressly delegate[ ]" to an agency the authority to give meaning to a particular statutory term. *Batterton v. Francis*, 432 U.S. 416, 425 (1977) (emphasis deleted). Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme, *Wayman v. Southard*, 10 Wheat. 1, 43 (1825), or to regulate subject to the limits imposed by a term or phrase that "leaves agencies with flexibility," *Michigan v. EPA*, 576 U.S. 743, 752 (2015), such as "appropriate" or "reasonable."

*Id.* at 394–95 (footnotes omitted). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412.

Agency interpretations of statutes still have some role to play post-*Loper Bright*: courts may "seek aid from the interpretations of those responsible for implementing particular statutes" as "[s]uch interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' . . . ." *Id.* at 394 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* (citing *Skidmore*, 323 U.S. at 140; *United States v. American Trucking*

*Ass'ns, Inc.*, 310 U.S. 534, 549 (1940)). "The extent to which a court may look to an agency for guidance depends upon 'the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Valladares v. Ray*, 130 F.4th 74, 83–84 (4th Cir. 2025) (alterations in original) (citing *Loper Bright*, 603 U.S. at 388); *see also Skidmore*, 323 U.S. at 140.

In *McLaughlin*, the Supreme Court applied *Loper Bright* to address the proper deference owed to the FCC in an enforcement proceeding. 606 U.S. at 149. There, a recipient of faxes sent by McKesson Corporation brought a putative class action alleging a violation of "the TCPA by faxing unsolicited advertisements without the opt-out notice that the statute requires." *Id.* at 150. "The District Court certified a class of fax recipients, drawing no distinction between faxes received on traditional fax machines and faxes received through online fax services." *Id.* Separately, an unrelated company "petitioned the FCC for a declaratory ruling about whether the TCPA applies to faxes received through online fax services." *Id.* The FCC issued an order interpreting the TCPA's term "telephone facsimile machine," ruling that the term did not include "an online fax service" such that "the TCPA would not prohibit faxes received through online fax services." *Id.* The question before the *McLaughlin* Court was what deference to afford the FCC's interpretive order. *Id.* The Supreme Court ultimately determined that "[i]n an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct." *Id.* at 155. "District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* The "appropriate" level of "respect to the agency's interpretation" depends on the circumstances of the individual case. *See id.* (citing *Loper Bright*, 603 U.S. at 402); *Loper Bright*, 603 U.S. at 402

10

(explaining when an agency's technical expertise over a subject matter may prove persuasive, if not controlling).

### D. Under *Loper Bright*, the FCC May Not Impose an Additional Writing Requirement to the TCPA's "Prior Express Consent."

In exercising its independent judgment to determine the meaning of the TCPA, the Court looks to the language of the statute, including the delegation of authority. The relevant section of the TCPA prohibits "robocalls," *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020), or, more specifically, "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" without "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). As relevant to this section of the TCPA, Congress delegated authority to the FCC by mandating that the FCC "shall prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2). The statute also "delegates authority to the FCC to ban artificial and prerecorded voice calls to businesses, § 227(b)(2)(A), and to exempt particular types of calls from the law's requirements, § 227(b)(2)(B), (C)." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012).

Two circuit courts have discussed the FCC's authority to interpret "prior express consent" in the wake of *Loper Bright*: *Insurance Marketing Coalition Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025) ("*IMC*"), and *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809 (5th Cir. 2026). In *IMC*, the Eleventh Circuit evaluated whether the FCC acted within its authority by issuing an order in an enforcement proceeding finding "that a consumer cannot consent to a telemarketing or advertising robocall unless (1) he consents to calls from only one entity at a time, and (2) he consents only to calls whose subject matter is logically and topically associated with the interaction that prompted the consent." 127 F.4th at 307 (internal quotation marks and citation omitted). In

11

issuing this ruling, the FCC "necessarily interpret[ed] the phrase 'prior express consent' as used in the TCPA." *Id.* at 309 n.6. The Eleventh Circuit explained that "§ 227(b)(2)'s grant of authority to 'implement' the TCPA gives the FCC only the authority to 'reasonably define' the TCPA's consent provisions." *Id.* at 312 (quoting *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1082 & n.1 (D.C. Cir. 2017) (Kavanaugh, J.)). It ultimately held that the FCC's interpretation was contrary to the TCPA's "prior express consent" and that the delegation of authority to the FCC did not include the ability to interpret the statute as it had. *See id.* at 312–13. "[T]he TCPA requires only 'prior express consent'—not 'prior express consent' *plus*." *Id.* at 312. "'Congress drew a line in the text of the statute' between 'prior express consent' and something more burdensome." *Id.* at 318 (quoting *Bais Yaakov*, 852 F.3d at 1082) (citing 47 U.S.C. § 227(b)(1)(A), (B)). "Rather than respecting the line that Congress drew, the FCC stepped right over it." *Id.* (citing *Bais Yaakov*, 852 F.3d at 1082).

Plaintiff asserts that *IMC*, which was decided between *Loper Bright* and *McLaughlin*, "never examined whether Congress had, in fact, delegated the FCC power to issue regulations interpreting consent, never considered whether the FCC overstepped its authority in issuing such regulations[,] and never considered the bases for FCC's regulation, such as experience, research, public outreach or other factors," so "it has been abrogated [by *McLaughlin*] and is no longer good law." ECF 171, at 25. While it may be true that the Eleventh Circuit did not use the word "delegate" in relation to the FCC's authority under the TCPA, *IMC* cannot reasonably be read to not have "examined whether Congress ... delegated the FCC power to issue regulations interpreting consent." *See id.* Noting that the TCPA "gives the FCC the power to 'prescribe regulations to implement' the TCPA's prohibition on unconsented-to robocalls," the Eleventh Circuit evaluated the meaning of "implement." *IMC*, 127 F.4th at 312 (quoting § 227(b)(2)). The

court ultimately concluded that "the additional 'prior express consent' restrictions [did not] accord with the ordinary statutory meaning of 'prior express consent' in the TCPA," *id.*, so the FCC "[over]stepped" the line Congress drew, *id.* at 318. The court therefore had no reason to "consider[] the bases for FCC's regulation." ECF 171, at 25. Indeed, it expressly noted that policy rationales for the FCC's ruling were not appropriately considered. *See IMC*, 127 F.4th at 315 ("Atextual good policy cannot overcome clear text."), at 316 ("Again, atextual good policy cannot overcome clear text.").

The Fifth Circuit also recently considered the very question this Court does: whether the FCC's requirement of "prior express *written* consent" accords with the TCPA's requirement of "prior express consent." *Bradford*, 167 F.4th at 811. Albeit with much less attention paid to the delegation of authority to the FCC than the Eleventh Circuit did in *IMG*,[6] the Fifth Circuit interpreted the TCPA to conclude that "contrary to the FCC's regulation, Congress permits either written or oral consent for any auto-dialed or pre-recorded call, as the TCPA specifically permits such calls if the caller has 'the prior express consent of the called party.'" *Id.* at 812 (citing 47 U.S.C. § 227(b)(1), (b)(1)(A), (b)(1)(A)(iii)). "The statute provides no basis for concluding that telemarketing calls require prior express *written* consent but not oral consent." *Id.*

The Fourth Circuit has not spoken directly on the TCPA's delegation of authority to the FCC. But in evaluating how to treat an agency interpretation of a law in conjunction with a specific delegation of authority, the Court finds helpful *United States v. Kokinda*, where the Fourth Circuit confronted a challenge to a district court's use of the SMART Guidelines, promulgated by the Attorney General, to define "reside" and "habitually live" in jury instructions. 146 F.4th 405, 409

---

[6] The Fifth Circuit started with the plain meaning of "prior express consent" and determined it need go no further. *See Bradford*, 167 F.4th at 811–12.

(4th Cir. 2025). On appeal, the defendant, convicted of failing to register pursuant to the Sex Offender Registration and Notification Act ("SORNA"), first argued that the SMART Guideline definitions were an incorrect statement of the law, but after *Loper Bright*, "change[d] course" to argue that the terms were ambiguous such that "the rule of lenity should apply" and the statute be construed in his favor. *Id.* at 415.

Applying the *Loper Bright* framework, the Fourth Circuit "conclude[d] that the SMART Guidelines provide the proper definition of the term habitually lives" and "that the district court's jury instruction which relied on them was a correct statement of law." *Id.* at 418. Critical to this conclusion was the fact that "Congress specifically authorized the Attorney General to 'issue guidelines and regulations to *interpret* and implement' SORNA," and the SMART Guidelines were implemented pursuant to this authority. *Id.* at 416 (emphasis added) (citing 34 U.S.C. § 20912(b) and 73 Fed. Reg. 38,030 (July 2, 2008)). Thus, because Congress specifically delegated the Attorney General interpretive authority, and the Attorney General's interpretation "evidences reasoned decision making on the part of the Attorney General and is a reasonable exercise of Congress's specific delegation of authority," *id.* at 418, the SMART Guideline definitions were the proper statement of the law.

Reading *IMG*, *Bradford*, and the Fourth Circuit's guidance in *Kokinda* together, if Congress delegated to the FCC authority to *interpret* the TCPA—a delegation the Eleventh and Fifth Circuits somehow overlooked—then the FCC's "prior express written consent" requirement may stand.

In addition to § 227(b) (which at least the *IMG* court expressly evaluated), Plaintiff also cites § 227(c) as providing the FCC with the authority to require prior express written consent. *See* ECF 171, at 13–14 ("These provisions authorize the FCC to issue regulations pursuant to 47

14

U.S.C. § 227(c), the private right of action for which is at 47 U.S.C. § 227(c)(5).")". DentalPlans points out that "§ 227(c) concerns the implementation of a Do-Not-Call registry, and the FCC did not even cite or purport to rely on § 227(c) as a source of authority in promulgating its 2012 Rule" (the Rule where the FCC interpreted "prior express consent" to mean "prior express written consent"). ECF 175, at 18 n.2. Subsection § 227(b)(2) provides a delegation of authority governing "this subsection," i.e., concerning robocalls. Subsection (c), meanwhile, separately directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," § 227(c), "possibly through the creation of a national 'do not call' system," *Mims*, 565 U.S. at 374. While the Court is mindful that Acts of Congress "should not be read as a series of unrelated and isolated provisions," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995), to the extent subsection (c) provides authority to the FCC in regard to subsection (b) at all, it does not provide any more *interpretive* authority over "prior express consent" than subsection (b)'s delegation of authority.

Plaintiff also cites the Do-Not-Call Implementation Act ("DNCIA"), enacted in 2003, as providing the requisite authority. *See* ECF 171, at 15–18. That statute reads:

> Not later than 180 days after March 11, 2003, the [FCC] shall issue a final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, under the [TCPA] (47 U.S.C. 227 et seq.). In issuing such rule, the [FCC] shall consult and coordinate with the Federal Trade Commission [FTC] to maximize consistency with the rule promulgated by the [FTC] (16 CFR 310.4(b)).

15 U.S.C. § 6153.[7] The FTC regulation cited includes as an "abusive telemarking practice or act" and "violation of this part" a telemarketer's

---

[7] Curiously, in her opposition, Plaintiff modifies this statute as follows: the FCC "shall issue a final rule implementing the [Do Not Call consult and coordinate with the Federal Trade Commission to maximize consistency [between the TCPA and the TSR,] 16 CFR § 310.4(b)," the TSR being the

[i]nitiat[ion of] any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), unless:

> (A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, *in writing*, that:
>
>> (i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;
>>
>> (ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;
>>
>> (iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and
>>
>> (iv) Includes such person's telephone number and signature[.]

16 C.F.R. § 310.4(b)(1)(v) (emphasis added). Because the regulation Congress cited in the DNCIA included a written consent requirement, Plaintiff contends that "[i]t is manifest that Congress intended to delegate to the FCC the power to require written consent." ECF 171, at 16. But a directive to "consult and coordinate" with the FTC "to maximize consistency" with a rule requiring written consent, 15 U.S.C. § 6153, does not necessarily carry with it the authority to impose a

---

Telemarketing Sales Rule implemented by the FTC. ECF 171, at 16 (sic). First, Plaintiff's claim is not based on a violation of the do-not-call registry. *See* ECF 124, at 31 (Plaintiff's opposition to summary judgment expressly abandoning do-not-call claim). Second, and more importantly, Plaintiff's modification of DNCIA inaccurately suggests that Congress directed the FCC to "maximize consistency" between the TCPA and the FTC's rules, rather than between the FCC's rules and the FTC's rules, as it actually does. *See* 15 U.S.C. § 6153 (directing the FCC and FTC to confer regarding the FCC's "issuing *such rule*" "to maximize consistency *with the rule*" (emphasis added)). In other words, Plaintiff reads into the statute a delegation of authority to interpret *the statute* that is not actually there.

writing requirement that does not exist in the plain words of the TCPA. And Plaintiff points to no cases where a court has found similar language to include the authority to interpret a statute.[8]

Confronted with two circuit court cases holding that the FCC may not impose additional requirements to the TCPA's "prior express consent" requirement, and noting relevant Fourth Circuit guidance underscoring the importance that a delegation of authority to an agency specifically authorize both the implementation *and* interpretation of statutory terms, the Court is not convinced that the FCC's requirement of "prior express *written* consent" is permissible in the wake of *Loper Bright*. To be sure, the position that prior express consent requires prior express *written* consent "is an eminently reasonable one, particularly given the TCPA's purpose . . . ." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025). "Nevertheless, '[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.'" *Id.* (alterations in original) (quoting *Loper Bright*, 603 U.S. at 400). "It is for

---

[8] Plaintiff cites *Nicoletti v. Bayless*, No. 24-6012, 2025 WL 80294 (4th Cir. Jan. 13, 2025), for the proposition that even after *Loper Bright*, courts should apply *Skidmore* deference in evaluating agency interpretations, taking into account the agency's expertise and reasoning. *See* ECF 171, at 19. In that unpublished case, the Fourth Circuit reversed a district court where the court "erred in relying on *Chevron* to find that the BOP [Bureau of Prisons] was entitled to deference on its determination of the relevant risk and needs assessment periods." *Nicoletti*, 2025 WL 80294, at *1. The relevant statute, however, specifically delegated the authority to make that determination to the BOP. *See id.* (citing 18 U.S.C. § 3632(d)(4)(A)(ii)). Thus, the Fourth Circuit determined that the district court erred by "not examin[ing] the persuasiveness of the BOP's interpretation of its rule under *Skidmore* or the extent to which that persuasiveness requires deference." *Id.* at *2. Here, as explained, the delegation of authority is not so broad, so the Court need not (and indeed cannot) evaluate the persuasiveness of the FCC's rule under *Skidmore*.

Indeed, to the extent Plaintiff asks the Court to consider the FCC's expertise in evaluating the meaning of "prior express consent," the research and reasoning Plaintiff points to concerns the ubiquity of unwanted robocalls and the number of complaints the FCC received about such calls. *See* ECF 171, at 20–22. While noteworthy, these findings do not lend support to the contention that the FCC has any particular expertise regarding the meaning of "prior express consent." Further, the timing of the writing requirement came in 2012—nearly twenty years after the passage of the TCPA—which does not counsel in favor of deferring to the FCC's interpretation under *Skidmore*. *See Valladares*, 130 F.4th at 83–84 (citing *Loper Bright*, 603 U.S. at 388).

Congress to respond to the issues presented in this case and to address" whether the TCPA, as written, adequately addresses the contemporary realities of American life. *Id.*; *see also Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *4 (N.D. Ohio Mar. 3, 2026) (acknowledging that the court's decision was "dictated by *Loper Bright* and *McLaughlin*" and "arguably st[ood] in contrast to decades of FCC agency interpretations, court decisions, and even congressional intent" but noting that "Congress—not this Court—[must] fill those gaps in the wake of *Chevron*'s reversal"). Because Congress has required only prior express consent, not prior express *written* consent, that is all that is required to overcome an alleged TCPA violation.

### E. Plaintiff Provided the Requisite "Prior Express Consent."

The summary judgment "analysis turns entirely on the question of consent," ECF 138, at 10, so the Court now must evaluate whether Plaintiff provided "prior express consent" such that DentalPlans is entitled to judgment as a matter of law. As noted, "[p]rior consent is an affirmative defense under the TCPA for which the defendant bears the burden of proof." *Id.* (citing *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022); *Beard v. John Hiester Chevrolet, LLC*, 640 F. Supp. 3d 420, 428 (E.D.N.C. 2022)). If a reasonable jury could find that Plaintiff did not provide prior express consent (in writing, orally, or otherwise) to receive the winback calls, then the Court cannot grant summary judgment to DentalPlans. To answer this question, the Court must determine the meaning and scope "prior express consent" using ordinary tools of statutory construction, *see Loper Bright*, 603 U.S. at 401, and compare how the facts here fit into that definition. The Court previously summarized the record of Plaintiff's purported consent as follows:

> Plaintiff placed a call to DentalPlans in November 2018, intending to sign up for a dental savings plan. ECF 124-9, at 2. The representative to whom Plaintiff spoke confirmed Plaintiff's phone number and then asked Plaintiff if she consented to DentalPlans "contact[ing] [her] with an automatic dialing system or a prerecorded

18

message." ECF 113-2; ECF 111, at 21. Plaintiff requested clarification, asking about the purpose of the automated calls. ECF 113-2; ECF 111, at 21. "The representative responded, 'to keep you updated with any plan information,' and confirmed that only DentalPlans would be calling." ECF 111, at 21 (quoting ECF 113-2, at 4). Plaintiff agreed to receive the calls as described by the representative. *Id.*; ECF 113-2, at 4. Plaintiff proceeded to successfully sign up for a Cigna dental discount plan through DentalPlans during the phone call. ECF 124-9, at 2.

The representative to whom Plaintiff spoke during this initial sign-up process utilized a sales script during the call. *See* ECF 111, at 19; ECF 113-1, at 11–12. The script calls for DentalPlans'[] agents to (1) "collect[] the consumer's name and telephone number[]"; then (2) ask if the caller would "like to receive plan updates and promotions via text message"; before (3) asking for the caller's consent to "contact [them] using an[] automated telephonic dialing system and/or prerecorded message"; and finally, (4) informing the caller that they "are not required to agree as a condition of purchasing any products and or services." ECF 111, at 19 (quoting ECF 113-1, at 11–12). This script is used by DentalPlans for all incoming calls from non-customers, though the actual conversations vary naturally depending on the caller's response. *Id.*

ECF 138, at 2–3.

"As in all statutory construction cases," the Court "begin[s] with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The inquiry ceases 'if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" *Id.* (quoting *Robinson*, 519 U.S. at 340) (additional internal quotation marks omitted). At the time the TCPA was passed in 1991, Black's Law Dictionary defined "express consent" as "[t]hat directly given, either *viva voce* or in writing. It is positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning." *Express Consent*, Black's Law Dictionary (6th ed. 1990) (found under the definition of "consent").

The question in this case depends upon the scope of a caller's "express consent"—must a caller expressly consent to receive *telemarketing* calls using an autodialing system or prerecorded

19

voice, or just to receive such calls at all? Plaintiff argues that "[c]aselaw bears out that 'express consent' to receive prerecorded telemarketing calls means something more than merely giving one's telephone number to another." *See* ECF 171, at 28; *see also id.* at 33 ("DentalPlans' script flunks the test even if 'prior express consent' were the proper standard, because it does not ask the consumer whether they agree to receive prerecorded *telemarketing* calls." (emphasis in original)). In support of this contention, Plaintiff relies only on out-of-circuit cases of limited persuasive value, including *Leckler v. CashCall, Inc.*, 554 F. Supp. 2d 1025 (N.D. Cal. 2008), *vacated on reconsideration on jurisdictional grounds*, No. C 07-04002 SI, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008)), *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009), and *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) (originally cited by DentalPlans). *See* ECF 131, at 28–31, at 33.

The primary case upon which Plaintiff relies does distinguish between "prior express consent" to be called *at all* and "prior express consent" to receive *robocalls*. *See Leckler*, 554 F. Supp. 2d at 1030 ("Although the Court does not doubt that by providing her cell phone number on her loan application and in subsequent correspondence plaintiff consented to be called by defendant, such consent was implied through her actions and conduct, i.e. writing down her cell phone number in a space labeled for such information, rather than expressly given in words or 'direct and appropriate language' explicitly stating that plaintiff consented to be called with an autodialer or prerecorded message."). The court there disagreed with the contention "that Congress intended the 'prior express consent' in question to apply merely to the act of calling, i.e. consent to be called in general, and did not intend the express consent to apply to the act of calling using an autodialer or prerecorded message" because "[i]f the exemption were to apply whenever a called party gave prior consent to be called in general, without any consideration given to the

method or type of call, the exemption would be contrary to the logic of the statute, which targets only those calls made using an autodialer or an artificial or prerecorded voice." *Id.*

But that is not the distinction Plaintiff asks the Court to make—Plaintiff asks the Court to distinguish consent to receive telemarketing calls or other types of calls (like informational calls), whether or not made with an autodialer or prerecorded voice. *See* ECF 171, at 33 (arguing that DentalPlans' script does not lend itself to consumers providing "prior express consent" because "it does not ask the consumer whether they agree to receive prerecorded *telemarketing* calls"). The Court understands why Plaintiff focuses on this distinction: Plaintiff *did* consent to receiving calls sent using an automatic dialing system or prerecorded messages. *See* ECF 138, at 2.[9] And as apparent from the Court's June 6 memorandum opinion, the only distinction that would have any impact on whether Plaintiff's consent did not encompass the winback calls would be the distinction between telemarketing calls and informational calls. *See* ECF 138, at 11. But the relevance of that distinction for a TCPA violation depends on whether it is one Congress made in the statute. *See supra* Section III.D. It did not.

The distinction Congress made between types of calls involved whether a call was made "using any automatic telephone dialing system or an artificial or prerecorded voice" or not. 47

---

[9] As summarized in the Court's June 6 opinion,

> The representative to whom Plaintiff spoke confirmed Plaintiff's phone number and then asked Plaintiff if she consented to DentalPlans "contact[ing] [her] with an automatic dialing system or a prerecorded message." ECF 113-2; ECF 111, at 21. Plaintiff requested clarification, asking about the purpose of the automated calls. ECF 113-2; ECF 111, at 21. "The representative responded, 'to keep you updated with any plan information,' and confirmed that only DentalPlans would be calling." ECF 111, at 21 (quoting ECF 113-2, at 4). Plaintiff agreed to receive the calls as described by the representative. *Id.*; ECF 113-2, at 4.

ECF 138, at 2.

U.S.C. § 227(b)(1)(A)(iii). The FCC, not Congress, distinguished between telemarketing and informational robocalls and did so in the context of which standard governs the calls at issue— prior express consent or prior express *written* consent. *See* 47 C.F.R. § 64.1200(a)(2) (requiring "prior express written consent" for any robocall that "includes or introduces an advertisement or constitutes telemarketing"); *id.* (f)(13) ("The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012) (declining to require "prior express written consent for all such [informational] calls"). Plaintiff has not explained how the plain language of the statute bears out a distinction between prior express consent to telemarketing versus other types of robocalls, and the Court cannot discern one.[10] "Whether [DentalPlans'] pre-recorded calls to [Plaintiff] qualify as telemarketing or informational calls, those calls required only prior express consent from [Plaintiff]." *Bradford*, 167 F.4th at 812; *id.* (noting that the plaintiff had provided the requisite prior express consent when he "provided his cell-phone number when he entered into the service-plan agreement with" the defendant). Because Plaintiff provided her consent to receive calls made with an autodialer or prerecorded voice, DentalPlans did not violate the TCPA as a matter of law.

---

[10] Plaintiff points to *Satterfield v. Simon & Schuster, Inc.*, where the Ninth Circuit reversed a grant of summary judgment to the defendant, Simon & Schuster, because it determined that the plaintiff "solely consented to receiving promotional material from Nextones or their affiliates and brands," which Simon & Schuster was not. 569 F.3d 946, 955 (9th Cir. 2009). To the extent the analysis still holds up after *Loper Bright*, the scope of consent question there does not map well enough on the facts here to persuade the Court of Plaintiff's position. That case concerned *whose* calls the plaintiff consented to. Here, Plaintiff points to the content or purpose of a call (i.e., for telemarketing) as the hook on which TCPA liability depends. But, as explained, the language of § 227(b)(1)(A) only prohibits calls based on *how they are made* (with an autodialer or prerecorded voice).

### F. Class Certification Is No Longer Appropriate.

Typically, when a court grants summary judgment to a defendant on the lead plaintiff's claim, it need not resolve a competing motion for class certification. *See Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives*, 875 F.3d 160, 164 (4th Cir. 2017) ("Because affirmance of the district court's grant of summary judgment disposes of [plaintiffs'] claims, we decline to address the district court's denial of class certification."); *Fortson v. Garrison Prop. & Cas. Co.*, No. 1:19-CV-294, 2022 WL 501324, at *2 (M.D.N.C. Jan. 21, 2022) (noting that granting summary judgment to a defendant moots class certification on the same claim) (citing *Corbin v. Time Warner Ent.-Advance/Newhouse P'Ship*, 821 F.3d 1069, 1084–85 (9th Cir. 2016); *McKinney v. Carlton Manor Nursing & Rehab. Ctr., Inc.*, 868 F.3d 461, 463 (6th Cir. 2017)); *Derossett v. Jonathan C. Patrowicz, D.O., P.A.*, Civ. No. DKC 21-1294, 2022 WL 4448859, at *1 n.1 (D. Md. Sept. 23, 2022) (same). While this case is in a slightly different posture on reconsideration, the same logic applies. Class certification is not appropriate where summary judgment is granted to the defendant. As such, the Court will grant the motion for decertification.

### G. Plaintiff's Claim Against Cigna

As noted *supra* note 1, Cigna did not move for summary judgment or reconsideration. *See* ECFs 116 and 166. The parties have not addressed how reconsideration of the summary judgment decision and decertification affects Plaintiff's claim against Cigna. The claim is brought only on a theory of vicarious liability for DentalPlans' conduct, *see* ECF 42, at 5–6 ¶¶ 22–23, so its viability is certainly suspect. *See Crawford v. Signet Bank*, 179 F.3d 926, 929 (D.C. Cir. 1999) (noting that vicarious liability "is not an independent cause of action" so "[i]the absence of agent liability . . . , none can attach to the principal" (citation omitted)); *see also Barrett v. Quest Diagnostics*, Civ.

23

No. 23-3417-BAH, 2025 WL 388658, at *7 (D. Md. Feb. 3, 2025) (same).[11]   Nevertheless, the Court will await input from the parties on whether and how the case proceeds against Cigna. The parties will be directed to file a joint status report by Thursday, March 26, 2026, so indicating.

## IV.   **CONCLUSION**

For the foregoing reasons, DentalPlans' motion for reconsideration and decertification, ECF 166, is GRANTED.   Plaintiff's motion for leave to file a surreply, ECF 176, is DENIED.   A separate implementing order will issue.

Dated: <u>March 20, 2026</u>

/s/<br>
Brendan A. Hurson<br>
United States District Judge

---

[11] There may be cause to reevaluate the availability of vicarious liability under the TCPA, *see In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 524 (N.D. W. Va. 2016) (noting that the FCC's interpretation that common law agency principles apply to the TCPA is afforded *Chevron* deference), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018), the Court need not reach that question here (and no one has asked the Court to decide it).